`

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT


Christians in the Workplace Networking Group, Appellant,


v.


National Technology and Engineering Solutions of Sandia, LLC, a wholly owned
subsidiary of Honeywell International, Inc., Esther Hernandez, Aaron Jim and
Bianca Hill, Appellees

No 24-2072

On appeal from the final orders of the United States District Court for the District of
New Mexico dated March 28, 2024 at No 1:22-cv-00267-DHU-DLM

Oral Argument is Requested


BRIEF OF APPELLANT



J. Michael Considine, Jr.
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
215-564-4000
17 Sunridge Court
Durango, CO 81301
970-385-0846
adventure7@gmail.com
Counsel for Appellant

A. Table of Contents

B.   Table of Authorities                                              3

C.   Jurisdictional Statement                                         6

D.   A Statement of the issues presented for review                   6

E.   A Concise statement of the applicable standard of review         10

F.   A Statement of Related Cases and Proceedings                     10

G.   Concise Statement of the Case                                    10

H.   Summary of the Argument                                          11

I.   Argument                                                         12

   1. Law                                                             12

   2. Facts                                                           21

      A. Reasonable Accomodation                                      21

      B. Freedom of Association                                       21

      C. Religious Discrimination                                     22

      D. Exemption from Title VII                                     23

      E. Differential Treatment                                       23

      F. Hostility to Religion                                        29

      G. RFRA                                                         33

      H. Injunctive Relief                                            35

       I. Leave to File Second Amended Complaint                      36

      J. Prejudice                                                    41

      K. Title VII                                                    42

      L. Capacity to Sue                                              44

      M. State Action                                                 46

J.   Conclusion Including Relief Sought                               47

K. Certificates of Compliance and Service                                    47
L.  Notice of  Appeal
M. March 28, 2024 Opinion #1
N.  March 28, 2024 Opinion #2
O.  March 28, 2024 Opinion #3
P.  March 28, 2024 Opinion #4.

B. Table of Authorities

1. Cases

Abood v. Detroit Board of Educ., 431 U.S. 209, 233 (1977)                23

Allee v. Medrano, 416 U.S. 802, 819 n. 13 (1973)                8, 10, 45

Alpha Delta Chi v. Reed, 648 F. 3rd 790 (9th Cir, 2011)         15, 20, 24

Banks v. Service America Corp., 952 F. Supp 703 (D. Kan. 1996)          13

Becker v. Ute Indian Tribe of Unintah and Ouray Reservation, 868 F. 3rd 1199
(10th Cir. 2017)                                                          45

Birch v. Polaris Indus., Inc. ,  812 F.3d 1238, 1248  (10th Cir. 2015)       38

Bostock v. Clayton County, 590 U. S. 644, 681 (2020)                     43

Bryce v. Episcopal Church, 289 F. 3rd 648, 655-657 (10th Cir. 2002)       23

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)             43

Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014)          17, 33, 38

Bylin v. Billings, 568 F. 3rd 1224 (10th Cir. 2009)                      42

Church of the Lukumi Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533, 537-538
(1993)                                                       16, 26, 30, 33

Corp. of Presiding Bishops v. Amos, 483 U.S. 327, 329 (1987)           15, 23

CLS v. Eck, 625 F. Supp. 2nd 1026 (D. Mont. 2009)                     13, 22

CLS v. Walker, 453 F. 3rd 853 (7th Cir. 2006)          14, 18, 22. 23, 35, 38

DeVargas v. Mason & Hanger-Silas Mason Co, Inc, Los Alamos National
Laboratories, et al, 844 F. 714 (10th Cir. 1988)                       6, 46

Doe v. Lawrence Livermore Laboratory, 65 F. 3rd 771 (9th Cir. 1995)  6, 46

Duncan v. Manager, Department of Safety, City and County of Denver,
397 F. 3rd 1300 (10th Cir. 2005)                                          39

EEOC v. Abercrombie & Fitch Stores, Inc., 731 F. 2rd, 1106 (10th Cir. 2010)

575 U.S. 768, 135 S.Ct. 2028, (2015)                                    12, 26, 20, 42

EEOC v. Mississippi College, 626 F. 2nd 477, 486 (5th Cir. 1980)          23

Elrod v. Burns, 427 U.S. 347 (1976)                              18, 30, 31, 35

Evans v. Syracuse City School Dist., 704 F.2d 44, 48 (2d Cir. 1983)        41

Federal Insurance Co. v. Gates Learjet Corp, 823 F. 2nd 383 (10th Cir. 1987)  40

First Nat'l Bank v. Master Auto Serv. Corp., 693 F.2d 308, 314 (4th Cir. 1982)   41

Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale, 11 F. 4th 1266, 1283 (11th Cir. 2021)                                              45

Frank v. U.S.W.,Inc. 3 F. 3rd 1357, 1365-1366 (10th Cir. 1993)            42

Fulton v. City of Phila., 141 S. Ct. 1868 (2021)                      16, 33

Good News Club v. Milford Central School, 533 U.S. 98, 106-107 (2001) 31, 36

Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006)
                                                          17, 33, 38

Gorsuch, Ltd., B.C v. Wells Fargo National Bank Association, 771 F. 3rd 1230 (10th Cir. 2014)                                              39

Griswald v. Connecticut, 381 U.S. 479, 483 (1965)                   13, 22

Groff v. DeJoy, 143 S. Ct. 2279 (2023)                               44

Hall v. Baptist Memorial Health Care Corp, 215 F. 3rd 618 (6th Cir. 2000)   15

Hamric v. Wilderness Expeditions, 6 F. 4th 1108 (10th Cir. 2021)         36

Hasan v. AIG Prop. Casualty Co., 935 F. 3rd 1092, 1101 (10th Cir. 2019)   41

Healy v. James, 408 U.S. 169, 181 (1972)                          13, 18, 31

Homans v. City of Albuquerque, 264 F.3d 1240, 1243 (10th Cir. 2001)      18

Horn v. Allied Mut. Casualty Co., 272 F. 2nd 76, 80 (10th Cir. 1959)       40

Hosanna-Tabor Evangelical Church & School v. EEOC, 565 U.S. 171(2012)13,22

Husky Ventures, Inc. v. B55 Invs. Ltd, 911 F. 3rd 1000 (10th Cir. 2018)    40

Hsu v. Roslyn Union F.S.D. No 3, 85 F. 3rd 839 (2nd Cir. 1996)           14

Intervarsity Christian Fellowship /USA v. Board of Governors of Wayne State

Univ., 413 F. Supp. 3rd 687 (E.D.Mich. 2019)                                    14

    Intervarsity Christian Fellowship/U.S. v. University of Iowa, 5 F.4th 855 (8th Cir. 2021)                                                                              14

    Jones v. Wolf, 443 U.S. 595, 602. (1979)                                18

    Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America, 344 U.S. 94, 116 (1952)                                                15, 20, 23

    Killinger v. Sanford University, 113 F. 3rd 196, 198 (11 th Cir. 1997)  15, 20, 23

    Lippoldt v. Cole,  468 F. 3rd 1204, 1216 (10th Cir. 2006)              8, 44, 45

    Lugar v. Edmondson Oil Co., 457 U.S. 922 (1980)                          17

    Masterpiece Cake Shop Ltd. v. Colo. C.R. Comm,, 138 St. Ct. 1719 (2018)16, 33

    Meritor Savings Bank, FSB v. Vinson, 477 U. S. 57, 64 (1986)             43

    Minter v. Prime Equipment Company, 451 F. 3rd 1196 (10th Cir. 2006)       38

    Mudrow v. City of St. Louis, 144 S. Ct. 967 (2024)                       43

    N.M. Transportation Union v. City of Albuquerque, No. 1:14-cv-00280, RB/KK, 2015 WL 13666996 at *2 (D.N.M. February 13, 2015)                        45

    N.Y. State Clubs Ass. v. City of New York, 487 U.S. 1, 13 (1988)         23

    Ochieno v. Sandia National Laboratories, Case No. 18-197 KG/KRS (D.N.M. January 10, 2019)                                                      47

    Oncale v. Sundowner Offshore Services, Inc., 523 U. S. 75, 80 (1998)      43

    Pumpco, Inc. v. Schenker, Int., Inc., 204 F.R.D. 667 (D. Colo. 2001)      39

    Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010)                                                              42

    Rendell-Bala v. Kohn, 457 U.S. 830 (1982)                               17, 34

    Reynolds v. Sch. Dist. No. 1, 69 F.3d 1523, 1533 (10th Cir. 1995)    16, 26, 30

    Roberts v. US Jaycees, 468 U.S. 609, 623 (1984)                         23

    Rosenberger v. Rector and Visitors of the U. of Va., 515 U.S. 819 (1995)  18, 36

    Serbian Eastern Orthodox Diocese for U.S. & Canada, 426 U.S. 696 , 724 (1976)                                                           15, 18, 23

    Tabura v. Kellogg USA, 880 F. 3rd 544 (10th Cir. 2018)              42

Tesone v. Empire Mrkg. Strategies,  942 F. 3rd  979, 989 (10th Cir. 2019)   41

Thomas v. Nat'l Ass'n of Letter Carriers, 225 F.3d 1149 (10th Cir. 2000)16, 26, 20

Toledo v. Nobel-Sysco, Inc.,892 F. 2nd 1481, 1490 (10th Cir. 1989)    13, 21

Watson v. Jones, 13 Wall. 679, 80 U. S. 733-734 (1871)                18

Werner v. McCotter, 49 F. 3rd 1476, 1480-1481 (10th Cir. 1995)        37

Widmar v. Vincent, 454 U.S. 263 (1981)                    18, 30, 33

Wisconsin v. Yoder, 406 U.S. 205 (1972)                    37

2. Statutes and Rules

42 USC §§2000bb-1(a), bb-2, bb-3 (3) & bb-4            6, 17, 33, 37

42 U.S.C.§2000bb-2(1)                        6, 30

42 U.S.C. §2000e-1(a) (1970) & Supp II (1972)            13

42 U.S.C. §2000e-2                        13, 22

42 U.S.C. §2000e-2(a)                        13, 22

42 U.S.C. §2000e(j)                        6, 12, 22

KS Statute §60-223b (2014)                    44
Rule 16(b)(4) FRCP                    6, 36, 38, 39, 40, 41
Rule 17 FRCP                        6, 8, 10, 44

C. Jurisdictional Statement

1. The district court had jurisdiction; this case arises out of the U.S. Constitution, Article III, §2, 28 USC §1331, 42 U.S.C. §2000(e)(j) and §2000(bb).

2. The U.S. Court of Appeals for the Tenth Circuit has jurisdiction in this appeal from final decisions of the US District Court for D. of N.M. as per 28 U.S.C. §1291.

3. A Notice of Appeal was filed April 26, 2024 from the March 28, 2024 final order in this case, timely as   filed within 30 days of the final order disposing of all claims.

D. A Statement of Issues Presented for Review

1.    Where discovery as to First Amendment and Title VII claims involved

the same areas as a Religious Freedom Restoration Act claim, leave to amend to add

such a claim was sought on March 13, 2023, questions on the RFRA claim occurred at later depositions, the discovery deadline was April 28, later June 9, 2023, on February 28, 2023 Appellees disclosed for the first time an expert report stating facts that many Christians would not subscribe to the beliefs in Appellant's statement of faith and disciplinary clause to show Appellee's bans of these and removal of sponsorship of Appellant as an Employee Resource Group (ERG)for its failure to remove them at a federal nuclear laboratory did not substantially burden the faith of its members, there was no need for additional discovery to be obtained, was there good cause to grant leave to amend under Rule 16(b)(4) FRCP and did the court err in using the "could have filed before" standard where such a report was not reasonably foreseeable, there was no prejudice under Rule 15 and the court did not state why discovery could not be done in 88 days or what new facts were relevant?

2.      Did the court fail to consider <u>DeVargas v. Mason & Hanger-Silas Mason Co, Inc, Los Alamos National Laboratories, et al</u>, 844 F. 714 (10th Cir. 1988), involving Los Alamos National Laboratories, a Nuclear Security Agency performing the same functions as Sandia, which did not dispute they were state actors for purposes of §1983, <u>Doe v. Lawrence Livermore Laboratory</u>, 65 F. 3rd 771 (9th Cir. 1995), where dismissal of a §1983 claim against the director of a national laboratory directed by the NNSA like Appellee, performing essentially the same

functions as Sandia was reversed as he was a person for the purposes of §1983, and was not an arm of the state, in determining Appellees were not state actors subject to §1983?

    3.    Did the court fail to follow Rule 17 FRCP which states that in a state where an unincorporated association does not have a capacity to sue, it does to redress constitutional rights in federal court, NM law granting such a capacity and did it error in applying <u>Lippoldt v. Cole</u>,  468 F. 3rd 1204, 1216 (10th Cir. 2006) which applied KS law, where under <u>Allee v. Medrano</u>, 416 U.S. 802, 819 n. 13 (1974) an unicorporated association has capacity to sue in federal court?

    4.    Does case law support the court's rulings there was no discrimination because no one was fired even if there was a substantial change in benefits—lack of funding, events, permission for speakers, recruiting, input to management, and publication of articles-- without considering differential treatment, hostility to religion or the religious exemption to Title VII and there was accommodation to religion although the only proof of undue burden was speculation of a possible lawsuit and difficulty determining who had certain beliefs, where Appellant is separate from Sandia?

    5.    Is a national nuclear lab funded and controlled by the Dept. of Energy performing uniquely government functions---nuclear energy, national security and deterrance, space exploration, international treaties & global security on federal

land subject to federal regulations-- an instrumentality subject to the RFRA?

6.    Where Appellees treated other ERGs differently than Appellant regarding permission for speakers and events, e-mails, funding, standards for who could be leaders or members, flying of a flag, website, signature blocks, discussion at executive council meetings, suggesting only Appellant's to be ALL Faiths Group, removing only Appellant as as a sponsored ERG, response to complaints, disfavoring Appellant on the basis of its beliefs, does this prove discrimination based on its beliefs?

7.    Did outright hostility to Appellee's religious beliefs--- a manager told Appellant's leader Jared Colombel, the entire management chain was upset at him for using the Christian tagline, the Lab Director told him there is no advocacy allowed for the Christian world view and Marie Miller that Appellant could not have a scientific presentation because it was "too controversial," Appellant's executive sponsor was fired for failure to vote to approve funding for transgender transition surgery, there were Diversity training materials indicating Christians were insiders who had to relinquish privilege, which policy was condoned and there was no disavowing of statements at the training Columbel was"disgusting" and when they found out he was a Christian in front of the whole group "I knew there was something about you that makes me sick to my stomach," and e-mails stating they "don't like" complaints he made about the training--- establish Title VII and RFRA claims?

8.    Did the court err in permitting evidence of discrimination only back to

August 2018, Vol. 4, page 658, despite a long history of acts hostile to religion?

E. <u>Concise Statement of the Applicable Standard of Review</u>

   The standard of review is de novo in a question of the meaning of particular terms in a statute, which is a question of law. A finding is 'clearly erroneous' when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. The Court of Appeals may reverse and remand if the court fails to consider relevant factors, considers irrelevant factors, fails to apply the law correctly as an abuse of discretion or if the record does not adequately establish reasoning employed to reach a decision.

F. Statement of Related Cases

   There are no related cases.

G. Concise Statement of the Case

    1.    On May 31, 2022 Appellant filed an Amended Complaint. Appellees a Motion to Dismiss July 8, 2022. A response was filed August 11, 2022.

    2.    On September 15, 2022 an April 28, 2023 discovery deadline was set. On March 13, 2023, it was extended to June 9, 2023.

    3.  On March 13, 2023 Appellant filed a Motion for Leave to File Second Amended Complaint. A response was filed March 27 and a Reply April 10, 2023.

    4.    On June 23, 2023 Appellees filed summary judgment motions. On July 17 & 18, 2023 Appellant filed responses to Appellees' motions. On July 27, 2023 Appellant filed a Statement of Undisputed Material Facts and Motion for Summary Judgment.  On August 1, 2023 Appellees filed replies to the responses. On August 16 and December 18, 2023 Appellees filed  Memoranda of Law. On August 18, 2023 the court granted dispositive motions. On August 22, and 25, 2023 Appellant filed Notices of Completion of Briefing.

    5.    On March 28, 2024 the court granted summary judgment to Appellees. On April 26, 2024 Appellant filed a Notice Of Appeal.

## H. Summary of the Argument

88 days before the discovery deadline there was good cause to amend the scheduling order and complaint 13 days after an expert report was disclosed stating Christians need not ascribe to a statement of faith or disciplinary clause Appellee did not permit a Christian employee resource group to have and for which it removed sponsorship, surprising Appellant. The same issues pertained to existing claims. No 10th Circuit or federal case has denied leave to amend under these circumsatnces. Under Rule 17 FRCP,

Allee v. Medrano, 416 U.S. 802, 819 n. 13 (1974) and NM law, an unincorporated association has capacity to sue. Other national nuclear labs not arms of the state were state actors under §1983 so Appellant also is. A substantial change in benefits such as permission for an employee resource group to have speakers, sponsor events, do recruiting, obtain funding, have input with managment—not just a firing —establishes discrimination, and undue hardship justifying derognition is not established by speculative fear of liability or determining who had beliefs. Exclusive governmental functions of nuclear deterrance, international treaties, space exploration and global security of a federally-controlled and funded national nuclear laboratory make it subject to RFRA. There was differential treatment as to who could be a leader, obtain funding, obtain permission for speakers. The entire management chain was upset at Appellant's leader for using the Christian tagline. The Lab Director told him there is no advocacy allowed for the Christian world view and Marie Miller

that Appellant could not have a scientific presentation because it was "too
controversial." Appellant's executive sponsor was fired for failure to vote to approve
funding for transgender transition surgery. Diversity training materials indicated
Christians were insiders who had to relinquish privilege. There was no disavowing of
statements at the training Columbel was "disgusting" and when they found out he was a
Christian in front of the whole group "I knew there was something about you that makes
me sick to my stomach," and e-mails stating they "don't like" complaints he made about
the training. Appellee ignored the religious exemption. These establish Title VII and
RFRA claims and grounds for injunctive relief. An unbroken pattern of such events and
lawsuit in 2000 are relevant and discoverable.

I.    Argument

A. Law

1. Reasonable Accommodation

all aspects of religious…practice...employer must accommodate unless it demonstrates it
is unable to reasonably accommodate…without undue hardship on the conduct of
the...business. 42 U.S.C. §2000e(j).

Defendant must prove it provided reasonable accommodation or could not do so
without undue hardship, Thomas v. Nat'l Ass'n of Letter Carriers, 225 F.3d 1149, 1155-
56 & n.6 (10th Cir. 2000) EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 135
S.Ct. 2028, (2015) held "accommodate" is allowing engaging in the religious practice
despite rules to the contrary. Neutral policies must give way to accommodation. Id., at
2032, n2, 2034. Employer may prevail if it shows that no accommodation could have

been made without undue hardship. <u>Toledo v. Nobel-Sysco, Inc.</u>,892 F. 2nd 1481, 1490

(10th Cir. 1989). <u>Banks v. Service America Corp.</u>, 952 F. Supp 703 (D. Kan. 1996), held:

Employers…should be able to meet their burden by showing that no accommodation is
possible….such situations will also be rare.... Employer must show "he has attempted
various methods of accommodation and can point to hardships that actually resulted." ..
hardship...must be "real" rather than "speculative." <u>Toledo</u>, 892 F. 3rd at 1489-1490,
1492...<u>Burns v. Southern Pac. Transp. Co.</u>,589 F. 2nd 403 (9th Cir. 1978)….. An
employer . . . [must] show . . . actual imposition on coworkers or disruption of the work
routine." <u>Burns</u>, 589 F. 2nd at 407..Defendant has not demonstrated...that plaintiffs'
blessings… imposed undue hardship on...operations or materially disrupted its work
routine…[there is no evidence] Service America lost any business...occasioned by
plaintiffs' practices… fear that customers would boycott Service America and bring sack
lunches from home to avoid plaintiffs' religious speech…is...hypothetical …that
plaintiffs' greetings might eventually impair the contractual relationship between Service
America and General Motors is… speculative….

      2. <u>Freedom of Association</u>

Freedom of association includes the right to group affiliation, a form of expressing

opinion, <u>Griswald v. Connecticut</u>, 381 U.S. 479, 483 (1965); <u>Hosanna-Tabor Evangelical</u>

<u>Church & School v. EEOC</u>, 565 U.S. 171, 189 (2012). Denial of official recognition,

without justification, abridges that right. <u>Healy v. James</u>, 408 U.S. 169, 181 (1972)

     3. <u>Religious Discrimination</u>

An employer may not limit...or...deprive employment opportunities...42 U.S.C. §2000e-
2, or discriminate against an individual [regarding]...terms, conditions, or privileges of
employment, because of such individual's religion. 42 U.S.C. §2000e-2(a).

In <u>CLS v. Eck</u>, 625 F. Supp. 2nd 1026 (D. Mont. 2009), a nondiscrimination policy was

enforced to selectively target a statement of faith (SOF) and clause to discipline leaders

(DC). In <u>CLS v. Walker</u>, 453 F. 3rd 853 (7th Cir. 2006), there was derecognition for

refusal to drop its SOF and DC:

Forcing Plaintiff to accept as members those who would approve of or engage in homosexual conduct would cause the group as it currently identifies itself to cease to exist. This burdens the ability to express ideas. Defendants have no interest in forcing Plaintiff to accept members whose activities violate its creed except eradicating… beliefs…in the creed… the antidiscrimination policy has not been applied in a neutral way. Plaintiff is the only group stripped of its recognized status due to [conduct]… prohibited by EEO policy. The Muslim group limits membership to muslims, the Adventists to Adventists and Young Womens' coalition is for women.

Id, 861-863, 863-867.  A policy that organizations accept as their spiritual leader a

person who does not profess Christian beliefs and rejecting requirements of agreement

to a doctrine statement, Intervarsity Christian Fellowship /USA v. Board of Governors of

Wayne State Univ., 413 F. Supp. 3rd 687 (E.D.Mich. 2019) and de-registering a

Christian organization because it required its leaders to affirm statements of faith,

Intervarsity Christian Fellowship/U.S. v. University of Iowa, 5 F.4th 855 (8th Cir. 2021)

violate the First Amendment. In Hsu v. Roslyn Union F.S.D. No 3, 85 F. 3rd 839 (2nd

Cir. 1996), a bible club was denied recognition as only Christians could be club officers.

The court held

The…leadership policy…reasonably designed to ensure that a certain type of religious speech will take place at the club's meetings…As in Hurley v. Irish American Gay, Lesbian and Bisexual Group of Boston, 115 S. Ct. 2338 (1995), the club's decision to exclude is based on its desire to preserve the content of its message…having Christian leaders necessarily shapes the content of the religious speech at the meeting because the nature and quality of the religious speech at the meetings is dependent upon the religious commitment of the officers…meetings promote and express the Christian religious experience in an integral way…the right to free association for expressive purposes is implicit in the 1st Amendment Free Speech guarantee. Abood v. Detroit Board of Educ., 431 U.S. 209, 233 (1977)… a regulation that prevents a group from excluding certain people may impair the ability of the original members to express only those views that

brought them together. Roberts v. US Jaycees, 468 U.S. 609, 623 (1984)…an association might be able to show it…will not be able to advocate its desired viewpoints nearly as effectively if it cannot confine its members to those who share … the same religion. New York State Clubs Association v. City of New York, 487 U.S. 1, 13 (1988)…when a religious…club excludes people of other religions from conducting its meetings…a school's decision to deny recognition to the club because of the exclusion is a decision based on the content of the speech. …Plaintiff could [not] abandon the leadership requirement of its constitution without suffering any tangible harm…the Civil Rights Act of 1964 exempts religious organizations from the act's ban on religious discrimination in employment…the actual leaders of the Christian prayer be Christian… have the necessary faith and commitment to do the job. ..disputes that hinge on... religious qualifications can be resolved internally by the club members….

Id, 848-850, 856-859, 862-869. Title VII exempts religious organizations from its

prohibition against religious discrimination in employment, Corp. of Presiding Bishops

v. Amos, 483 U.S. 327, 329 (1987) and allows them to hire only those of a particular

religion, 42 U.S.C. §2000e-1(a) (1970) & Supp II (1972), EEOC v. Mississippi College,

626 F. 2nd 477, 486 (5th Cir. 1980),  to discipline, Hall v. Baptist Memorial Health Care

Corp, 215 F. 3rd 618, 623, 625 (6th Cir. 2000), fire for failure to ascribe to a statement

of faith. Killinger v. Sanford University, 113 F. 3rd 196, 198 (11th Cir. 1997), and decide

matters of doctrine, Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in

North America, 344 U.S. 94, 116 (1952), and rules for discipline & disputes. Serbian

Eastern Orthodox Diocese for U.S. and Canada, 426 U.S. 696 , 724 (1976).

     4. Differential Treatment

In Alpha Delta Chi v. Reed, 648 F. 3rd 790 (9th Cir, 2011), permitting an African Drama

Ass. to limit leaders to Africans established discrimination against a sorority which

required members to be Christians and was denied recognition. Id, 796, 804.

5. <u>Viewpoint Discrimination</u>

Plaintiff must prove Defendant discriminated against him because of his religion.

<u>Thomas</u>, supra, at 1155. Defendant must prove facially nondiscriminatory reason for its

actions.<u>Reynolds v. Sch. Dist. No. 1</u>, 69 F.3d 1523, 1533 (10th Cir. 1995). The First

Amendment is violated where discretionary application of a law involves a negative

judgment on religious activity. <u>Church of the Lukumi Aye, Inc. v. City of Hialeah</u>, 508

U.S. 520, 533, 537-538 (1993). In <u>Fulton v. City of Phila.,</u> 141 S. Ct. 1868 (2021)

The contractual non-discrimination requirement imposes a burden on CSS's religious
exercise and does not qualify as generally applicable…A government policy can survive
strict scrutiny only if it advances "interests of the highest order" and is narrowly tailored
to achieve those interests. <u>Lukumi</u>, 508 U. S., at 546…so long as the government can
achieve its interests in a manner that does not burden religion, it must do so…Under
<u>Gonzales v. O Centro Espírita Beneficente União do Vegetal</u>,546 U.S. 418, 430–432
(2006)…courts must "scrutinize[ ] the asserted harm of granting specific exemptions to
particular religious claimants." id, at 431. ..[Defendant must show why it denied] an
exception….. the City offers only speculation that it might be sued… Such speculation
is insufficient to satisfy strict scrutiny, see <u>Brown v. Entertainment Merchants Assn</u>., 564
U.S. 786, 799–800 (2011)… a system of exceptions under the contract undermines the
City's contention that its non-discrimination policies can brook no departures... The City
offers no compelling reason why it has a particular interest in denying an exception to
CSS while making them available to others…[such denial]violates the First Amendment.
Id at 1876-1882.

        In <u>Masterpiece Cake Shop Ltd. v. Colo. C.R. Comm,</u>, 138 St. Ct. 1719 (2018)
Commissioners implied that religious beliefs and persons are less than fully welcome…
One …suggested that Phillips...cannot act on his religious beliefs if he decides to do
business in the state...If...he's got an issue with the—the law's impacting his personal
belief system, he needs to...compromise. …"Freedom of religion...has been used to
justify all kinds of discrimination throughout history, whether it be slavery… it is one of
the most despicable pieces of rhetoric...to use their religion to hurt others." …assessment
of offensiveness….sends a signal of official disapproval of Phillips' religious beliefs….
[this] violated the State's duty under the First Amendment not to base…regulations on
hostility to a religion….

Id, at1729-1732.

6.Religious Freedom Restoration Act (RFRA)

Government shall not substantially burden a person's exercise of religion even [with] a rule of general applicability. 42 USC §§2000bb-1(a), bb-2, bb-3 (3) & bb-4.

Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006) held under RFRA the government must show a compelling interest in the application of the law to the claimant whose religious rights are burdened rather than one in uniform application of the law. Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014) held RFRA protects for-profit corporations: forced provision of cost-free contraceptives to employees substantially burdened the owners' exercise of religion and was not the least restrictive means of achieving the interest in violation of their sincere religious beliefs.

Government includes an instrumentality acting under color of law of the US. 42 U.S.C.§2000bb-2(1). Lugar v. Edmondson Oil Co., 457 U.S. 922 (1980) held the tests included whether there was public function, Rendell-Bala v. Kohn, 457 U.S. 830 (1982), and if it serves a uniquely exclusive function of the state. Id, 840, 842.

7.1st Amendment

Banning a group is viewpoint discrimination if based on the views being considered abhorrent. Healy v James, 408 U.S. 169, 187-188 (1972). In Widmar v. Vincent, 454 U.S. 263 (1981) singling out religious organizations for disadvantageous treatment was subject to strict scrutiny; maintaining separation of church and state did not justify

viewpoint discrimination against religious speech. Id., 270, 276. <u>Rosenberger v. Rector and Visitors of the U. of Va.,</u> 515 U.S. 819, 830-831 (1995) held a disfavoring religious viewpoints is impermissible viewpoint discrimination.

8. <u>Courts do Not Decide Religious Doctrine</u>

Civil courts not decide religious doctrine. This is determined by a religious group <u>Serbian Orthodox Diocese v. Milivojevich</u>, supra; <u>Watson v. Jones</u>, 13 Wall. 679, 80 U. S. 733-734 (1871); <u>Jones v. Wolf</u>, 443 U.S. 595, 602. (1979)

10. <u>Injunctive Relief</u>

Injunctive relief may be granted based on (1) likelihood of success; (2) irreparable harm if the injunction is not granted; (3) absence of harm if it is granted; and (4) risk of harm to the public interest. <u>Homans v. City of Albuquerque</u>, 264 F.3d 1240, 1243 (10th Cir. 2001).Loss of First Amendment freedoms is irreparable injury.<u>Elrod v. Burns,</u> 427 U.S. 347 (1976) for which money damages are not adequate. <u>CLS v. Walker</u> held

CLS has shown a likelihood that SIU violated CLS's free speech rights by ejecting it from a speech forum in which it had a right to remain….[based on]…laws concerning nondiscrimination… CLS's statement of faith specifies… a belief in the sinfulness of acts of sexual conduct…we are skeptical that CLS violated SIU's Affirmative Action/EEO policy.....the…policy…applies to SIU, and...CLS is a private speaker… receiving...the public benefits associated with recognized student organization status….subsidized student organizations at public universities are engaged in private speech, not…state-endorsed messages. <u>Rosenberger v. Rector Visitors of Univ. of Va.,</u> 515 U.S. 819, 833-834 (1995)…CLS...demonstrated a likelihood of success on the threshold question of whether either of SIU's stated grounds for derecognition actually applies….Implicit in the First Amendment freedoms of speech, assembly...is the freedom to… associate. <u>Rumsfeld v. Forum for Academic Institutional Rights, Inc</u>., 126

S.Ct. 1297, 1311-1312.(2006) ("FAIR")... Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984); Healy v. James, 408 U.S. 169, 181 (1972). … the majority…cannot force its views on groups that choose to express unpopular ideas. Government action may impermissibly burden the freedom to associate [by]"withhold[ing] benefits from individuals because of their membership in a disfavored group" and "interfer[ing] with the internal organization or affairs of the group." Roberts, 468 U.S. at 623…"[t]here can be no clearer example of an intrusion into the internal structure or affairs of an association than a regulation that forces the group to accept members it does not desire." Freedom to associate "presupposes a freedom not to associate." Roberts. 468 U.S. at 623. [Forcing] a group to accept for membership someone the group does not welcome..."affects in a significant way the group's ability to advocate" its viewpoint, the government has infringed on the group's freedom of expressive association...[such] Infringements...are subject to strict scrutiny; the right of expressive association "may be overridden `by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms.'" Roberts, 468 U.S. at 623…[Dale] held that a New Jersey law prohibiting discrimination in public accommodations could not be constitutionally applied to the Boy Scouts to force the Scouts to accept an openly gay scoutmaster….the presence of an openly gay scoutmaster "would significantly burden the organization's right to oppose or disfavor homosexual conduct" and "... New Jersey's public accommodations law do[es] not justify such a severe intrusion on the Boy Scouts' rights to freedom of expressive association." Dale, 530 U.S. at 659….in Hurley, the Court held a public accommodations law could not be constitutionally applied to force a…parade organization to accept a parade unit marching under the banner of an Irish gay and lesbian group…Id. at 579… Members must dedicate themselves to the moral principles embodied in CLS's statement of faith [including]"certain Biblical standards for sexual morality." ….. enforcement of its antidiscrimination policy upon penalty of derecognition can only be understood as intended to induce CLS to alter its membership standards… forcing it to accept as members those who engage in or approve of homosexual conduct would cause the group as it currently identifies itself to cease to exist…application of its nondiscrimination policies in this way burdens CLS's ability to express its ideas. Roberts, 468 U.S at 623; Dale, 530 U.S. at 659; Hurley, 515 U.S. At 576...to justify interfering with CLS's freedom of expressive association, SIU's policy must serve a compelling state interest that is not related to the suppression of ideas and that cannot be achieved through a less restrictive means. Id. at 648…the state has an interest in eliminating discriminatory conduct and providing for equal access to opportunities. Roberts, 468 U.S at 624.,,,antidiscrimination regulations may not be applied to expressive conduct with the purpose of either suppressing or promoting a particular viewpoint. Dale, 530 U.S. at 659-661; Hurley, 515 U.S. At 578-79...The only apparent point of applying the policy to an organization like CLS is to induce CLS to modify the

content of its expression or suffer...derecognition…. CLS has carried its burden of proving a likelihood of success on its claim for violation of its right of expressive association… the consequences of derecognition are [not] too insignificant to constitute a constitutional violation....in Healy… students...attempted to form a...SDS chapter at Central Connecticut State College. The college refused to confer official student organization status on the chapter, believing that the organization's philosophy conflicted with university policy....As a result of nonrecognition, SDS was not allowed to meet on campus or make announcements about meetings and rallies through university channels like newspapers and bulletin boards [but could]...meet as a group, but off campus and without the attendant benefits of recognition....The Constitution also protects against indirect interference. Id…the Court held in <u>Healy</u> that SDS's associational rights had been impermissibly infringed because the school refused to confer student organization status and its attendant benefits on SDS. Id. at 181- 84…rules directed at a student organization's... philosophy [do not] [are not] justification for nonrecognition...Id. at 188-94…CLS was...frozen out of channels of communication offered by their universities...denied university money and access to private university facilities for meetings… ability to exist outside the campus community does not ameliorate significantly the disabilities imposed by" nonrecognition. Id. at 183….. CLS has demonstrated a reasonable likelihood of success on its claim for violation of its right of expressive association. The government violates the Free Speech Clause of the First Amendment when it excludes a speaker from a speech forum the speaker is entitled to enter. <u>Rosenberger,</u> 515 US at 829-830…SIU...created a speech forum for student organizations and has bestowed certain benefits on those who are qualified to enter the forum…SIU violated its free speech rights by ejecting it from that speech forum without a compelling reason….Speech restrictions in a nonpublic forum must not discriminate on the basis of viewpoint and "must be `reasonable in light of the purpose served by the forum.'" <u>Good News Club</u>, 533 U.S. at 106-107..Once the government has set the boundaries of its forum...it must respect its own self-imposed boundaries. <u>Rosenberger</u>, 515 U.S. at 829… even [if] SIU's student organization forum is a nonpublic forum...CLS has the better of the argument….[the] policy is viewpoint neutral on its face, but…has not been applied in a viewpoint neutral way… CLS is the only student group that has been stripped of its recognized status on the basis that it discriminates on a ground prohibited by [the] policy… other recognized student organizations discriminate in their membership requirements on grounds prohibited by SIU's policy. The Muslim Students' Association…limits membership to Muslims….membership in the 11 Adventist Campus Ministries is limited to those "professing the Seventh Day Adventist Faith, and all other students who are interested in studying the Holy Bible and applying its principles." Membership in the Young Women's Coalition is for women only…SIU has applied its antidiscrimination policy to CLS alone...other student groups discriminate in their membership requirements on grounds that are prohibited by the policy…CLS has

demonstrated a likelihood of success on its claim that SIU is applying its policy in a viewpoint discriminatory fashion. SIU has singled out CLS for derecognition…. violations of First Amendment rights...constitute irreparable injuries, <u>Elrod</u>, 427 U.S. at 372… denying official recognition to a student organization is a significant infringement of the right of expressive association. <u>Healy</u>, 408 U.S at 181…SIU has unconstitutionally excluded it from a speech forum….violated its First Amendment freedoms…  the only harm SIU claims is...violating its…. antidiscrimination policy… applying that policy in a manner that violates CLS's First Amendment rights…is no harm at all…[We will]enter a preliminary injunction against SIU.

II.<u>Facts</u>

A. <u>Reasonable Accommodation</u>

CWNG's has a SOF (belief in Jesus and his death to atone for sins), to which its leaders must ascribe and a DC permitting removal of a leader for conduct the bible says is immoral. Vol. 3, pages 592-593 and 616. Esther Hernandez (EH) felt these violated policy. If Sandia allowed these it would make it liable. Undue hardship is 1) difficulty determining if someone has the SOF beliefs, 2) discrimination Sandia would have to defend. Sandia does not monitor. Vol. 3, pages 651-654. A counteroffer referring to 1 Timothy and Titus was rejected. Vol. 3, page 619. On Nov. 18, 2020 EH revoked Sandia's sponsorship of CWNG. Vol. 3, page 661. Title VII excludes religious organizations. Aaron Jim and EH cannot say allowing the SOF and DC affected the ability of Sandia to conduct its business, productivity, or employee morale. Vol. 3, pages 642-643 & 654-655. No hardships resulted, being speculative. <u>Toldeo</u>, supra, 892 F. 2nd at 1489-1490, 1492. There was no effect on business. This violated 42 U.S.C. §2000e(j).

B.<u>Freedom of Association </u>

CWNG may associate around beliefs stated in the SOF, <u>Griswald v. Connecticut</u>, supra,

<u>Hosanna-Tabor Evangelical Church and School v. EEOC</u>, supra.(2012). Removal of

recognition burdens or abridges that associational right. <u>Healy v. James</u>, supra.

  C.<u>Religious Discrimination</u>

 Sandia deprived CWNG of employment benefits due to religion, violating 42 U.S.C.

§§2000e-2 & e-2(a) . As in <u>CLS v. Eck</u>, an antidiscrimination policy targeted religion.

As in <u>CLS v. Walker</u>, supra, CWNG was derecognized for refusing to drop its SOF and

DC. Vol. 3, pages 657 & 658. Forcing it to accept leaders it does not desire or remove its

SOF burdened its ability to express ideas. Sandia's only interest in forcing CWNG to

accept leaders who do not subscribe to its creed is eradicating beliefs in the creed. The

antidiscrimination policy was applied in a non-neutral way. Only CWNG lost Sandia

sponsorship. As in <u>Hsu</u>, supra, where a bible club was denied recognition because it

required that only Christians could be club officers, the SOF and DC are  essential to the

expressive content of meetings and preservation of its purpose, to ensure that a certain

type of religious speech will take place there. Exclusion is based on its desire to preserve

the content of its message. The nature and quality of the religious speech at the meetings

is dependent upon the religious commitment of the officers. The SOF and DC are

protected by the 1st Amendment. <u>Abood v. Detroit Board of Educ.</u>, 431 U.S. 209, 233

(1977) as the right to not associate. Sandia's bans impairs members' ability to express

views that brought them together. <u>Roberts v. US Jaycees</u>, 468 U.S. 609, 623 (1984). It

cannot advocate its desired viewpoints effectively if it cannot confine its leaders to those who share its religion. <u>N.Y. State Clubs Ass. v. City of New York</u>, 487 U.S. 1, 13 (1988). Removal of sponsorship due to the SOF and DC was based on the content of the speech. Abandoning them will cause CWNG tangible harm. Only Christians have the faith to be leaders. Disputes about religious qualifications can be resolved by members. <u>CLS v. Walker</u>, supra, 848-850, 856-859, 862-869. A leader with a world view contradicting its purpose could destroy the group. Individuals who made antisemitic comments demonstrated this. Vol. 3, pages 587-588 & 608.

    D. <u>Exemption from Title VII</u>

Title VII exempts religious organizations from its prohibition against discrimination on the basis of religion. <u>Corp. of Presiding Bishops v. Amos</u>, 483 U.S. 327, 329 (1987);42 U.S.C. §2000e-1(a) (1970) & Supp II (1972) . <u>Bryce v. Episcopal Church</u>, 289 F. 3rd 648, 655-657 (10th Cir. 2002). CWNG may chose leaders of its own religion, <u>EEOC v. Mississippi College</u>, supra, remove one for failure to ascribe to a SOF, <u>Killinger v. Sanford University</u>, supra, decide matters of doctrine, <u>Kedroff</u>, supra, establish rules for discipline and adjudicating disputes. <u>Serbian Eastern Orthodox Diocese</u>, supra.

    E.  <u>Differential Treatment</u>

   As in <u>Alpha Delta Chi v. Reed</u>, supra, allowing another group to require members to be students from Africa established discrimination against a sorority requiring members

to be Christians and being denied recognition as a result, Id, 796, 804. CWNG may not sit on the Executive Council, use facilities, campus bulletins or emails, the Sandia Daily News, advertise events on Sandia media,hold recruiting events, host speakers or events at Sandia, or get funding. Vol. 3, pages 619-620. Vol. 4, page 713. Differential treatment is overwhelming:

1. Employee Resource Groups (ERGs) include BLC, AIOC, HOLA, CWNG, SPAN, ANGLE, Sandia Parents Group, S(SWAN), and ALOC. Vol. 3, page 660. Clymo, CWNG's executive sponsor, said at 36 meetings the topic of CWNG was never brought up. BLC, AIOC, SPAN and SWAN were discussed. Lab Director Younger expressed no interest in CWNG but did in other ERGs, encouraged participation in their events and said "Congratulations." Vol. 3, pages 575-577, 601-602 & 610. Clymo  was the only one who abstained in the vote to fund gender transition surgeries. His performance was excellent. About the SOF and DC, he said being forced to admit someone into leadership made no sense. Within weeks Younger told him to resign. Vol. 3, pages 577-579.

2.    CWNG speaker Nate Herbst's 2018 speech on Christian apologetics and a 2011 presentation by Stephen Collins on archaeological projects in Jordan proving the accuracy of the bible were not permitted for being "too controversial." Vol. 3, pages 597-598 & 632-633. EH told Marie Miller CWNG could not have a presentation in 2017 by Jonathan Sarfati posted on the Sandia Daily News because he did not believe in evolution but in creation and was pro-life. It concerned cellular biology and how the

body replicates cells. Vol. 3, pages 627-629. In 2015 John Nevers told Terry Hardin he requested approval to host atmospheric meteorologist Michael Oard of Answers in Genesis to speak on global warming. When DIVERSITY found out he was a Christian it rescinded approval. Vol. 3, page 682. Collins said BLC has speakers. He knows of no BLC requests for them that has been denied. Vol. 3, pages 678a-678b. Mar said AIOC has had many speakers. All were approved except one. Vol. 3, page 623. EH had discretion to decide what speakers and events were permitted without written guidelines. She gave no reason for denying CWNG's speaker requests. Vol. 3, page 650, 654 & 656. A February 11, 2021 Sandia e-mail promoted an event sponsored by SPAN about a gay military man to all ERGs. Vol. 4, pages 702-703.

3. 2 investigations were done for using Christian taglines. Vol. 3, pages 591, 597-599. CWNG's collection box and posters were stolen for the toiletry drive for homeless shelters and  rape victims. Management took no required action. Vol. 3, page 597. Amy Tapia of Sandia was told by Jared Colombel in October 2019 that flyers for donations to a food charity by CWNG taped to boxes were vandalized. She does not if Sandia could take action. Vol. 3, pages 666-667. 2 meetings with Stephen Younger were cancelled to discuss diversity training and discrimination against CWNG. Other ERG chairs Colombel spoke to said none of their meetings were cancelled. Vol. 3, page 600.

4. No BLC funding or honoraria requests were denied or granted for less than what was requested. ERGs received $88,136-$193,781 for the years 2019-2022. CWNG received

nothing. Its $700 budget was funded by donations. Vol. 4, page 683. Vol.3, page 595. Other ERGs got funding for leaders' labor. Vol. 3, page 678b.

5.IDEAS would not approve diversity cinema ideas of CWNG. Vol. 3, page 596 & 598.

6.Marie Miller was forced to retract an e-mail asking for prayer for an antiabortion event and tell its recipients to disregard it. Vol. 3, pages 625-626.

7.AIOC's charter stated its leaders had to be of American Indian descent. On Sept. 22, 2020 Aaron Jim told Martin Sandia is in the process of instructing AIOC to open its leadership to all. Jim said "it is a difficult question to answer" whether AIOC did so. He does not know the date it changed the charter, never monitored AIOC to make sure the amended charter no longer required its leaders to be American Indian and does not know if it still has the American Indian descent requirements for its leaders. He did not require AIOC to submit a revised charter because once AIOC took the charter down it no longer violated HR008. He did not follow up because "I wasn't responsible for reviewing ERG charters." He only had verbal confirmation AIOC and BLC changed their race-based leadership requirements. Ben Mar from AIOC said the old charter was taken down from the website. Hill confirmed BLC made the updates but not AIOC. Jim did not ask its leader Chris Collins if BLC charters required leaders to be black, know if he gave Jim a copy of the charter or discussed with him amended language to be put in it. He required CWNG to submit its charter. Vol. 3, pages 637-640. Collins stated since 2019 BLC has had no white leaders. The 1980 charter stated one had to be black to be a leader.The

September 21, 2020 email shows the 1980-2020 charter term "All Black on-roll employees are eligible for membership in the committee…All Black Employees may hold ad hoc membership in for specific subcommittees of projects." He does not recall changing, and cannot say why the new draft never mentions, leadership requirements. The change does not say all Sandia employees may be a leader of BLC. He did not know if ERGs had to change leadership requirements but knew CWNG had to. The early draft says one must be black to be on a subcommittee. The revision nowhere states requirements to be on a subcommittee or mentions leaders. He recalls no discussion with Jim on whether leadership was required to be black or reading the new charter to Jim and does not know whether it requires the leadership to be black. Vol. 3, page 678, 679-681. The SPAN charter states membership is open to all employees interested in fostering an inclusive atmosphere for LGBTQ+ employees, contractors and allies. Vol. 3, page 698. There are no strategic plans, charters or constitutions, leadership or disciplinary clauses for Military Support Committee , Sandia Parents Group, ERGs at Sandia. Vol. 3, page 704.

8. Bianca Hill told JC CWNG was told to broaden its charter so any employee of Sandia could be its leader. Vol. 3, page 673.

9. Amanda Ellis told Martin May 20, 2020 he violated Sandia policy by encouraging people to vote in a NM primary in an e-mail, based on regulations which do not state such encouragement violates the policy if it mentioned no candidate or party, without

asking Sandia's legal department. In June 2020 Amy Tapia e-mailed Liz Gallegos, of HOLA and others inviting them to volunteer for Albuquerque City Community Policing Council,a political group. FAR nowhere mentions encouraging people to vote; it supplies information on 19 elections. Vol. 3, pages 645-648.

10.  Kelsie Carpio Giron paid for speakers for the BLC, SWAN, and Womens' Network Action. No requests for paying speakers were rejected. The amount requested was always paid. Hill said Sandia fully funded all requests by SWAN, BLC, Abilities Champions of Sandia and other ERGs. Honoraria was up to $3500. Vol. 3, page 669-670. CWNG requested $400 for a Pentagon speaker & received $250. Vol. 3, page 595.

11.In 2019 Jared Colombel (JC) of CWNG was told by Kuca he could not have the signature block "Jesus gave it all." Hill said no other employee was told they could not have a signature block. Vol. 3, page 674-676. Hardin, active as a member of CWNG in 2001 learned Sandia told CWNG to remove website links to Focus on the Family and American Family Association, Christian organizations. He saw the website with these references and after removal. In 2018-2019 Sandia put up the PRIDE flag--the rainbow--for the LGBT group. JC told Hardin permission was sought for CWNG to put up the Christian flag. Sandia said it could not be flown. Vol. 3, page 682.

21. The Strategic Plan for FY 2020 for the Disability Awareness Committee (DAC) states "Membership in the (DAC) is open to all Sandians who have an active interest in promoting the DAC goals, and demonstrated commitment to disability issues… The

chairperson shall be a member of the Equal Employment Opportunity and Affirmative Action (EEO/AA) Department, selected by EEO/AA management." Vol 3, page 707. Sandia Women's Action Network FY20 Strategic Plan states "Council Members are selected by Co-Chairs. Self-Nominations are Solicited from the SWAN membership. Preference is given to members that have supported council activities. Council Membership Should Include a Balance of Mission and Mission Support Employees and represent a diverse group of employees." Vol. 3, page 709. Sandia Asian Pacific Leadership Committee FY21 Strategic Plan States: "Council Team Members are selected by Chairs/Vice Chairs. Self-Nominations are Solicited from ERG membership. Preference is given to members that have supported council activities. Council Membership Should Include a Balance of Mission Delivery and Mission Enabling Employees and represent a diverse group of employees." Vol. 3, page 711.

     F. <u>Hostility to Religion</u>

CWNG's SOF includes belief in the diety of Jesus Christ, his virgin birth, resurrection, and atonement of sin through his sacrifice on the cross, and the authority of the bible. Vol. 3, pages 592-593. Its DC states "Based on biblical principal…any person involved in behavior that contradicts clearly defined issues outlined in scripture will not be considered for a leadership role. Vol. 3, page 617. JC was told by Jim and EH CWNG must revise this to comply with HR008 to permit any Sandia member to be a leader.

 Exhibit 38, lines 1- 5.  An antidiscrimination policy interpreted to hold that only

Christian beliefs violate establishes discrimination. Thomas v. Nat'l Ass'n of Letter Carriers, supra. The nondiscriminatory reason, Reynolds, supra, to comply with HR008, violates the religious exemption to Title VII with no attempt to accommodate, Fulton, supra, Abercrombie & Fitch Stores, Inc., supra. HR008 is facially unenforceable, does not incorporate the religious exemption and was unequally applied . A negative judgment on religious activity violates the First Amendment, Church of the Lukumi Aye, Inc. supra, shown by:

1.In 2019 Kuca asked JC to perform roles for which he did not have knowledge and he was not hired soon after he filed a complaint with Hill on another employee. Anna Lorenz sat on the floor of his office for 5-7 minutes, was very loud, refused to leave, made antisemitic remarks and demanded to be elected to the steering committee of CWNG. A week later he given a notice of poor performance though he was a top performer. He complained about retaliation to Kuca and said his participation with CWNG made him a target. Kuca told him if he could demonstrate a year of strong performance he would be promoted. His manager, Dave Skousen, gave him a stellar review. He he had 7 years of top performance reviews. After the year Kuca said "it's not one year, it's 2" and would not submit him for a promotion. Vol. 3, page 587, 589-590.

2.Kuca told him the entire management chain was upset at him for his Christian tagline, in 2018-2019. Vol. 3, page 591.Lab Director Younger told him he said "there is no advocacy allowed" for a Christian world view. Clymo was cut off from CWNG without

explanation. Vol. 3, page 597.

3.Diversity and Inclusion training labeled Christians as Insiders. JC asked Younger not to dismiss the biblical world view. Vol. 3, page 598. In April 2019 he complained to Mark Sellers and EH about diversity training materials. Clymo agreed to strike verbiage and to talk to leadership. At training with IDEAS White Men as Diversity Partners (WMADP) were materials defining "insiders" vs "outsiders." They stated Christians had privilege they were to relinquish. On April 14, 2019, with leaders present, a classmate called Colombel "disgusting" when they found out he was a Christian. Another said in front of the group "There was something about you that makes me sick to my stomach."He sent an e-mail about training, with responses.   Vol. 3, page 600-602 & 610. Vol. 4, pages 685-686, 687-693.

4. Mark Sellers, associate lab director 2018-2020, attended a training meeting April 3-4, 2019. JC was concerned there was discriminatory content which could hurt those who identify as Caucasian, male, straight or Christian and ask that his concerns be put on the agenda for a future ERG meeting. It was not. Sellers sponsored ALOC and Division Diversity and Inclusion ERGs. JC sent an e-mail to the division concerning the training. Nothing was done. Vol. 3, page 663-664.

5. JC told Sellers and EH he was called out for being a Christian. They called it "very healthy training,"JC gave them a document on critical race theory, the Invisible Knapsack by Peggy McIntosh. Vol. 3, pages 602-603 & 607.

6. Younger was angry when JC said the Christian view needed advocacy & "taking this off the table… says it is not true." Vol. 3, page 607-608.

7. Colombel presented a white paper, e-mails and responses from others about training being bigoted to Sellers and EH. An e-mail sent to the whole entity by accident got 14 responses. E-mails stated people "don't like that." Management said they did not like what he was doing. This caused him stomach illness. He could not be open or practice his religion without repercussions. Being an open Christian was very hard. His faith was burdened by not being permitted to have a SOF, DC or speakers. The environment was hostile to Christianity. He could not fully be a Christian. Vol. 3, page 610-614.

8. EH told Martin a Christian ERG wasn't preferred: It'd be best for CWNG to become an "All Faiths Group." Vol. 3, pages 618-619.

9. CWNG could no longer use the Sandia Daily News. In Dec. 2018 Marie Miller told Younger CWNG could not have a scientific presentation. He said it was "too controversial...going to upset someone." Vol.3, page 630.

10. HR008 does not mention religious exemption to Title VI, undue hardship, accommodation of religious beliefs, or RFRA. Vol. 4, pages 699-701. EH and Jim never heard of these or federal guidelines for religious exemption. Vol. 3, pages 635-636, & 652.

11. Hill admitted JC complained about the training, and it was never put on the agenda of

an Executive Council meeting. It never was. Vol. 3, page 672-673.

12.CWNG is the only ERG which lost sponsorship. Kuca admitted Colombel was a

superior worker. Exhibit 4, pages 860-862. As in Fulton, supra, EH decided which

speakers, comments about voting, taglines, charity drives, Diversity Cinemas, flags,

agenda items, investigation of complaints, handouts at training, exemptions to the

antidiscrimination policy, religious accommodation and funding was permitted. Hostility

to religion,  Masterpiece Cake Shop  supra and discretionary application of HROO8

involving a negative judgment on religious activity, Church of the Lukumi Aye, supra,

violate the First Amendment. Sandia derecognized CWNG from Sandia because of its

views, Healy, supra, singling it out for disadvantageous treatment. Subject to strict

scrutiny, the interest in enforcing antidiscrimination law is not sufficiently compelling to

justify viewpoint discrimination against religious speech. Widmar v. Vincent, supra.

G.RFRA

https://www.sandia.gov/about/ states [Sandia is]the nation's...science and
engineering laboratory for national security and technology innovation…[of] $3.9
billion in funding...including $2.4 billion under the DOE's National Nuclear Security
Administration. Weapons... $2.2 billion...Defense Nuclear Nonproliferation...$260
million. Nuclear Deterrence, 59.7% • Global Security, 16.7% • National Security
Programs, 13.8% • Energy and Homeland Security, 7.3% ...Sandia…is a Federally
Funded Research and Development Center, whose facilities are owned by the U.S.
government. The government...operates Sandia...using a government-owned...model. …
Congress made Sandia a Department of Energy (DOE) national laboratory…Sandia
[is]..the engineering arm of the nation's nuclear weapons enterprise...arms
control...satellites, engineering and materials [for]U.S. space exploration.

Sandia is an instrumentality of the Department of Energy (DOE), funded by the U.S.

Government. The National Nuclear Security Administration, NNSA, an agency of the DOE, funds Sandia, 85 percent of its budget, the rest comes from agencies such as the Office of Science. It takes direction and approval for expenditures from the DOE, its employees are subject to federal employee rules and regulations. " the Department of Energy...can tell us what to do. Sandia is an instrumentality of the DOE through NNSA. Vol. 3, pages 580-581. Parsons, CFO for Sandia, stated its $4.4 billion budget is 99% funded by the federal government. It supports numerous federal agencies. DOE issues it an annual performance evaluation. Most of the land on which Sandia has its facilities, and computers and equipment are owned by the federal government. It uses federal government classifications for security. He did not deny Sandia is an instrumentality of the federal government. Vol. 3, page 583-585. JC and Martin said Sandia is involved in areas exclusive to government--nuclear weapons and satellite development, advice on decisions throughout the US government, international treaties, & defense strategy in energy policy. Vol. 3, page 605-606 & 621. "Government" includes an instrumentality acting under color of law of the U.S. 42 USCA§2000bb(2)(1). An federal Executive Order to Promote Diversity led to HROO8 August 29, 2018. Rendell-Bala v. Kohn, 457 U.S. 830 (1982) found state actor factors include serving a uniquely public function, exclusive function of the state. Id, 840, 842. Nuclear weapons, national security, defense nuclear nonproliferation and space exploration and being the nation's premier laboratory for these are uniquely public functions. Government includes a department or

instrumentality, of the U.S. 42 USC§2000bb(2)(1). Clymo established Sandia is an instrumentality of the Dept. Of Energy. RFRA applies.

H. Injunctive Relief

Loss of First Amendment freedoms is irreparable injury.Elrod v. Burns, supra. As in CLS v. Walker, Sandia violated CWNG's free speech rights by ejecting it from an ERG in which it had a right to remain. The Religious exemption allows CWNG to have the SOF and DC. It is a private speaker. HR008 may not be applied to suppress the Christian viewpoint,  Dale, 530 U.S. At 659-661, Hurley, supra, but was to ban only Christian expression or suffer derecognition. 1st Amendment freedoms are substantial. Disapproval of its expression does not justify compelling it to accept members who would derogate from the organization's expressive message." Id. at 661.Healy, supra, held associational rights were impermissibly infringed by refusing to confer organization status and benefits. Rules directed at faith do not justify derecognition, Id., 181-184, 188-194, freezing out of channels of communication and denying funding or access to facilities.Sandia created a speech forum-- ERGs—with  benefits and ejected CWNG from it without  compelling reason. These speech restrictions in a nonpublic forum discriminated on the basis of viewpoint and were not "reasonable in light of the purpose served by the forum.'" Good News Club v. Milford Central School, 533 U.S. 98, 106-107 (2001)..Once Appellee set the boundaries of its forum, it…must respect them. Rosenberger, 515 U.S. At 829. Whether public or nonpublic for a, CWNG is entitled to

an injunction. HR008 ignores the religious exemption. CWNG is the only ERG stripped

of its ERG status to enforce HR008. Other ERGs requires belief in their views or some

requirement other than being a Sandia employee to be a leader. Sandia applied HR008 to

CWNG alone, treating it differently regarding speakers, events, funding, discussion at

board meetings, and other areas. There is rampant antichristian hostility. These are

irreparable injuries, <u>Elrod</u>, 427 U.S. At 372, a significant infringement of the right of

expressive association. <u>Healy</u>, 408 U.S at 181.The harm Sandia claims, the hardship of

violating HR008, applied so as to violate the First Amendment, is no harm at all.

  I. <u>Leave to File Second Amended Complaint</u>

  <u>Hamric v. Wilderness Expeditions,</u> 6 F. 4th 1108, 1118 (10th Cir. 2021)held:

In the absence of...undue delay, bad faith or dilatory motive...repeated failures to cure
deficiencies by amendments previously allowed, undue prejudice to the opposing
party...futility of amendment... where amendment merely states an alternative theory of
recovery, it should be granted....an amended pleading is prejudicial if it adds a new legal
theory that would require the gathering...of facts not already considered by the opposing
party or offered shortly before trial. Leave was sought one day before discovery
closed...negligent retention changes the nature of the case...negligence concerns...actions
in responding to Plaintiff's injuries....negligent retention focuses on... employment
history and...decisions in dealing with it. Plaintiff...failed to show that...evidence
regarding Spears' past conduct has been obtained during discovery. Had [this] been
obtained, the prejudice...in the late amendment would have been abated. ... Hamric...did
not advance an argument for amending the Scheduling Order as required by Rule
16(b)...[or]...present a good cause argument under Rule 16(b), a lower court does not
abuse its discretion by denying leave to amend.

Appellant sought to add RFRA,  Title VII and constitutional claims, alternative theories

of recovery. They embrace the same facts to show hostility and differential treatment.

Leave was sought March 13, 2023. Vol. 1, page 9. The discovery deadline was April 28,

then June 9, 2023. Vol. 1, pages 5 & 12. Questions relevant to RFRA were asked at

depositions. Appellees identify no facts it could not obtain in 46-88 more days.

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability...Granting government funding...or exemptions...shall not constitute a violation of this chapter…

42 USC §2000bb-1(a) & -4. On Feb. 28, 2023 Appellees disclosed an expert report

stating 1) the SOF may not be universally accepted by all groups that would consider

themselves Christian and b) the DC would not be uniformly interpreted by all groups

that identify as Christian. Vol. 1, pages 129-130. These opinions, which could not

reasonably have been foreseen by Appellant,imply for the first time that since Christians

would not agree to the SOF and DC there is no substantial burden if Plaintiff is removed

as an ERG from having these terms. The issue whether these were such central tenets to

Christianity that they curtailed the ability of Appellants' members to express their faith

or engage in activities fundamental to it, relevant but not required for Title VII or §1983

claims, was introduced. Werner v. McCotter, 49 F. 3rd 1476, 1480-1481 (10th Cir. 1995).

Would a real Christian have to choose between faith or being in an ERG like Plaintiffs

had to choose between their children being in Amish schools up to 8th grade with a fine

or prison time or sending them to public schools? Wisconsin v. Yoder, 406 U.S. 205

(1972). Title VII focuses on balancing accommodation with business hardship. RFRA

and the First Amendment require the government to meet a stricter standard of proving a

compelling interest and using the least restrictive means. Hobby Lobby held "person"

within RFRA applies to closely held and unincorporated associations.. Appellees

substantially burdened exercise of religion to enforce antidiscrimination law, which fails

as a matter of law. <u>Gonzales</u>, supra; <u>Walker,</u> supra; <u>Eck</u>, supra.

In <u>Minter v. Prime Equipment Company</u>, 451 F. 3rd 1196 (10th Cir. 2006)

Defendant submitted an expert report stating the lift's guardrail system had been
altered ...after leaving its contact. Within a month Defendant reversed its position and
stipulated that Economy  manufactured and sold the scissor lift with 4 solid guardrails.
… Defendant was dilatory by changing its position about a key fact in the case. There
was no showing of prejudice in light of the similarities between the complaint and
amended complaint. The finding of prejudice was erroneous and leave to amend should
have be granted under both Rule 16(b)(4) and Rule 15(a).

Id, 1207-1208, 1210-1211. Such similarities exist here. The expert report suprised

Appellant. Under <u>Minter</u> there is good cause. 13 days later on March 13, 2023, Plaintiff

filed for leave to amend. The court found there is no good cause if Appellant knew of

conduct but failed to raise a claim. Vol 4, page 843. Appellant did not foresee such a

report. <u>Birch v. Polaris Indus., Inc.</u> ,  812 F.3d 1238, 1248  (10th Cir. 2015) held:

Appellants had learned through Polaris's April 6, 2014 Notice...and...May 1, 2014
deposition that they might be able to allege claims for  negligent training [but]...did not
move to amend their complaint "until...eleven months after...the...deadline."...assuming
they did not obtain the information they needed to seek amendment until the June 26,
2014 disassembly... Appellants...expert, testified he knew by October 2013 that the new
ROPS was not a 2011 model year...Mr. Damron testified on March 20, 2014...he had
bought a new ROPS on Craigslist.com; Polaris filed a Notice...indicating its intent to pin
liability on Mr. Damron; and Mr. Deckard testified in May 2014 that a 2008 ROPS
would not fit on a 2011 RZR main frame....they offered "no adequate explanation for the
four month delay... [except]...they needed time to review the record...[but]...neglected to
make this argument to the magistrate judge.

id, 1248-1249. There were no such facts here. <u>Duncan v. Manager, Dept. of Safety, City</u>

and County of Denver, 397 F. 3rd 1300 (10th Cir. 2005) held untimeliness justifies

denial.. Leave was denied. A new complaint had inadmissibale evidence. Id 1315.

    Bylin v. Billings, 568 F. 3rd 1224 (10th Cir. 2009) held

counsel asked the court for "at least a couple days" to respond to the defendants' motion.
The court...eight days later...granted the defendants' motion and gave the Bylins...five days
to respond to the defendants' statute-of-limitations defense. The Bylins filed their
response ...that day, addressing...amendment...and the statute-of-limitations issues. The
court...allowed the Bylins to supplement their fraud claim with depositions...taken after the
November 2 discovery deadline...and gave...ten...days  to submit a brief concerning the ...
statute of limitations defense ..[there was] adequate notice of the statute-of-limitations
defense and...ample opportunity to respond....[it] did not raise new issues requiring
substantial discovery... the expenditure of time, money, and effort alone is not grounds
for a finding of prejudice. *Block v. First Blood Assocs.*, 988 F. 2nd 344, 351 (2d Cir.
1993)...*Granus v. N. Am. Philips Lighting Corp.*, 821 F. 2nd 1253, 1256(6th Cir. 1987)...
granting...leave to amend did not unduly prejudice the Bylins...This circuit, however, has
not ruled on that question in the context of an amendment to an existing pleading...
*Minter v. Prime Equip. Co.*, 451 F. 3rd 1196, 1205 n. 4(10th Cir. 2006) (...but have not
decided whether Rule 16 applies to a post-deadline amendment to a pleading).

Id 1229-1231. Issues from new claims could be covered at depositions. Gorsuch, Ltd.,

B.C v. Wells Fargo National Bank Association, 771 F. 3rd 1230 (10th Cir. 2014) held that

Rule 16's good cause requirement is satisfied if a Plaintiff learns new information

through discovery; amendment denied;  2year delay was not explained. id., 1242.

    Pumpco, Inc. v. Schenker, Int., Inc., 204 F.R.D. 667 (D. Colo. 2001) held

this court may ' modify the schedule on a showing of good cause if [the deadline] cannot
be met despite the diligence of the party seeking the extension.'...documents recently
received from Schenker...establish a basis for an additional claim for breach of fiduciary
duty against Schenker...information learned through discovery...if occurring after the
deadline to amend contained in the Scheduling Order constitues good cause to justify an
extension of that deadline... plaintiff...learned for the first time...the names of the Daewoo
representatives who allegedly made affirmative false statements in connection with the

plaintiff's purchase of the concrete pumping trucks...The fact that a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend  established in the scheduling order has expired constitutes good cause to extend that deadline....I do not find that a party is guilty of undue delay...where it postpones seeking leave to amend to allege misrepresentations until the identities of the people involved...become known....the deadline for conducting discovery has closed, no trial date has been set....[if] parties believe that additional discovery is required...they may ask to reopen discovery and to alter any other deadlines...prejudice which might arise from these late amendments is thus capable of being cured.

The expert report was such a document.  Husky Ventures, Inc. v. B55 Invs. Ltd, 911 F. 3rd

1000 (10th Cir. 2018) held

B55... knew of the allegedly "new" information months before the motion to amend...threats of lawsuits against various people, including those [B55] propose[d] now to join as counterclaim defendants ... make[ ] [it] abundantly clear that [B55 was] aware of litigation possibilities against these people months ago...McArthur opined in an email dated April 15, 2016, that Mr. Gregg McDonald, who was listed as a potential new defendant in the formal motion to amend, "[m]ight as well [be] name[d] ... now.''..motion was...filed...more than six months later....emails from May 2016 also evinced B55's knowledge of potential claims against Mr. Long, Chase Graham, and April Glidewell... the scheduling order...March 2016... informed the parties that the discovery cut-off was October 15, 2016....the motion to amend—submitted...on the eve of trial—was even more tardy.

Id, 1020-1021.   Appellant had no such information until 13 days before filing.

Federal Insurance Co. v. Gates Learjet Corp, 823 F. 2nd 383, 387 (10th Cir. 1987) held

Gates failed to assert the statute of limitations defense until four years after the complaint was served....Gates possessed documents from which it could have discovered...

Appellant had no way to know Appellees would a reasonable Christians can differ defense.

*Horn v. Allied Mut. Casualty Co.,* 272 F. 2nd 76, 80 (10th Cir. 1959) held:

after the trial of the case...appellants...request[ed] permission to amend...answers...[There was no] newly discovered evidence.

Evans v. Syracuse City School Dist., 704 F.2d 44, 48 (2d Cir. 1983)held:

Defendant did not move to amend its answer...until...two years and nine months after the defense became available. ...

40

First Nat'l Bank v. Master Auto Serv. Corp., 693 F.2d 308, 314 (4th Cir. 1982) held

on May 7, 1981, discovery cut-off dates were set...On August 24, 1981...new counsel was...substituted ... On October 7, 1981, nineteen days before the trial, the Bank sought to amend its complaint to allege a "sale out of the ordinary course of business"...

Hasan v. AIG Prop. Casualty Co., 935 F. 3rd 1092, 1101 (10th Cir. 2019) held

final...order [was] December 12, 2017....On May 15, Plaintiffs filed a renewed motion to amend their complaint to add [that]claim.... permitting the amendment would have required reopening discovery and setting a new trial date.

Discovery need not be reopened. The court delayed a year to rule on the motion.


Tesone v. Empire Mrkg. Strategies,  942 F. 3rd  979, 989 (10th Cir. 2019)  held

Tesone had not shown "good cause" under Rule 16(b)(4) as to why she should be allowed to amend after the scheduling order deadline....[and]...failed to "show the scheduling deadlines [could not] be met despite [her] diligent efforts."...[or]that she made diligent efforts to meet the expert disclosure deadline and...has not demonstrated the "good cause" [to] to modify a scheduling order under  Rule 16(b)(4).... She filed her motion..ten months after the court's January 22, 2018 amendment deadline...based on new information...deposition testimony [revealed Defendant]discussed firing Ms. Tesone ... only after she made an oral request for accommodations...I see no reason why [Tesone] could not have asserted her claims in the Complaint.... facts giving rise to her [proposed] retaliation claim and perception claim *were included in her original complaint* ...She offers no explanation for why she waited until November...

 The court states that Appellant failed to show efforts to comply with the scheduling

order by the December 30, 2022 deadline. Vol. 4, page 843-844. Appellant propounded

discovery. The February 28, 2023 disclosure could not have reasonably been predicted.

88 days before the new discovery deadline of June 9, 2023, the motion was filed.


 Frank v. U.S.W.,Inc. 3 F. 3rd 1357, 1365-1366 (10th Cir. 1993) held

 motion...was filed four months after the court's deadline for amending pleadings...Plaintiffs...should have known long before that date that Northwestern Bell was a possible defendant...[it was no abuse of discretion to deny] leave to amend.

 J. Prejudice

The court states prejudice is forcing Appellees to face additional claims that could have been brought and more efficiently addressed by Plaintiff at the inception of the lawsuit and costs. Expenditure of time, money, and effort alone are not prejudice.Bylin v. Billings,, supra. The court states it granted summary judgment on many  facts. It did not consider undisputed facts of unequal treatment and hostility towards beliefs that support a RFRA claim.  The court never states why all the discovery for a RFRA claim could not have been done from March 13-June 9, 2023, or how any new discovery was needed.

K.   Title VII

 The court cites Tabura v. Kellogg USA, 880 F. 3rd 544, 550 (10th Cir. 2018), which held firing, and EEOC v. Abercrombie & Fitch Stores, Inc. 731 F. 3rd 1106,1122 (10th Cir. 2013) held failure to hire, may make out a claim. Vol 4, page 816. Neither case dealt with a significant change in other benefits or support the court's statement that firing is needed to make out a Title VII claim. Adverse action is not limited to terms and conditions of employment bu whatever might have dissuaded a reasonable worker from making or supporting a charge of discrimination, not limited to monetary losses but can include a significant risk of humiliation. Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010). Harm under Title VII may include a decision causing a significant change in benefits, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998), a "disadvantageous" change in an employment term or condition, Oncale v. Sundowner Offshore Services, Inc., 523 U. S. 75, 80 (1998) or  "differences in

treatment that injure" employees. <u>Bostock v. Clayton County</u>, 590 U. S. 644, 681 (2020).

Terms or conditions covers more than the economic or tangible. <u>Oncale,</u> 523 U. S., at

78; <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U. S. 57, 64 (1986). Some harm from

discrimination is required but it need not satisfy a significance test. <u>Mudrow v. City of</u>

<u>St. Louis</u>, 144 S. Ct. 967 (2024). Removal of ERG status is a significant change in

benefits. Appellant cannot recruit, sponsor speakers, meet with the lab director, be

involved in Diversity Cinema, write articles for Sandia News, use the premises for

gatherings or receive RRG e-mails. The court stated Appellant provided no record

citations to prove this. Vol 4, page 817. It did. It was argued in in ¶41, Response to MSJ

Regarding Religious Discrimination. Vol. 3, page 467 and Appellant's Motion for

Summary Judgment:

 CWNG is no longer able to sit on the Executive Council with leadership, cannot use

any Sandia facilities after its was derecognized, or campus bulletins or emails, the

Sandia Daily News, advertise events on Sandia media,hold recruiting events, host

speakers or events at Sandia, obtain funding or have events except off premises.

Vol. 4, page 713. Vol. 2, pages 423-424.    As to accommodation, the court found Sandia

took reasonable steps and was concerned about other ERG's similar restrictions and the

BLC charter was amended and AIOC was told it charter needed to change. Vol. 4, page

818.  This ignores differential treatment and hostility. The court states that Plaintiff was

not required to modify its religious beliefs. Its tenet of faith and right to discipline were

banned. The court ignored Groff v. DeJoy, 143 S. Ct. 2279, 2294, 2296 (2023) held

showing "more than a *de minimis* cost," ...does not suffice to establish "undue hardship" under Title VII. Undue hardship is shown when a burden is substantial in the overall context of an employer's business. .. a hardship...attributable...to religion in general, or to the very notion of accommodating religious practice cannot be considered "undue."

    L. Capacity to Sue

    As to whether it is a "person" under §1983, the court states Appellant made no

responsive arguments. Vol 4, pages 826-828. In its Response to Motion for Summary

Judgment  regarding Capacity argues:

Capacity to sue...is determined by the law of the state where the court is located...an... unincorporated association with no capacity to sue under that state's law may sue...in its common name to enforce a substantive right existing under the U.S. Constitution or laws. Rule 17(b)(3)(A) FRCP. An unincorporated association may sue…in its common name for the purpose of enforcing… any substantive right N.M.S.A. §53-10-6....

Vol. 2, page 413. The court states that unincorporated associations are not persons who

can sue under §1983.Lippoldt v. Cole,  468 F. 3rd 1204, 1216 (10th Cir. 2006) held

legislative history of §1983...indicates unincorporated associations are not persons as entities are "by reason of their natural citizenship..." US v. Amedy, 24 U.S. 392, 412 (1826) held that "corporations are, in law, for civil purposes, deemed persons is unquestionable," and Louisville C & CR, Co. v. Letson, 43 U.S. 497, 558 (1844) held a corporation...is...a person...a citizen of that state as much as a natural person." In 1948 1 U.S.C. § 1 found persons to include associations. Labor unions may sue under §1983. Allee v. Medrano, 416 U.S. 802, 819 n. 13 (1974)....based on their similarity to corporations not unincorporrated associations.

Id, 1215.    KS Statute §60-223b (2014)Actions relating to unincorporated associations

applies to an action brought by...the members of an unincorporated association...by

naming certain members as representative parties [who will]...adequately protect the

interests of the association and its members.  This law post-dated  Lippoldt v. Cole,

involved a Kansas U.I. In 2006 a U.I. could not sue in Kansas. But a N.M. U.I. Could in

2006 so Lippoldt does not apply. Rule 17(b)(3) FRCP was enacted in 1938.

In Becker v. Ute Indian Tribe of Unintah and Ouray Reservation, 868 F. 3rd 1199 (10th

Cir. 2017), the case was dismissed not because the tribe was an unincorporated

association but because it was proceeding in its sovereign capacity, not as a person under

§1983. The Court held Ute Energy Holdings, LLC was dismissed as a Plaintiff because

it was an unincorporated association without capacity to sue. id, 1206.     utah-

biz.com/co/ute-energy-holdings-llc reveals the entity is an LLC, a type of corporation

registered 4/5/2005, address  7074 EAST 900 SOUTH, FORT DUCHESNE, UT 84026 and a

registered agent of CT Corporation System, not an unincorporated association in 2017.

 N.M. Transportation Union v. City of Albuquerque, No. 1:14-cv-00280, RB/KK, 2015

WL 13666996 at *2 (D.N.M. February 13, 2015) Plaintiff was not represented by

licensed counsel. The Tenth is the only circuit holding unincorporated associations have

no capacity. Allee v. Medrano, 416 U.S. 802, 819 n. 13 (1973) held an unincorporated

association has capacity to sue in federal court. Fort Lauderdale Food Not Bombs v. City

of Fort Lauderdale, 11 F. 4th 1266, 1283 (11th Cir. 2021) held:

Congress amended the text of § 1983 twice after the 1948 amendment to the Dictionary
Act -- which made clear that "person" in "any Act of Congress" includes "associations"
and "societies"...62 Stat. at 859; 1 U.S.C. § 1... after the 1937 promulgation of FRCP
17(b)...1937 Rep. Advisory Comm. on Civ. Rules 47 (1937); Fed. R. Civ. P. 17(b)(3)...an
unincorporated union could "sue under 42 U.S.C. § 1983 as [a] person[ ] deprived of
[its] rights secured by the Constitution and laws." Allee v. Medrano, 416 U.S. 802, 819
n.13 (1974). ...by the time of the 1979 and 1996 amendments to § 1983, federal law
made it quite clear that unincorporated associations were "persons" that could sue to

enforce constitutional rights under § 1983. .. <u>Allee</u> suggests that an unincorporated entity like FLFNB, just like the unincorporated union in that case, is a "person" for § 1983 purposes....The Court...did not so much as mention, characteristics surrounding unions that other types of unincorporated associations may not share, such as their affirmative recognition and privileges in federal and state law....the court concluded, without limiting its reasoning, that unincorporated unions were § 1983 "persons." The...meaning of the term "person" at the time the Civil Rights Act was passed in 1871 presented no obstacle to the result the Supreme Court reached in Allee. A union was neither an individual nor a corporation, yet the Supreme Court held that it still fell within the ambit of the term "other person." ...The Tenth Circuit, which holds that unincorporated associations cannot sue under § 1983, stands alone against the trend of treating unincorporated associations as "persons." <u>Lippoldt</u>, 468 F.3d at 1216 ...The Tenth Circuit...did not account for the fact that Congress re-enacted the word "person" in § 1983 twice after intervening developments in federal law clarified that unincorporated associations were "persons."..in enacting § 1983, Congress "intended to give a broad remedy for violations of federally protected civil rights." Monell, 436 U.S. at 685, 98 S.Ct. 2018...hold that FLFNB is a person that may bring suit under § 1983.

M. <u>State Action</u>

<u>DeVargras v. Mason & Hanger-Silas Mason Co</u>., 844 F. 2nd 714 (10th Cir. 1988) held:

Los Alamos National Laboratories operates under an agreement between the Department of Energy and regents. Defendant refused to process his application relying on... applicable DOE regulations banning one-eyed individuals as security inspectors.. [but] do not dispute...the...finding that they were state  actors for the purpose of §1983 claims. Id, 715-716. The court states this does not prove Sandia is a state actor for purposes of

§1983. Los Alamos, like Sandia, is a federal nuclear laboratory.

<u>Doe v. Lawrence Livermore Labs</u>, 65 F. 3rd 771 (9th Cir. 1995) held

the  §1983 claim against John Nuckolls, [Defendant's] director...  We reverse the dismissal of Doe's  §1983 claim against Nuckolls in his official capacity. [There was a] contract between the USA and university for the management and operation of the laboratory...the  §1983 claim was against Nuckolls, the Lab...in their official capacities alleging violations of due process of law because unqualified persons at the lab preemptively determined eligibility for a Q security clearance  in violation of federal security clearance regulations. An Amended Complaint was filed against Nickolls and other employees in their individual capacities [under] §1983...the university is not functioning as an arm of the state. As such it is a person under §1983. <u>Will v.Michigan D. of S.P.</u>, 491 U.S. 58, 70 (1989)...Nickolls...director of the university-managed laboratory is therefor not a state official but a "person" who is fully liable under §1983.

id, 772-773, 777. Individual Appellees here are like Nickolls. The university in <u>Doe</u> was not functioning as an arm of the state. Sandia even if not functioning as as arm of the state is an instrumentality of the Dept. of Energy and a person under §1983. <u>Ochieno v. Sandia Nat. Labs</u>, No. 18-197, 2019 WL 161503 at *1 (D.N.M. 2019) held

Plaintiff has not pleaded facts to show Defendant is a state actor...it failed to make out a plausible 1st Amendment claim.

Id, 6-7. Here such facts were pled as was a first Amendment claim.

## Conclusion Including Relief Sought

Appellant seeks and order reversing the court below, ordering Appellees to reinstate Appellant as a Employee Resource Group with its statement of faith and disciplinary clause, and remanding so the court may award damages and counsel fees and costs.

Oral argument is requested because it will aid the court in making an accurate ruling.

## Certificate of Compliance and other certifications.

I certify the brief contains 12,497 words. The attorney whose name appears on this brief is a member of the bar of this court. This brief complies with the type-volume requirements of F.R.A.P. 35(b)(2) because the brief contains less than 13,000 words or 15 pages. The brief also complies with the typeface requirements of Rule 32(a) because it was prepared in a 14 point Times New Roman font, a proportionally spaced typeface, suing Microsoft Word. On July 29, 2024, I electronically filed the forgoing brief with the Clerk of Court for the United States Court of Appeals for the 10th Circuit by using the appellate CM/ECF system. The hard copy is the same as what was filed electronically. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system. This document was scanned for viruses using Webroot SecureAnywhere CE 23.2 Anti-virus July 29, 2024 and there were no viruses were detected. I, J. Michael Considine, Jr., hereby certify that I transmitted a copy of the Brief of Appellant by electronically filing it on the following counsel of record on the date indicated below: Jocelyn Drennan, Rodey, Dickason, Sloan, Akin & Robb, P.A.,201 Third Street NW, Suite 2200, Albuquerque, NM 87102

July 29, 2024                    s/ J. Michael Considine, Jr.
                                 Counsel for Appellant