No. 24-2072

IN  THE  UNITED  STATES COURT OF APPEALS
FOR THE  TENTH  CIRCUIT

CHRISTIANS IN THE WORKPLACE
NETWORKING GROUP,

        Appellant,

v.

NATIONAL TECHNOLOGY AND ENGINEERING
SOLUTIONS OF SANDIA, LLC, a wholly owned
subsidiary of Honeywell International, Inc.;  ESTHER
HERNANDEZ, AARON JIM, and BIANCA HILL,

        Appellees.

_____

Appeal from the United States District Court for the District of New Mexico
The Honorable David Herrera Urias, District Court Judge
(D. Ct. No. 1:22-CV-00267-DHU-DLM)

_____

**RESPONSE BRIEF OF
APPELLEES NATIONAL TECHNOLOGY AND ENGINEERING
SOLUTIONS OF SANDIA, LLC, ESTHER HERNANDEZ, AARON JIM,
AND BIANCA HILL**

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
Jocelyn Drennan    jdrennan@rodey.com
Charles Vigil       cvigil@rodey.com
Samantha Hults    shults@rodey.com
Melissa Kountz    mkountz@rodey.com
P.O. Box 1888
Albuquerque, NM 87103
Telephone: 505-765-5900
*Counsel for Appellees*

*ORAL ARGUMENT REQUESTED*

# DISCLOSURE STATEMENT

Sandia National Laboratories is a Government-Owned, Contractor-Operated, Federally Funded Research and Development Center managed and operated by National Technology and Engineering Solutions of Sandia, LLC ("NTESS"). NTESS is a wholly-owned subsidiary of Honeywell International, Inc., a publicly-traded corporation.

# TABLE OF CONTENTS

Disclosure Statement....................................................................................i

Table of Authorities ...................................................................................iv

Introduction ................................................................................................1

Statement of Issues Presented For Review ................................................3

Statement of the Case.................................................................................4

Summary of the Argument.......................................................................10

Argument..................................................................................................11

1.  Denial of CWNG's Motion For Leave To File A Second Amended
    Complaint Was Proper.......................................................................11

    A.  CWNG Does Not Demonstrate The District Court
        Abused Its Discretion In Its Rule 16(b) Analysis ...............13

    B.  If Reached, CWNG Does Not Demonstrate That
        The  District Court Abused Its Discretion In Its
        Rule 15(a) Analysis ..............................................................17

2.  Summary Judgment On The Title VII Claim In Count 1 Of The First
    Amended Complaint Is Proper  .........................................................22

    A.  CWNG Lacks Statutory Standing To Bring A
        Title VII Claim .....................................................................24

    B.  Alternatively, CWNG Lacks A Viable Title VII
        Failure To Accommodate Claim............................................26

        i.   CWNG Fails To Meet Its Prima Facie Burden.........28

        ii.  If Reached, Defendants Provided A Reasonable
             Accommodation .........................................................32

        iii. If Reached, CWNG's Undue Hardship Argument
             Is Unavailing .............................................................37

3.    Summary Judgment On The 42 U.S.C. § 1983 Claims In Counts 2
       Through 6 Of The First Amended Complaint Is Proper ...............................42

       A.    CWNG Is Not A "Person" Entitled To Sue Under
              Section 1983 .........................................................................43

       B.    Defendants Did Not Act Under Color Of State Law
              As Is Required For A Section 1983 Claim............................................47

       C.    The Court Need Not Address CWNG's First
              Amendment And Injunctive Relief Arguments ..................................51

Conclusion ............................................................................................51

Statement Regarding Oral Argument ......................................................51

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adler v. Wal-Mart Stores, Inc.*,
144 F.3d 664 (10th Cir. 1995) ....................................................23, 31, 37, 38, 45

*Allee v. Medrano*,
416 U.S. 802 (1974)...................................................................................45, 46

*Banks v. Service America Corporation*,
952 F. Supp. 703 (D. Kan. 1996).........................................................................32

*Becker v. Kroll*,
494 F.3d 904 (10th Cir. 2007) .........................................................................43, 48

*Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*,
868 F.3d 1199 (10th Cir. 2017) .............................................................43, 44, 46

*Big Cats of Serenity Springs, Inc. v. Rhodes*,
843 F.3d 853 (10th Cir. 2016) .........................................................................50

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971).....................................................................................43

*Bronson v. Swensen*,
500 F.3d 1099 (10th Cir. 2007) ...........................................................11, 21, 48

*Bylin v. Billings*,
568 F.3d 1224 (10th Cir. 2009) (Aplt.'s Br. ) ....................................................18

*Cagle v. Weill Cornell Medicine*,
680 F. Supp.3d 428 (S.D.N.Y. 2023) ..........................................................38, 40

*Christian Heritage Academy v. Okla. Secondary Sch. Activities Ass'n*,
483 F.3d 1025 (10th Cir. 2007) ............................................................................4

*Cook v. Billington*,
541 F. Supp. 2d 358 (D.D.C. 2008)..............................................................26

*Cross v. Home Depot*,
390 F. 3d 1283 (10th Cir. 2004) .....................................................................30

*DeVargas v. Mason & Hanger-Silas Mason Co.*,
   844 F.2d 714 (10th Cir. 1988) ......................................................48, 49

*Doe v. Lawrence Livermore National Laboratory*,
   65 F.3d 771 (9th Cir. 1995), *rev'd sub nom*
*Regents of the Univ. of Cal. v. Doe,*
   519 U.S. 425 (1997) ...................................................................49, 50

*Does 1-11 v. Bd. of Regents of Univ. of Colo.*,
   100 F.4th 1251 (10th Cir. 2024) .........................................................38

*EEOC v. Abercrombie & Fitch Stores Inc.*,
   135 S. Ct. 2028 (2015).......................................................................33

*Exum v. U.S. Olympic Comm.*,
   389 F.3d 1130 (10th Cir. 2004) .........................................................13

*Forrest Cnty. Branch, NAACP v. Johnson Controls, Inc.*,
   No. 2:10-cv-25, 2010 WL 3168059 (S.D. Miss. Aug. 9, 2010) ........................26

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
   11 F.4th 1266 (11th Cir. 2021) ..........................................................46

*Frank v. U.S. West*, *Inc.*,
   3 F.3d 1357 (10th Cir. 1993) .............................................................17

*Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*,
   771 F.3d 1230 (10th Cir. 2014) ....................................................12, 16

*Griess v. State of Colo.*,
   841 F.2d 1042 (10th Cir. 1988) .........................................................18

*Groff v. DeJoy*,
   143 S. Ct. 2279 (2023)................................................... 37, 38, 39, 40

*Hall v. Am. Nat'l Red Cross*,
   86 F.3d 919 (9th Cir. 1996) .........................................................19, 20

*Hamric v. Wilderness Expeditions, Inc.*,
   6 F.4th 1108 (10th Cir. 2021) .................................................11, 12, 16

*Husky Ventures, Inc. v. B55 Inv. Ltd.*,
  911 F.3d 1000 (10th Cir. 2018) ........................................................13

*Hasan v. AIG Prop. Cas. Co.*,
  935 F.3d 1092 (10th Cir. 2019) ........................................................17

*Hayes v. Skywest Airlines, Inc.*,
  12 F.4th 1186 (10th Cir. 2021)..........................................28, 30, 44, 45

*Ibrahim v. Alliance for Sustainable Energy, LLC*,
  994 F.3d 1193 (10th Cir. 2021) ...................................................27, 30

*In re Woods*,
  743 F.3d 689 (10th Cir. 2014) .........................................................22

*Johnson v. Weld Cnty., Colo*,
  594 F.3d 1202 (10th Cir. 2010) ...................................................28, 32

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
  1:19-cv-02462, 2024 WL 1885848, F. Supp.3d (S.D. Ind. April 30,
  2024) ..............................................................................39, 40

*Lippoldt v. Cole*,
  468 F.3d. 1204 ...............................................................43, 44, 45, 46

*Manhattan Cnty. Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019)..................................................................21

*Mata v. Saiz*,
  427 F.3d. 745 (10th Cir. 2005) ........................................................23

*McDonnell Douglas Corporation v. Green*,
  411 U.S. 792 (1973)....................................................................27

*Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*,
  654 F.3d 1073 (10th Cir. 2011) .......................................................46

*Minter v. Prime Equip. Co.*,
  451 F.3d 1196 (10th Cir. 2006) ...................................................17, 18

*Mitchell v. City of Moore, Okla.*,
  218 F.3d 1190 (10th Cir. 2000) .......................................................23

*Muldrow v. City of St. Louis, Missouri*,
    601 U.S. 346 (2024).........................................................................30

*New Mexico Transportation Union v. City of Albuquerque*,
    No. 1:14-cv-00280, 2015 WL 13666996 (D.N.M. Feb. 13, 2015) ...................46

*Nixon v. City and Cnty. of Denver*,
    784 F.3d 1364 (10th Cir. 2015) ..........................................................13

*Ochieno v. Sandia National Laboratories*,
    No. 18-197, 2019 WL 161503 (D.N.M. Jan. 10, 2019) ....................................50

*Peck v. McCann*,
    43 F.4th 1116 (10th Cir. 2022) ...........................................................23

*Pinkerton v. Colo. Dep't of Transp.*,
    563 F.3d 1052 (10th Cir. 2009) ..........................................................31, 37, 50

*Pinsker v. Joint Dist. No. 28J of Adams and Arapahoe Counties*,
    735 F.2d 388 (10th Cir. 1984) ..........................................................33, 36

*Reagan-Touhy v. Walgreen Co.*,
    526 F.3d 641 (10th Cir. 2008) ...........................................................21

*Reedy v. Werholtz*,
    660 F.3d 1270 (10th Cir. 2011) ..........................................................21, 28, 37, 48

*Regents of the Univ. Cal v. Doe*,
    519 U.S. 425 (1997).........................................................................49

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) .........................................................................20, 21, 22

*Richison v. Ernest Grp., Inc.*,
    634 F.3d 1123 (10th Cir. 2011) ..........................................................24

*Schaffer v. Salt Lake City Corp.*,
    814 F.3d 1151 (10th Cir. 2016) ..........................................................47

*SIL-FLO, Inc. v. SFHC*,
    917 F.2d 1507 (10th Cir. 1990) ..........................................................21

*Simmons v. UBS Fin. Servs., Inc.*,
   972 F.3d 664 (5th Cir. 2020) ...................................................................24, 25, 26

*Tabura v. Kellogg USA*,
   880 F.3d 544 (10th Cir. 2018) ..................................................................26, 33, 37

*Tanzin v. Tanzir*,
   592 U.S. 43 (2020) ...........................................................................................19

*Taylor v. Southeastern Pa. Transp. Auth.*,
   No. 23-2140, 2024 WL 3203318 (E.D. Pa. June 27, 2024) ...............................39

*Teets v. Great-West Life & Annuity Ins. Co.*,
   921 F.3d 1200 (10th Cir. 2019) .........................................................................31

*Tesone v. Empire Mktg. Strategies*,
   942 F.3d 979 (10th Cir. 2019) ...............................................................12, 13, 16

*Thomas v. Nat'l Ass'n of Letter Carriers*,
   225 F.3d 1149 (10th Cir. 2000) .................................................27, 28, 29, 32, 37

*Thompson v. N. Am. Stainless, LP*,
   562 U.S. 170 (2011).................................................................................24, 25, 26

*Toledo v. Nobel-Sysco, Inc.*,
   892 F.2d 1481 (10th Cir. 1989) ..........................................................32, 33, 41

*Trans World Airlines, Inc. v. Hardison*,
   432 U.S. 63 (1977)...........................................................................................38

*Trueblood v. Valley Cities Counseling and Consultation*,
   No. C23-0269, 2024 WL 3965926 .....................................................................39

*VDARE Found. v. City of Colo. Springs*,
   11 F.4th 1151 (10th Cir. 2021) .........................................................................20

*Weber v. Leaseway Dedicated Logistics, Inc.*,
   166 F.3d 1223 (10th Cir. 2013) (non-precedential) ..........................................39

*Wittner v. Banner Health*,
   720 F.3d 770 (10th Cir. 2013) ..........................................................................48

## FEDERAL STATUTES AND RULES

**Federal Statutes and Rules**

42 U.S.C.A. § 2000bb-2(1) ........................................................................19

42 U.S.C. § 1983 ........................ 1, 4, 8, 9, 11, 20, 21, 42, 43, 44, 45, 46, 47, 49, 50

42 U.S.C. § 2000bb-1(a) ...........................................................................14

42 U.S.C. § 2000bb-1(b) ...........................................................................16

42 U.S.C. § 2000e-2(A)(1) ........................................................................25

42 U.S.C. § 2000e-2(A)(2) ........................................................................25

42 U.S.C. § 2000e-2(e)(2) ..........................................................................41

42 U.S.C. § 2000e-5(b) ..........................................................................21, 24

42 U.S.C. § 2000e-5(f)(1) ...........................................................................24

42 U.S.C. § 2000e(j) ..............................................................................27, 33

Federal Rule of  Appellate Procedure 28(a)(8)........................................13

Federal Rule of Appellate Procedure 28(b)(2) ..........................................3

Federal Rule of Civil Procedure 12(b)(6) .............................................8, 9

Federal Rule of Civil Procedure 15(a) .................................3, 10, 12, 17

Federal Rule of Civil Procedure 15(a)(2) .................................................17

Federal Rule of Civil Procedure Rule 16(b) ..............................3, 10, 11, 12, 13, 16

Federal Rule of Civil Procedure 17(b)(3)(A) .........................................44

Federal Rule of Civil Procedure 56(c) ....................................................23

## OTHER AUTHORITIES

Kan. Stat. Ann. § 60-223b (2010)..............................................................................46

*V. v. Vilsack*,
2024 WL 1155256 (E.E.O.C. March 7, 2024) ..................................................39, 40

***There are no prior or related appeals.***

## Introduction

This employment law case presents issues regarding three of the district court's rulings.  The rulings are: (1) the denial of the motion filed by Plaintiff Christians in the Workplace Networking Group ("CWNG") for leave to file a second amended complaint to add a Religious Freedom Restoration Act ("RFRA") claim; (2) the granting of the motion for summary judgment filed by Defendant National Technology and Engineering Solutions of Sandia, LLC ("Sandia") and Defendants Esther Hernandez, Aaron Jim, Bianca Hill (the "Individual Defendants") (collectively, "Defendants") on the Title VII religious discrimination claim for failure to accommodate in Count 1 of the operative first amended complaint; and (3) the granting of Defendants' motion for summary judgment on the alleged First and Fourteenth Amendment violations that CWNG sought to vindicate through 42 U.S.C. § 1983 in Counts 2-6 of the complaint.

CWNG is represented by counsel.  Addressing CWNG's opening brief nonetheless has been challenging for the following reasons.

CWNG's brief includes material (statements of fact, evidence, law, arguments) from CWNG's summary judgment filings (a separate statement of facts, a motion, and a renewed motion) which the district court did not consider in deciding the three aforementioned motions.  The court struck CWNG's initial summary

judgment motion due to procedural violations.  The court deemed CWNG's renewed summary judgment motion moot based on a dispositive ruling that it had made.

CWNG's brief divides the "Argument" section into a "Law" section (primarily consisting of authority) and a "Fact" section (which includes arguments). The organization, in essence, placed Defendants in the position of trying to piece together CWNG's arguments.  Where they appear, CWNG's arguments are often inadequately briefed.  In places they consist of block quotes or snippets (that sometimes end with an argumentative assertion) followed by conclusory or otherwise perfunctory assertions.  Some of the factual assertions lack record cites. CWNG's arguments, in essence, placed Defendants in the position of trying to develop the arguments to understand and respond to them.

CWNG misapprehends the scope of the review this Court ordinarily undertakes.  CWNG fails to recognize that this Court ordinarily limits its review to the record on a motion that was before the district court when it decided the motion. For example, CWNG briefs RFRA as if the case involves a RFRA claim, disregarding the denial of its request to add that claim.  CWNG also appears to interpret the "de novo" aspect of the summary judgment standard of review as providing an opening to incorporate material from its summary judgment statement of facts and renewed summary judgment motion and to make summary judgment arguments anew, which is improper.

2

In responding to the opening brief, Defendants: (1) restate the issues on appeal, reframing them as three issues regarding the three dispositive district court rulings at issue and parenthetically identifying the seemingly corresponding issues listed by CWNG; (2) provide a supplemental statement of the case; (3) advance three principal arguments regarding the rulings at issue, including under the headings parenthetical references identifying the aspects of the opening brief that appear to correspond to each of the rulings and, in each of the arguments, explain why CWNG's arguments on appeal are unavailing; and (4) where appropriate, further clarify and narrow the issues on appeal. Placed in proper context, CWNG's arguments do not provide a basis to reverse any of the rulings.

## Statement of Issues Presented For Review

In accordance with Federal Rule of Appellate Procedure 28(b)(2), Sandia and the Individual Defendants restate the issues presented by the appeal as follows:

1.      Did the district court properly exercise its discretion under Federal Rules of Civil Procedure 16(b) and 15(a) in denying CWNG leave to file a second amended complaint to add a RFRA claim? (CWNG Issue 1.)

2.      Did the district court correctly grant Defendants summary judgment on the Title VII religious discrimination claim for failure to accommodate in Count 1 of the operative first amended complaint? (CWNG Issues 4, 6.)

3.      Did the district court correctly grant Defendants summary judgment on the alleged First and Fourteenth Amendment violations CWNG sought to vindicate through 42 U.S.C. § 1983 in Counts 2-6 of the complaint? (CWNG Issues 2, 3, 5, 7.)[1]

## Statement of the Case

Sandia is a wholly owned subsidiary of Honeywell International, which is a publicly traded company.  (1 Aplt. Appx. 212,  ¶ 1; *id.* at 235; 2 Aplt. Appx. 425, ¶ 1.)  Sandia manages and operates a national security laboratory on behalf of the federal Department of Energy ("DOE").  (1 Aplt. Appx. 212, ¶ 2; *id.* at 235;  2 Aplt. Appx. 425, ¶ 2.)  All business that Sandia conducts for governmental agencies occurs at the federal level, not at the state level.  (1 Aplt. Appx. 212, ¶ 3; *id.* at 236;  2 Aplt. Appx. 425, ¶ 3.)  Sandia is not an agency of New Mexico or any other state or local government.  (1 Aplt. Appx. 212, ¶ 4; *id.* at 235;  2 Aplt. Appx. 425, ¶ 4; 4 Appx. 785.)

Sandia has several employer-sponsored employee resource groups ("ERGs") which are based on social identity, shared characteristics, or life experiences.  (1 Aplt. Appx. 212, ¶ 5; *id.* at 237;  2 Aplt. Appx. 425, ¶ 5.)  Participation in ERGs is

---

[1]     CWNG does not brief its Issue 8 and therefore has waived review of it. *Christian Heritage Academy v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007).

voluntary and not an employment requirement.  (2 Aplt. Appx. 295, ¶ 5; *id.* at 336; 3 Aplt. Appx. 465, ¶ 5.)

CWNG was a Sandia-sponsored ERG before November 18, 2020.  (2 Aplt. Appx. 295, ¶ 6, *id.* at 344; 3 Aplt. Appx. 465, ¶ 6.)  CWNG's members and leaders are exclusively Sandia employees.  (2 Aplt. Appx. 296, ¶ 8;  *id.* at 329; *id.* at 333; 3 Aplt. Appx. 465, ¶ 8; 4 Aplt. Appx. 783.)  CWNG has various formation documents, including a Mission/Vision/Purpose Statement (2 Aplt. Appx. 296, ¶ 10; *id.* at 347; 3 Aplt. Appx. 465, ¶ 10), a list of its Values (2 Aplt. Appx. at 296, ¶ 11; *id.* at 347; 3 Aplt.  Appx. 465, ¶ 11), a Statement of Faith (2 Aplt. Appx. 296-97, ¶¶ 12-15; *id.* at 331-32; *id.* at 346; 3 Aplt. Appx. 465, ¶¶ 12-15), and a Strategic Plan which includes Governance Structure (2 Appx. 297,  ¶ 16; *id.* at 345-46; 3 Aplt. Appx. 465, ¶ 16).

The Statement of Faith provides that only Christian employees who subscribe to the "Orthodox Christian" beliefs it describes may hold leadership positions within CWNG.  (2 Aplt. Appx. 296-97, ¶¶ 12-15; *id.* at 331-32; *id.* at 346; 3 Aplt. Appx. 465, ¶¶ 12-15.)  The Governance Structure, in pertinent part, provides:

F.   Based on biblical principles, it is the position of the CWNG that any person who is involved in moral or ethical behavior which contradicts clearly defined issues outlined in scripture will not be considered for a leadership role in CWNG activities.

G.    In order to maintain the integrity of the CWNG and its leaders, a Steering Committee Member may be reviewed by the Steering Committee, and if necessary, removed from office if it is determined that the conduct or beliefs of the person in question will endanger the integrity of CWNG.

(2 Aplt. Appx. 297, ¶ 16; *id.* at 345; 3 Aplt. Appx. 465, ¶ 16.)

In August 2018, Sandia issued HR008, which is Sandia's Non-discrimination and Anti-Harassment Policy.  (2 Aplt. Appx. 298, ¶ 21; *id.* at 348;  3 Aplt. Appx. 466, ¶ 21.)  HR008 prohibits any form of discrimination, harassment, and retaliation based upon various attributes, including race, gender expression, gender identity, marital or family status, sexual orientation, and religion.  (2 Aplt. Appx. 298-99, ¶ 23; *id.* at 348-49; 3 Aplt. Appx. 466, ¶ 23; 4 Aplt. Appx. 783.)  HR008 applies to all Sandia National Laboratories organizations and all members of the workforce. (2 Aplt. Appx. 299, ¶ 24; *id.* at 349;  3 Aplt. Appx. 466, ¶ 24; 4 Aplt. Appx. 783-84.)  In 2019, Sandia asked all ERGs to provide their formation documents for review.  (2 Aplt. Appx. 299, ¶ 26; 3 Aplt. Appx. 466, ¶ 26; 4 Aplt. Appx. 784.)

Based on its review of them, Sandia believed that CWNG's Statement of Faith and Paragraphs F and G of the Governance Structure violated HR008 and therefore asked CWNG to remove them.   (2 Aplt. Appx. 299, ¶¶ 27-28; *id.* at 360; 3 Aplt. Appx. 466-67, ¶¶ 27-28; 4 Aplt. Appx. 783.)   CWNG requested a religious accommodation allowing it to keep the provisions in place.  (2 Aplt. Appx. 299, ¶ 29; *id.* at 342; 3 Aplt. Appx. 467, ¶ 29.)   Sandia met with CWNG's leadership a

number of times, during which Sandia asked CWNG to replace the provisions with alternative language.  (2 Aplt. Appx. 299, ¶ 30; *id.* at 363; 3 Aplt. Appx. 467, ¶ 30.)  After CWNG proposed replacing its Statement of Faith with a passage from the Bible, Sandia rejected the proposed accommodation, which Sandia believed would violate HR008.  (2 Aplt. Appx. 299, ¶¶ 31-32; *id.* at 363; 3 Aplt. Appx. 467, ¶¶ 31-32; 4 Aplt. Appx. 783.)  Sandia then proposed an alternative accommodation that would result in the removal of the requirement that all CWNG leaders ascribe to the Statement of Faith and the removal of paragraphs F and G of CWNG's Governance Structure but otherwise leave CWNG's formation documents unchanged.  (2 Aplt. Appx. 300, ¶¶ 33-34; *id.* at 341; 3 Aplt. Appx. 467, ¶¶ 33-34; 4 Aplt. Appx. 783.)  CWNG rejected the proposal.  (2 Aplt. Appx. 300, ¶ 35; *id.* at 341; *id.* at 363; 3 Aplt. Appx. 467, ¶ 35.)  Sandia withdrew its ERG sponsorship of CWNG on November 18, 2020.  (2 Aplt. Appx. 300, ¶ 36; *id.* at 344; 3 Aplt. Appx. 467, ¶ 36.)

After November 18, 2020, CWNG continued to exist, but without Sandia sponsorship.  (2 Aplt. Appx. 301, ¶ 41; *id.* at 363-64; 3 Aplt. Appx. 467-68, ¶ 41; 4 Aplt. Appx. 783.)  In that capacity, it still holds functions and uses Sandia resources.  (4 Aplt. Appx. 810; *see also* 2 Aplt. Appx. 301, ¶ 41; *id.* at 363-64; *id.* at 371-402; 3 Aplt. Appx. 467-68; ¶ 41; 4 Aplt. Appx. 783.)  CWNG members have remained able to practice their religions and beliefs.   (4 Aplt. Appx. 810; *see also* 2 Aplt. Appx. 301, ¶ 42; *id.* at 363-64; *id.* at 371-402; 3 Aplt. Appx. 468, ¶ 42.)

In 2022, CWNG sued Sandia and the Individual Defendants. (1 Aplt. Appx. 3.) In its First Amended Complaint, CWNG alleged a Title VII religious discrimination claim for failure to accommodate in Count 1, First and Fourteenth Amendment violations that CWNG sought to vindicate through 42 U.S.C. § 1983 in Counts 2 through 6, and a civil conspiracy claim in Count 7. (1 Aplt. Appx. 24-39.)

Motion practice by the parties ensued:

• The Individual Defendants filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the Title VII claims alleged against them. (1 Aplt. Appx. 51.)

• CWNG filed a motion for leave to file a second amended complaint to add a RFRA claim against Sandia and a Title VII religious discrimination claim distinct from its failure to accommodate claim. (1 Aplt. Appx. 86-106; *see also id.* at 107-19 (response); *id.* at 120-144 (reply).)

• Defendants filed a motion for summary judgment based on lack of authority and lack of capacity. (1 Aplt. Appx. 145-209; *see also* 2 Aplt. Appx. 413-24 (response); 4 Aplt. Appx. 766-82 (reply).)

• Defendants filed a motion for summary judgment on the Title VII religious discrimination claim for failure to accommodate in Count 1 of the first amended complaint. (2 Aplt. Appx. 294-411; *see also* 3 Aplt. Appx. 465-528 (response); 4 Aplt. Appx. 716-44 (reply).)

• Defendants filed a motion for summary judgment on Counts 2-7 of the complaint (1 Aplt. Appx. 210-237 & 2 Aplt. Appx. 238-93 (motion); see also 2 Aplt. Appx. 425-64 (response); 4 Aplt. Appx. 745-65 (reply).)

• CWNG filed a statement of undisputed material facts (3 Aplt. Appx. 529-43) for a summary judgment motion that was struck (Aple. Appx. 23-25). CWNG filed a renewed summary judgment motion (3 Aplt. Appx. 544-682; 4 Aplt. Appx. 682-715).

• CWNG filed a summary judgment surreply. (4 Aplt. Appx. 783-94.)

The district court held a dispositive motions hearing during which, in pertinent part, it heard arguments on CWNG's motion for leave to file a second amended complaint, Defendants' motion for summary judgment on Count 1, and Defendants' motion for summary judgment on Counts 2-7.   (Aple. Appx. 29-144; *id.* at 26.) After the hearing, CWNG filed a motion for oral argument on its renewed summary judgment motion, citing cases CWNG argued showed that Defendants were state actors under 42 U.S.C. § 1983.  (4 Aplt. Appx. 795-802.)

The district court granted the Individual Defendants' Rule 12(b)(6) motion. (4 Aplt. Appx. 847.)  The court denied CWNG leave to amend its complaint to add a RFRA claim and an additional Title VII religious discrimination claim.  (4 Aplt. Appx. 838.)  The court granted Defendants' motion for summary judgment on Count 1.  (4 Aplt. Appx. 807.)  The district court granted Defendants' motion for summary judgment on Counts 2-7.  (4 Aplt. Appx. 821.)  The district court denied as moot Defendants' Motion for Summary Judgment Based on Lack of Authority and Lack of Capacity (Aple. Appx. 27) and deemed CWNG's renewed summary judgment motion and motion for oral argument moot.  (4 Aplt. Appx. 835-36.)  The court entered a final judgment in Defendants' favor.  (Aple. Appx. 28.)

In its opening brief, CWNG challenges only the denial of its motion for leave to file a second amended complaint and the summary judgment dismissals of the claims in Counts 1 through 6.  (Aplt. Br.)  Defendants respond accordingly,

providing additional procedural and factual details when addressing the three rulings.

## Summary of the Argument

The district court properly exercised its discretion in denying CWNG's motion for leave to file a second amended complaint, both because CWNG failed to meet the "good cause" standard under Rule 16(b) to allow the amendment after the scheduling order deadline and because under Rule 15(a) CWNG unduly delayed seeking the amendment which, if allowed, would unfairly prejudice Defendants. Although not reached by the court, the futility of the RFRA amendment provides another basis to affirm.

The district court correctly granted summary judgment on CWNG's Title VII religious discrimination claim for failure to accommodate alleged in Count 1 of the operative first amended complaint, both because CWNG failed to make the requisite prima facie showing and, alternatively, because Defendants provided a reasonable accommodation. Although not reached by the court, CWNG's lack of statutory standing to bring a Title VII claim, CWNG's inability to establish another prima facie element, and the undue hardship that CWNG's requested accommodation would cause Sandia, provide additional bases to affirm.

The district court correctly granted Defendants summary judgment on the First and Fourteenth Amendments violations alleged in Counts 2 through 6 of the

complaint, both because as an unincorporated association CWNG is not a "person"

entitled to sue under 42 U.S.C. § 1983 and because Defendants are not state actors

under Section 1983.

## Argument

1. **Denial of CWNG's Motion For Leave To File A Second Amended Complaint Was Proper.** (Resp. to Aplt. Br. I.A.3 (Religious Discrimination); I.A.6 ([RFRA]); I.2.I (Leave to File Second Amended Complaint; I.2.J (Prejudice).)

In its "Leave to File Second Amended Complaint" argument (Aplt.'s Br. at

36-41), CWNG asserts that it "sought to add RFRA, Title VII and constitutional

claims[.]" (*Id.* at 36.)[2] But as initially framed and actually argued by CWNG, the

issue regarding the motion to amend presents only one question: whether under

Rules 16(b) and 15(a), the district court abused its discretion in not granting CWNG

leave to add a RFRA claim. (*Id.* at 6-7; *id.* at 36-42.) Defendants respond

accordingly. This Court reviews denial of leave to amend a complaint for abuse of

discretion. *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1117 (10th Cir.

---

[2] In the argument (Aplt. Br. at 36-41), CWNG makes no discernable argument challenging the district court's denial of leave to add "a claim, distinct from the failure to accommodate religious beliefs already pled, for religious discrimination under Title VII[.]" (1 Aplt. Appx. 86; *compare* 4 Aplt. Appx. 844-46 *with* Aplt. Br. at 36-42.) Consequently, CWNG has forfeited appellate review of the denial. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). In its motion, CWNG did not mention adding any constitutional claim(s). (1 Aplt. Appx. 86-87.) Consequently, there is nothing to review regarding any such claim(s).

2021).  A district court abuses its discretion if its decision is clearly erroneous, arbitrary, capricious, whimsical or manifestly unreasonable.  *Id.*

As CWNG's argument indicates (Aplt.'s Br. at 36-42), Rules 16(b) and 15(a) apply to the issue.  "A party seeking leave to amend after a scheduling order deadline must satisfy both the [rules'] . . . standards."  *Hamric,* 6 F.4th at 1118 (internal quotation marks & citation omitted).  If the movant fails to satisfy either standard, the district court does "not abuse its discretion in denying the[] motion to amend." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014).  "Thus, if the movant fails to show good cause under Rule 16(b), there is no need . . . to move on to . . . whether the movant has satisfied . . . Rule 15(a)." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 990 (10th Cir. 2019) (internal quotation marks & citation omitted) (alterations omitted).

### A.    CWNG Does Not Demonstrate That The District Court Abused Its Discretion In Its Rule 16(b) Analysis.[3]

As the district court recognized (4 Aplt. Appx. 840-41), establishing good cause " requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Tesone*, 942 F.3d at 988 (internal quotation marks & citation omitted).  The movant "cannot establish good cause if it knew of the underlying conduct but simply failed to raise its claim[]." *Husky Ventures, Inc. v. B55 Inv. Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (internal quotation marks & citation omitted).  Therefore, the movant must provide "an adequate explanation for any delay," *Tesone*, 942 F.3d at 988, such as, "for example, if a plaintiff learns new information through discovery[.]" *Id.* at 990 (internal quotation marks & citation omitted) (alteration omitted).

---

[3]    On a prefatory note, in briefing the Rule 16(b) issue, CWNG arguably has waived appellate review of the issue by not directly addressing the district court's analysis and explaining why it was wrong. *Nixon v. City and Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015); *see also* Fed. R. App. P. 28(a)(8); *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1133 n.4 (10th Cir. 2004) ("Scattered statements in the appellant's brief are not enough to preserve an issue for appeal.").  For the most part, CWNG implicitly addresses the court's Rule 16(b) analysis (*compare* 4 Aplt. Appx. 841-44 *with* Aplt. Br. at 36-41), relying on block quotes from other cases and conclusory and unsupported assertions, which do not show that the court was wrong in finding that CWNG had not satisfied the good cause standard.  In the one place where CWNG directly addresses the court's Rule 16(b) analysis (Aplt.'s Br. at 41), CWNG does not show the court's analysis was wrong based on the arguments CWNG raised to the court.  (*Compare* 4 Aplt. Appx. 843-44.)  Defendants nonetheless explain why the court did not abuse its discretion in denying CWNG leave to add a RFRA claim. *Infra*.

CWNG attempted to provide such an explanation based on the expert report that Defendants timely disclosed after the motion to amend deadline.  (4 Aplt. Appx. 839; *see also* 1 Aplt. Appx. 73 (disclosure deadline fell after motion to amend deadline).)  CWNG claims that it had "no way to know [Defendants] would [raise] a reasonable Christians can differ defense."  (Aplt. Br. at 40.)  "The[] [expert's] opinions . . . imply for the first time that since Christians would not agree to the SOF and DC there is no substantial burden . . . [on CWNG] if . . . these terms" are removed.  (*Id.* at 37.)

Putting aside that questionable interpretation of the expert report (*cf.* 1 Aplt. Appx. 129-30) and, assuming as the district court did that the report constituted "ostensibly new evidence" (4 Aplt. Appx. 842), CWNG knew of the conduct underlying its proposed RFRA claim long before the report, as the court recognized. (*Id.* at 841-44.)

RFRA provides the basis for that recognition.  (*Id.* at 841.)  In pertinent part, RFRA prohibits the federal government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability[.]" 42 U.S.C. § 2000bb-1(a).

The record shows CWNG knew the facts underlying its proposed RFRA claim before the deadline to amend.  Exchanges during the dispositive motions hearing between the district court and CWNG's counsel prove that point.  When the court

14

asked whether for the RFRA claim, the regulation that CWNG was challenging was the prohibition against CWNG's statement of faith and leadership limitations, *i.e.*, the enforcement of HR008, CWNG's counsel responded, "[y]es."  (Aple. Appx. 45 (Tr. 17:14-:21).)  And, when the court questioned how the expert report brought up the basis for the claim for the first time and whether the claim could have been filed earlier, CWNG's counsel responded, "Your Honor, you're right.  It's possible that a Religious Freedom of Restoration Act claim could have been filed right in the beginning.  I will not dispute that."  (*Id.* at 35 (Tr. 7:7-:15).)

Additionally, review of CWNG's proposed second amended complaint shows that CWNG premised its proposed RFRA claim on the same allegations as those underlying the claims in its operative first amended complaint.  (1 Aplt. Appx. 105.)  As the district court recognized, the operative complaint includes allegations regarding the burden HR008 imposed on CWNG's exercise of religion.  (4 Aplt. Appx. 842-43.)  Other allegations further prove the point.  (*E.g.*, 1 Aplt. Appx. 34, ¶¶ 53-54 (HR008 and the requested removal of the Statement of Faith and Disciplinary Clause); *id.* at 36, ¶ 66 (CWNG could not agree to removing the language "because to do so would comprise the essentially Christian biblical nature of the group and allow those who do not believe in its statement of faith to make it something other than a Christian group.").)  The allegations show that CWNG "was aware of facts to substantiate a RFRA claim but . . . did not bring such a claim at the

15

time it filed its [First] Amended Complaint." (4 Aplt. Appx. 843.) The complaint was filed in May of 2022 (1 Aplt. Appx. 3), months before the motion to amend deadline in December of 2022. (*Id.* at 73.)

Furthermore, CWNG's attempt to use the expert report as a justification for why it sought to add the RFRA claim when it eventually did – *i.e.*, to provide a defense against a RFRA claim, *supra* p. 14 – does not withstand scrutiny. Since there was no RFRA claim in the case, logically, the report cannot have been prepared for that purpose. Moreover, the purported defense is not recognized under RFRA. The only recognized defense requires the government to show that the burden on religion "(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000bb-1(b).

The bottom line, as the district court found, is that CWNG "knew of the underlying conduct but simply failed to raise its [RFRA claim]" and that CWNG "failed to show the scheduling deadline[] could not be met despite its diligent efforts." (4 Aplt. Appx. 844 (internal quotation marks & citation omitted) (alterations omitted).) The court therefore did not abuse its discretion in denying CWNG's motion to amend. *Supra* p. 12 (*Hamric; Gorsuch, Ltd., B.C.*). This Court should affirm the denial based on CWNG's failure to meet the Rule 16(b) standard alone. *Supra* p. 12 (*Tesone*).

### B.    If Reached, CWNG Does Not Demonstrate That The District Court Abused Its Discretion In Its Rule 15(a) Analysis.

Rule 15(a) in pertinent part "provides that, after a responsive pleading has been served, a party may amend its pleading 'only by leave of court[.]'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). The rule "instructs that leave to amend a complaint should be freely granted 'when justice so requires.'" *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101 (10th Cir. 2019) (quoting Fed. R. Civ. P. 15(a)(2)). A court may deny leave, however, based on undue delay, undue prejudice to the opposing party, or futility of the amendment. *Id.* at 1101-02.

The district court found that CWNG's undue delay provided a basis to deny the amendment, as in *Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir. 1993). (4 Aplt. Appx. 845.) In determining whether delay is undue, this Circuit "focuses primarily on the reasons for the delay." *Minter*, 451 F.3d at 1206. "[D]enial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Id.* (quoting *Frank*, 3 F.3d at 1365-66). In this case, because CWNG has no adequate explanation for its delay in seeking leave to add a RFRA claim, *supra* pp. 14-16, denial of such leave was proper. CWNG's quote from *Frank* (Aplt. Br. at 41) does not show differently.

The district court also found that requiring Defendants to defend against an untimely RFRA claim would cause "undue prejudice," another basis to deny the

amendment, observing that the RFRA claim could have been litigated more efficiently and economically earlier in the case and that adding the claim after the court already had granted Defendants summary judgment on many of CWNG's factual allegations would further prejudice Defendants. (4 Aplt. Appx. 845.) As the court recognized, "[a]t some point . . . delay . . . become[s] prejudicial, placing an unfair burden on the opposing party." *Minter*, 451 F.3d at 1205.

For the reasons identified by the district court, this is such a case. In asserting that "[d]iscovery need not be reopened" (Aplt. Br. at 41), CWNG disregards the fact that the discovery deadline was extended only to allow CWNG to depose two leaders of other ERGs. (1 Aplt. Appx. 81-82; *id.* at 84.) CWNG's assertion that "issues from [the] new claim[] could be covered at depositions" (Aplt. Br. at 39) also disregards the court's point that Defendants would incur additional expenses in defending against the new claim. CWNG cites nothing in support of its assertion that "[q]uestions relevant to RFRA were asked at depositions[.]" (*Id.* at 37.) CWNG's paraphrased sound-bite from *Bylin v. Billings*, 568 F.3d 1224 (10th Cir. 2009) (Aplt.'s Br. at 40) also misses the point. "[C]ourts . . . find prejudice . . . when an amendment unfairly affects non-movants," *Bylin*, 568 F.3d at 1229 (internal quotation marks & citation omitted), as can be said in this case.

Although the district court did not reach the issue, adding a RFRA claim would have been futile, which provides another basis to affirm. *Griess v. State of*

*Colo.*, 841 F.2d 1042, 1047 (10th Cir. 1988) (The Court may "affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law[.]").  CWNG addresses the claim in arguing that "Sandia is an instrumentality of the . . . DOE[.]"  (Aplt.'s Br. at 33.)  CWNG must make that showing because a RFRA claim may be brought against only the federal government.  *See Tanzin v. Tanzir*, 592 U.S. 43, 45 (2020).   RFRA defines "government" to include an "instrumentality . . . acting under color of law . . .  of the United States.'"  42 U.S.C.A. § 2000bb-2(1).

"The term 'instrumentality' is not defined in . . . [RFRA], nor is its definition discussed in the legislative history."  *Hall v. Am. Nat'l Red Cross*, 86 F.3d 919, 921 (9th Cir. 1996).  In *Hall*, the Ninth Circuit finds that the legislative history indicated that Congress did not intend RFRA to create a broader class of government actors than previously existed under the Free Exercise Clause of the First Amendment.  *Id.* at 921. The Ninth Circuit therefore applies two First Amendment tests to determine whether the Red Cross, a private entity, could be considered a government actor.  *Id.* at 921-23.

Because this case presents a similar "instrumentality" question under RFRA and *Hall* appears to be the leading case addressing how to resolve the question, Defendants apply the pertinent analysis from *Hall* to this case.  Only one of the tests applies in this case because Sandia is not a government-created entity.  (1 Appx. 24,

¶ 2; *id.* at 41, ¶ 4).  That test is the "federal action" test, *see Hall*, 86 F.3d at 922, which "examines whether the organization's activity constitutes federal action considering (1) the nexus between the government and the challenged action, (2) whether the alleged government actor performed functions traditionally reserved to the government, and (3) whether the government coerced or encouraged the challenged action."  *Id.*

In this case, (1) CWNG does not allege any nexus between the DOE and Defendants' enforcement of HR008 regarding CWNG's Statement of Faith and Disciplinary Clause (1 Aplt. Appx. 24-39)[4]; (2) Sandia's contract with the DOE prohibits it from performing "any inherently governmental function" (2 Aplt. Appx. 279); and (3) CWNG cites no evidence showing that the DOE coerced or encouraged the action CWNG challenges.  (Aplt.'s Br. at 33-35.)[5]

---

[4]    CWNG makes the bare assertion that an unspecified "federal Executive Order to Promote Diversity led to HR008[.]"  (Aplt.'s Br. at 34)  Nothing in HR008 itself reflects such a nexus.  (2 Aplt. Appx. 260; *see also id.* at 265-66 (HR008 identifies its "Drivers"); Aple. Appx. 56-57 (Tr. 28:13-29:18)) (during the dispositive motions hearing, defense counsel explained that "Drivers" identify the source or requirement for a policy and that Sandia had an anti-discrimination policy before the EO identified by CWNG.)  Moreover, if CWNG is still adverting to Executive Order 13583 (which does not apply to Sandia), it was issued in 2011 (Aple. Appx. 56-57 (Tr. 28:13-14; *id.* at 29:4-9)), whereas HR008 was reissued in 2018 (2 Aplt. Appx. 260). There is no basis from which to find a connection between the two anti-discrimination mandates.

[5]    In addressing the instrumentality question (Aplt.'s Br. at 34), CWNG invokes *Rendell-Baker v. Kohn* which sets forth analogous tests that courts use in determining whether a party should be considered a state actor under 42 U.S.C. § 1983. 457 U.S. 830, 838-43 (1982); *see also VDARE Found. v. City of Colo.*

CWNG also relies on deposition excerpts in seeking to show that Sandia acted as a DOE instrumentality.  (Aplt.'s Br. at 34-35.)  The Parsons, Martin and Colombel excerpts were not included in CWNG's motion to amend briefing.  (*Compare* 1 Aplt. Appx. 86-106; *id.* at 120-142.)  Because the district court did not consider them in deciding the motion, this Court need not review them.  *Reagan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008) (Court generally limits its review to the record before the district court when it made its decision).  CWNG also relies on Clymo's opinion that Sandia is an instrumentality.  (Aplt.'s Br. at 35; 1 Aplt. Appx. 140-41.)  Whether an entity is an instrumentality under RFRA is a legal conclusion

---

*Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (acknowledging the (1) "nexus test"; (2) "symbiotic-relationship test"; (3) "joint action" test; and (4) "public function" test)). *Rendell-Baker* is not on point. Apart from invoking *Rendell-Baker*, CWNG fails to develop an argument that identifies the test(s) upon which it is relying and shows that any of the tests is met in this case. CWNG should be deemed to have forfeited consideration of the tests due to its inadequate briefing. *Bronson*, 500 F.3d at 1105; *see also SIL-FLO, Inc. v. SFHC*, 917 F.2d 1507, 1513 (10th Cir. 1990) (Court need not manufacture an argument for a party). If the Court does consider the tests, CWNG cannot show that any of them is met because: (1) CWNG does not show a nexus between the government and the challenged conduct; (2) CWNG does not challenge the district court's determination in its Section 1983 analysis that the symbiotic-relationship test is not met (4 Aplt. Appx. 827-28), meaning that the Court need not address the matter, *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011); (3) CWNG does not cite evidence showing joint action between Sandia and the government regarding the challenged action; and (4) the inherently governmental function prohibition in Sandia's contract with the DOE, *supra*, shows that the public function test is not met. CWNG also advances no evidence that, in implementing HR008, Sandia exercised a power traditionally *and* exclusively performed by the federal government. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928-29 (2019).

that a court – not a lay witness like Clymo – decides.  *See In re Woods*, 743 F.3d 689, 693 (10th Cir. 2014) (Interpretation of a statute is a legal question).  A quick look at Clymo's rationale reinforces that point.  When asked, Clymo testified that Sandia is an instrumentality of the DOE because Sandia receives federal funding, is a federal contractor, is subject to federal anti-discrimination laws, and takes direction over what it spends and produces from the federal government (which is, after all, how contracts work).  (*Id.* at 140-41 (Tr. 37:1-39:25).)  None of that shows that Sandia is a DOE instrumentality under the federal action test, *supra* pp. 20-21, or even *Rendell-Baker*, 457 U.S. at 840-43.

Absent a sufficient showing by CWNG that Sandia acted as an instrumentality of DOE, a RFRA claim cannot be brought against Sandia.  *Supra* pp. 19-22.  Affirmance therefore is also proper based on the futility of the amendment.

> **2.    Summary Judgment On The Title VII Claim In Count 1 Of The First Amended Complaint Is Proper.**  (Resp. OB Points I.1.A.1 (Reasonable Accommodation), I. 1.A.4 (Differential treatment); I.[2].A (Reasonable Accommodation, I.[2].D (Exemption for Title VII), I.2.D (Differential Treatment); I.2.K (Title VII).)

In the "Reasonable Accommodation" and "Title VII" sections of its opening brief, CWNG makes various arguments in seeking reversal of the district court's grant of summary judgment on its Title VII religious discrimination claim for failure to accommodate.  The Court need not address CWNG's arguments.  There is a threshold statutory standing analysis that is dispositive of the claim.  If reached,

CWNG's arguments do not provide a basis to reverse the summary judgment dismissal.

De novo review applies to the statutory standing issue. *Peck v. McCann*, 43 F.4th 1116, 1124 (10th Cir. 2022) (threshold legal question of standing involving statutory interpretation). This Court reviews "the grant of summary judgment de novo, applying the same standard as the district court[.]" *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "Summary judgment is proper if the movant demonstrates that there is 'no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). "When applying this standard, [the Court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (internal quotation marks & citation omitted). Once the movant makes a prima facie showing that summary judgment is proper under Rule 56(c), "the burden shifts to the nonmovant to . . . set forth specific facts that would be admissible in evidence . . . from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 670-71 (internal quotation marks & citation omitted). "If [the Court's] inquiry reveals no genuine issue of material fact in dispute, then [the Court] review[s] the [record] to determine if the district court correctly applied the . . . law." *See Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005).

### A.    CWNG Lacks Statutory Standing To Bring A Title VII Claim.

Threshold statutory standing analysis provides a basis to affirm the district court's summary judgment dismissal of CWNG's Title VII claim.  The statutory standing analysis is distinct from Article III standing analysis.  *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 175-77 (2011) (rejecting view that Title VII grants cause of action to any plaintiff with Article III standing).  The district court's finding that CWNG has Article III standing to sue on behalf of its members (4 Aplt. Appx. 812-14), while correct, therefore does not address Defendants' statutory standing argument (2 Aplt. Appx. 294; *id.* at 302-03), in which they challenged CWNG's right to assert a Title VII claim on its own behalf.  Because this Court "may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court," *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011), Defendants reprise their statutory standing argument.

The starting point for the statutory standing analysis is the language in Title VII that "permits a civil action to 'be brought . . . by the person claiming to be aggrieved . . . by the alleged unlawful employment practice.'"  *Thompson*, 562 U.S. at 173 (quoting 42 U.S.C. § 2000e-5(b), (f)(1)).  "To qualify as a 'person . . . aggrieved,'" CWNG must "bring a claim that 'falls within the zone of interests to be protected by the statutory provision whose violation forms the legal basis'" for its complaint.  *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020)

(quoting *Thompson*, 562 U.S. at 177).  In other words, to sue under Title VII, CWNG must be "aggrieved . . . within the meaning of" Title VII.  *Thompson*, 562 U.S. at 177 (citation omitted).  *See also Simmons*, 972 F.3d at 666 ("Th[e] familiar test requires a court to determine . . . whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." (citation and internal punctuation omitted)).

CWNG is not aggrieved within the meaning of Title VII.  "The zone of interests that Title VII protects is limited to those in employment relationships with the defendant." *Simmons*, 972 F.3d at 668.  Thus, Title VII protects individuals, employees, and job applicants.  42 U.S.C. § 2000e-2(A)(1), (2). CWNG, by its own characterization, is an unincorporated association.  (1 Appx. 24, ¶ 1.)  Furthermore, CWNG brought the Title VII claim only on behalf of itself – not on behalf of any of its members.  (*Id.* at 36-37, ¶¶ 71-74.)  Confirming that fact, in summary judgment briefing Defendants adduced evidence that CWNG did not assert any claim on behalf of its members (1 Aplt. Appx. 149, ¶ 27; *id.* at 201 (Interrog. No. 1); *id.* at 204), which CWNG did not dispute.  (*See generally* 2 Aplt. Appx. 413-24.)  Correspondingly, during the dispositive motions hearing, CWNG's counsel repeatedly asserted that "the group," *i.e.* CWNG, "has the claim, not the individuals."  (Aple. Appx. 135 (Tr. 107:8); *id.* at 141 (Tr. 113:3).)

But "the purpose of Title VII is to protect *employees* from their employers' unlawful actions." *Thompson*, 562 U.S. at 178 (emphasis added). As CWNG is not an employee or applicant – or, indeed, an individual at all – any alleged injury to CWNG does not fall within Title VII's zone of interests. *See id.; supra* p. 25 (*Simmons*); *see also Cook v. Billington*, 541 F. Supp. 2d 358, 363 (D.D.C. 2008) (Foundation "cannot bring claims on its own behalf" because Title VII "does not protect organizations from discrimination"); *Forrest Cnty. Branch, NAACP v. Johnson Controls, Inc.*, No. 2:10-cv-25, 2010 WL 3168059, at *2 (S.D. Miss. Aug. 9, 2010) ("Title VII provides protection to individuals and not organizational entities."). Thus, based on CWNG's lack of statutory standing alone, this Court may affirm the summary judgment dismissal of CWNG's Title VII claim.

### B. Alternatively, CWNG Lacks A Viable Title VII Failure To Accommodate Claim.

CWNG's discussion of the law that applies to a Title VII religious discrimination claim for failure to accommodate is self-servingly truncated. (Aplt. Br. at 12-13; *id.* at 21; *id.* at 42-44.) Additional details provide alternative bases to affirm without reaching CWNG's arguments.

Beginning with the foundational principles, "Title VII makes it 'unlawful . . . for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]'" *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir.

26

2018). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

"In the summary judgment context," the Court applies "the principles outlined above through the familiar burden shifting approach" set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000). "[T]he employee initially bears the burden of production with respect to a prima facie case." *Id.* "The employee must show that: (1) he or she had a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed his or her employer of this belief; and (3) he or she [suffered an adverse employment action] for failure to comply with the conflicting employment requirement." *Id.*; *see also Ibrahim v. Alliance for Sustainable Energy, LLC*, 994 F.3d 1193, 1200 (10th Cir. 2021). If a prima facie showing is made, "the burden . . . shifts to the employer to (1) conclusively rebut one or more elements of the plaintiff's prima facie case, (2) show that it offered a reasonable accommodation, or (3) show that it was unable to reasonably accommodate the employee's religious needs without undue hardship." *Thomas*, 225 F.3d at 1156.

### i.    CWNG Fails To Meet Its Prima Facie Burden.

Below, although Defendants argued in their summary judgment motion that CWNG could not satisfy the first and third elements (2 Aplt. Appx. 305-08), CWNG made "no arguments about its prima facie case." (4 Aplt. Appx. 816; *see also* 3 Aplt. Appx. 465-88.) On appeal, it is too late for CWNG to make the required showing. *Hayes v. Skywest Airlines, Inc.*, 12 F.4th 1186, 1201 (10th Cir. 2021) (Forfeiture occurs when a party fails to raise an argument before the district court.). Even if the district court's analysis could be viewed as creating an opening for CWNG to meet its prima facie burden on appeal, because CWNG addresses only the third element in its opening brief, it has not done enough to withstand summary judgment. *Supra* p. 27 (under *Thomas*, all three elements must be met); *Johnson v. Weld Cnty., Colo*, 594 F.3d 1202, 1215 (10th Cir. 2010) (failure to make prima facie showing dispositive); *see also Reedy,* 660 F.3d at 1274 (General rule in this Circuit is that a party waives arguments initially raised in a reply brief).

Although the district court did not rely on the first element (4 Aplt. Appx. 815-17), the following undisputed fact found by the court provides a basis to affirm based on the element: "Participation in ERGs is not an employment requirement and is a volunteer activity." (*Id.* at 807; *see also* 2 Aplt. Appx. 295, ¶ 5; *id.* at 336; 3 Aplt. Appx. 465, ¶ 5.) Inferentially, because none of CWNG's members can show that he or she had a bona fide religious belief that conflicted with a job requirement,

as the first element requires, CWNG cannot "survive summary judgment" on its failure to accommodate claim. *Supra* p. 27 (*Thomas*); *see also Johnson*, 594 F.3d at 1215 (the district court's grant of summary judgment may be affirmed "on any ground adequately supported by the record.").

If the Court nonetheless considers CWNG's arguments regarding its prima facie burden, they consist of CWNG's quarrel with the district court's analysis of the third element. (Aplt. Br. at 42-44; 4 Aplt. Appx. 815-17.) CWNG contends that the court erred in two respects.

First, for the legal standard that applies under the element, the district court read Tenth Circuit precedent as requiring CWNG to show that for failing to comply with a conflicting employment requirement, "a firing occurred[.]" (4 Aplt. Appx. 816.) CWNG argues that the standard is not that narrow. (Aplt. Br. at 42-44.) Defendants do not disagree that the element may be met by something other than a firing. Even if the district court erred in the foregoing respect, the error proves harmless given the court's further reasoning.

In further reasoning that even if the element could be met by some other adverse employment action and using the hostility allegedly experienced by a CWNG member (for lack of anything else), the court observed that CWNG had not cited any authority showing that "hostility . . . can satisfy the third element[.]" (4 Aplt. Appx. 816; *see also id.* at 810 (alleged hostility experienced by Colombel)).

As a rejoinder on appeal, CWNG cites cases for the proposition that the "[a]dverse action" standard is "not limited to terms and conditions of employment." (Aplt. Br. at 42-43.) But as one of the cases explains, "[e]ach kind of prohibited [Title VII] discrimination occurs by way of an *employment action* – whether pertaining to hiring, or, firing, or compensating, or . . . altering [the] terms or conditions" of an employee's employment. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 357 (2024) (emphasis added); *see also Ibrahim*, 994 F.3d at 1200 (prima facie case requires "evidence of . . . an adverse employment action"). Sandia's withdrawal of sponsorship for a voluntary employee group does not fall within that rubric. Moreover, by not making it below, CWNG forfeited its argument that "[r]emoval of ERG status is a significant change in in benefits[.]" (Aplt. Br. at 43; *compare* 3 Aplt. Appx. 465-88.) *Hayes*, 12 F.4th at 1201.

The second error alleged by CWNG relates to the district court's observation that, procedurally, CWNG had not met its evidentiary burden to withstand summary judgment:

> Even if Plaintiff could establish the third element with evidence of something other than a firing, Plaintiff has failed to do so. Plaintiff states that it 'cannot recruit, sponsor speakers, meet with the Lab Director with other ERGs[,] obtain funding, be involved in Diversity Cinema, write articles for Sandia News, use the premises for gatherings [or] receive[] ERG emails.' Doc. 145 at 3. However, with the exception of recruiting and sponsoring speakers, Plaintiff has provided no record citations to support these allegations and it is not the [c]ourt's job to search for them. *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004)[.]

(4 Aplt. Appx. 817.)

On appeal, CWNG protests that it did present record citations. "It was argued in ¶41, Response to MSJ Regarding Religious Discrimination. Vol. 3, page 467 and Appellant's motion for Summary Judgment[.]" (Aplt. Br. at 43.) But as review of the cited paragraph shows, CWNG made bare factual assertions. (3 Aplt. Appx. 467-68.) The factual assertions are therefore argument of counsel which is "not evidence, and cannot provide a proper basis to deny summary judgment." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009).

CWNG also had no pending summary judgment motion. Previously, the court had struck CWNG's initial summary judgment motion based on procedural rule violations. (Aple. Appx. 23-25.) CWNG did not renew its summary judgment motion until after its response. (3 Aplt. Appx. 465; *id.* at 544.) Thus, in documenting the filings that it had considered, the district court did not cite either of CWNG's summary judgment motions. (4 Aplt. Appx. 807.) The Court therefore need not consider CWNG's renewed motion. *See Adler*, 114 F.3d at 671 ("[A]lthough our review is de novo, we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties."); *see also Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200, 1228 (10th Cir. 2019) ("[W]here the burden to present . . . specific facts by reference to exhibits and the

existing record was not adequately met below, we will not reverse a district court for failing to uncover them itself.") (internal quotation marks & citation omitted).  The same can be said of CWNG's record cites that follow the litany of harms CWNG claims it suffered after Sandia withdrew its sponsorship.  (Aplt. Br. at 43.)  The record cites do not lead to CWNG's response to the religious discrimination motion (*compare* 3 Aplt. Appx. 465-528) which means that the Court also need not consider them.

CWNG also cannot show that the third prima facie case element is met, which also makes summary judgment proper.  *Supra* pp. 27, 28 (*Thomas; Johnson*).  The Court therefore need not consider CWNG's remaining arguments on its Title VII claim.

### ii.    If Reached, Defendants Provided A Reasonable Accommodation.

"Alternatively, Defendants' summary motion is granted because they provided a reasonable accommodation."  (4 Aplt. Appx. 817.)  CWNG also fails to adequately and accurately present the law regarding the district court's alternative basis for granting summary judgment on CWNG's Title VII claim.  (Aplt. Br. at 12-13; *id.* at 21.)[6]

---

[6]    CWNG's first sentence in its discussion of the law regarding "Reasonable Accommodation" is correct.  (Aplt. Br. at 12.)  However, in subsequently referring to *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481 (10th Cir. 1989) and *Banks v. Service America Corporation*, 952 F. Supp. 703 (D. Kan. 1996) (*id.* at 13), CWNG relies on

While "'[a]ccommodate . . . means . . . allowing the plaintiff to engage in [his] religious practice despite the employer's normal rules to the contrary,'" *Tabura*, 880 F.3d at 550 (quoting *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 n.2), "Title VII expressly requires only that an employer 'reasonably accommodate' an employee's religion." *Id.* at 551 (quoting 42 U.S.C. § 2000e(j)). Thus, Title VII "does not require employers to accommodate the religious practices of an employee in exactly the way the employee would like" or in "a way that spares the employee any cost whatsoever." *Pinsker v. Joint Dist. No. 28J of Adams and Arapahoe Counties*, 735 F.2d 388, 390-91 (10th Cir. 1984); *see also Toledo*, 892 F.2d at 1489 ("[A]n employee . . . has a duty to reasonably cooperate with an employer's efforts to accommodate his religious practices."). "Once the employer has provided a reasonable accommodation, it need not further show that . . . the employee's alternative accommodation[] would result in undue hardship." *Tabura*, 880 F.3d at 551.

In this case, as the district court found, the following facts are undisputed regarding Defendants' efforts to reasonably accommodate CWNG. "Sandia believed that Sections F and G of [Plaintiff's] Governance Structure, and the

---

the holding that "an employer who has made no efforts to accommodate the religious beliefs of an employee . . . before taking action . . . may only prevail if it shows that no accommodation could have been made without undue hardship." *Toledo*, 892 F.2d at 1490. This is not such a case. *Infra*.

requirement that all leaders must ascribe to the Statement of Faith were violations of HR008 and asked Plaintiff to amend its Strategic Plan. (4 Aplt. Appx. 809; *see also* 2 Aplt. Appx. 299, ¶¶ 27-28; *id.* at 359; *id.* at 360; 3 Aplt. Appx. 466-67, ¶¶ 27-28; 4 Aplt. Appx. 783.) "Plaintiff requested a religious accommodation that would allow it to leave in the language due to a sincerely held religious belief." (4 Aplt. Appx. 809; *see also* 2 Aplt. Appx. 299, ¶ 29; *id.* at 342; 3 Aplt. Appx. 467, ¶ 29.) "Sandia representatives met with Plaintiff's leaders a number of times and requested Plaintiff provide alternative language for the provisions that Sandia believed conflicted with HR008." (4 Aplt. Appx. 809; *see also* 2 Aplt. Appx. 299, ¶ 30; *id.* at 363; 3 Aplt. Appx. 467, ¶ 30.) "Plaintiff proposed that it replace its Statement of Faith with a specific portion of the Bible, 1 Timothy 3." (4 Aplt. Appx. 809; *see also* 2 Aplt. Appx. 299, ¶ 31; *id.* at 363; 3 Aplt. Appx. 467, ¶ 31.) "Sandia rejected this proposal because it believed the proposed language would still violate HR008." (4 Aplt. Appx. 809; *see also* 2 Aplt. Appx. 299, ¶ 32; *id.* at 363; 3 Aplt. Appx. 467, ¶ 32; 4 Aplt. Appx. 783.)

"Sandia then proposed removing Section[s] F and G of Plaintiff's Governance Structure and the requirement that all leaders ascribe to the Statement of Faith." (4 Aplt. Appx. 809; *see also* 2 Aplt. Appx. 300, ¶ 33; *id.* at 341; 3 Aplt. Appx. 467, ¶ 33; 4 Aplt. Appx. 783.) "Sandia's proposal did not request any other changes to the Strategic Plan, such as revising the Executive Summary,

Mission/Vision/Purpose, or Values provisions." (4 Aplt. Appx. 809; *see also* 2 Aplt. Appx. 300, ¶ 34; *id.* at 341; 3 Aplt. Appx. 467, ¶ 34.)  "Plaintiff rejected Sandia's proposal and ultimately determined that it would not make any revisions to its Strategic Plan."  (4 Aplt. Appx. 809; *see also* 2 Aplt. Appx. 300, ¶ 35; *id.* at 341; *id.* at 363; 3 Aplt. Appx. 467, ¶ 35.)  "On November 18, 2020, Sandia withdrew its sponsorship of Plaintiff as an ERG."  (4 Aplt. Appx. 809; *see also* 2 Aplt. Appx. 300, ¶ 36; *id.* at 344; 3 Aplt. Appx. 467, ¶ 36.)  The district court concluded that Defendants had taken "reasonable steps" to accommodate CWNG.  (4 Aplt. Appx. 818.)

In addressing the court's analysis, CWNG asserts that the court ignored "differential treatment and hostility." (Aplt. Br. at 43.)  But that assertion is incorrect twice over.  CWNG disregards the court's discussion of CWNG's allegation that it was treated differently than other ERGs regarding the enforcement of HR008. "Plaintiff seems to argue that Defendants had no business asking it to change its documents . . . , and the fact that Defendants did shows that Plaintiff was targeted, not that it was being accommodated."  (4 Aplt. Appx. 818.)  "However, evidence in the record shows that Sandia officials were concerned about ERGs' similar restrictions and that, at least with respect to the [Black Leadership Committee ("BLC")], its charter was amended."  (*Id.*; *see also* 2 Aplt. Appx. 441; *id.* at 451.)

As the district court's analysis indicates, during its ERG Strategic Plan review process, *supra* p. 35, Defendants became concerned about exclusionary language in the Strategic Plans of two other ERGs, the American Indian Outreach Committee and the BLC (4 Aplt. Appx. at 809-10; *see also* 2 Aplt. Appx. 300, ¶ 37; *id.* at 367; *id.* at 369.)   Defendants took steps to address the language.   (2 Aplt. Appx. 300, ¶ 38, *id.* at 367; *id.* at 369.) As the court found, the fact that the BLC amended its charter to remove the exclusionary language (2 Aplt. Appx. 300, ¶ 39; *id.* at 367), shows that CWNG was not treated differently. And, as already discussed, the court did address CWNG's hostility allegation and found it lacking. *Supra* p. 29.

CWNG also asserts that "[i]ts tenet of faith and right to discipline were banned." (Aplt. Br. at 43-44.)  But Defendants were not required to accommodate CWNG "in exactly the way" CWNG would have liked or in a way that spared CWNG "any cost whatsoever." *Supra* p. 3 (*Pinsker*).  Defendants only asked CWNG to remove the exclusionary language in its Statement of Faith and Disciplinary Clause.  (2 Aplt. Appx. 309.)  Defendants did not require CWNG to remove other leadership requirements, including the provisions for leaders to be nominated and voted upon (*id.*), which provided bulwarks against anyone with anti-Christian values ascending to a leadership position.  Defendants also did not require CWNG to change its Executive Summary, Mission/Vision/Purpose, or Values documents, which clearly articulate its Christian-centered focus.  (*Id.*)  Thus, as the

court recognized, Defendants' "actions did not require Plaintiff's leaders to modify their religious beliefs[.]"  (4 Aplt. Appx. 819 (internal quotation marks & citation omitted) (alteration omitted).)

In its final attack on the court's analysis, CWNG argues that the court "ignored" *Groff v. DeJoy*, 143 S. Ct. 2279 (2023).  (Aplt. Br. at 44.)  But because the court found that Defendants had provided a reasonable accommodation, the court did not need to reach the undue hardship step in the analysis.  *Supra* pp. 27, 33 (*Thomas; Tabura*).  Based on the foregoing considerations, neither does this Court.

### iii.   If Reached, CWNG's Undue Hardship Argument Is Unavailing.

In quoting snippets from *Groff*, CWNG telegraphs its views regarding what the Supreme Court held regarding the undue burden standard.  (Aplt. Br. at 44.) Where CWNG attempts to apply *Groff* to this case, CWNG relies on unsupported and conclusory factual assertions.  (*Id.* at 21.)  The assertions may not be considered, either because they cite evidence not properly brought to the district court's attention by CWNG in its summary judgment response (*compare* 3 Aplt. Appx. 465-528), *see Adler*, 144 F.3d at 671-72, or because they are not supported by any evidence (Aplt.'s Br. at 21) and therefore cannot provide a basis for denying summary judgment, *Pinkerton*, 563 F.3d at 1061.  Moreover, by not raising aspects of its underlying argument on the issue in its opening brief, CWNG has abandoned them, *Reedy*, 660 F.3d at 1274, and cannot raise them in its reply brief, *id.* at 1274.

Inadequately and improperly briefed as it is, CWNG's undue hardship argument should be deemed waived. *Adler,* 144 F.3d at 679.

If considered, the undue hardship issue does not help CWNG. In *Groff*, in clarifying the "undue hardship" standard, 143 S. Ct. at 2286, the Supreme Court "held that the 'more than *de minimis* cost' standard that ha[d] become the primary test applied by courts since *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), does not suffice to establish 'undue hardship' under Title VII." *Cagle v. Weill Cornell Medicine*, 680 F. Supp.3d 428, 436 n.2 (S.D.N.Y. 2023) (quoting *Groff*, 143 S. Ct. at 2294) (internal quotation marks omitted).

As clarified by *Groff*, "'[u]ndue hardship' is [instead] shown when a burden is substantial in the overall context of an employer's business[.]'" *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1278 n.9 (10th Cir. 2024) (quoting *Groff*, 143 S. Ct. at 2294); *see also Groff*, 143 S. Ct. at 2295 (Whether a hardship would be substantial in the context of an employer's business should be resolved "in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer.") (internal quotation marks omitted). While the standard is "more rigorous than previously understood," the Supreme Court "eschewed bright-line rules in favor of a 'context-specific approach,' leaving it to the lower courts to 'resolve whether a hardship would be substantial in the

context of an employer's business in the common-sense manner that they would use in applying any such test.'" *Trueblood v. Valley Cities Counseling and Consultation*, No. C23-0269, 2024 WL 3965926, at *12 (W.D. Wash. Aug. 28, 2024) (quoting *Groff*, 143 S. Ct. at 2296) (alteration omitted).

"After *Groff*, courts have overwhelmingly agreed that both economic and non-economic costs remain relevant to the 'undue hardship' analysis," *id.* at *13, *see, e.g.*, *Kluge v. Brownsburg Cmty. Sch. Corp.*, 1:19-cv-02462, ___ F. Supp.3d ___, 2024 WL 1885848, at *15 (S.D. Ind. April 30, 2024) ("Although the Supreme Court removed some costs from consideration, it left others untouched, including non-economic costs."). The E.E.O.C. itself has expressed a similar view. *V. v. Vilsack*, 2024 WL 1155256 at *9 (E.E.O.C. March 7, 2024) ("Undue hardship . . . is not limited to considerations of financial cost. Indeed, Title VII does not refer to 'cost' at all.").

"Thus, the impact of the accommodation on the rights of other employees who are a part of the business is relevant to the undue hardship analysis," which "includes "impacts on rights and interests that are protected by Title VII itself." *Id.* "Courts have . . . consistently held an accommodation qualifies as an undue burden if granting it would require the employer to violate the law." *Taylor v. Southeastern Pa. Transp. Auth.*, No. 23-2140, 2024 WL 3203318, at *27 (E.D. Pa. June 27, 2024) (citing, among other cases, *Weber v. Leaseway Dedicated Logistics, Inc.*, 166 F.3d

1223 (10th Cir. 1999) (non-precedential)); *see also Cagle,* 680 F. Supp.3d at 436 n.2 ("The [c]ourt does not construe *Groff* . . . as effectively presenting [d]efendant . . . with the Hobson's choice of violating . . . federal law[.]").  Relatedly, "Title VII does not require an employer to grant a religious accommodation that would place it on the 'razor's edge' of liability."  *Kluge*, 2024 WL 1885848, at *20 (citation omitted). "Rather, the threat of . . . disrupting litigation may . . . constitute undue hardship." *Id.* (internal quotation marks & citation omitted).

Even after *Groff*, then, "[a]n accommodation may impose an undue hardship on the conduct of an employer's business if it interferes with the employer's efforts to meet its other legal obligations under Title VII or other equal employment opportunity laws."  *V,* 2024 WL 1155256 at *10.  Granting CWNG's request that it be allowed to keep its Statement of Faith and Governance Structure intact would have interfered with Sandia's efforts to prevent unlawful discrimination in its workplace. The accommodation would have enabled CWNG to practice religious discrimination   against Sandia employees who did not subscribe to CWNG's statement of faith or adhere to its disciplinary clause by excluding them from leadership positions.  LGBTQ employees are an obvious example.  (2 Aplt. Appx. 298, ¶ 17; *id.* at 335; 3 Aplt. Appx. 465-66, ¶ 17; 4 Aplt. Appx. 785.)  Concomitantly, the accommodation would have exposed Sandia to liability from those unlawfully excluded from CWNG's leadership.

Allowing the accommodation also would impose an undue hardship on Sandia because the accommodation would place Sandia in the position of resolving intra-religious moral and ethical disputes.  Sandia, for example, could be caught in the middle by a Catholic employee whom CWNG refused a leadership role because she takes issue with the Statement of Faith or by a divorced Christian employee who finds himself on the wrong side of CWNG leadership on a question that divides some Christians.  As a secular employer, Sandia is ill-equipped to resolve such disputes.

Insofar as CWNG discernably addresses the undue hardship standard in its "Reasonable Accommodation" argument (Aplt. Br. at 21), CWNG does so insufficiently.[7]  *Toledo* does not inform the analysis.  The burden in *Toledo* was speculative because it involved a prospective employee's off-duty religious conduct, which the Court did not believe exposed the employer to liability.  *See* 892 F.2d at 1492.  CWNG was seeking to implement a discriminatory practice in the workplace, through a Sandia-sponsored group, using Sandia resources, making the risk of liability much more concrete.  Moreover, an employer should not have to wait around to be sued in order to show that a proposed accommodation would cause an undue hardship.  Finally, the liability risk in *Toledo* involved tort liability.  The

---

[7]    Defendants do not respond to undeveloped, unsupported, and irrelevant assertions in CWNG's argument.  CWNG, for example, asserts that "Title VII excludes religious organizations."  (Aplt.'s Br. at 21.)  But CWNG cites no law or evidence which shows that it is a "religious organization" that qualifies for the exemption.  *See* 42 U.S.C. § 2000e-2(e)(2).

employer argued that the prospective employee's peyote use might cause him to cause an accident while driving for work, exposing the employer to liability. 892 F.2d at 1484. That is a far cry from the situation in this case in which CWNG was seeking to implement a leadership practice that was inherently discriminatory. The liability risk here does not rest on a hypothetical chain of events like it did in *Toledo*.

As the foregoing considerations show, affirmance of the district court's summary judgment dismissal of CWNG's Title VII claim is proper. CWNG's arguments do not provide a basis to conclude otherwise.

**3.**     **Summary Judgment On The 42 U.S.C. § 1983 Claims In Counts 2 Through 6 Of The First Amended Complaint Is Proper.** (Resp. OB Points I.1.A.2 (Freedom of Association), I.1.5 (Viewpoint Discrimination), I.1.A.7 (1st Amendment, I.1.A.10 (Injunctive Relief) & OB Points I.2.A (Reasonable Accommodation), I.2.B (Freedom of Association); I.2.H (Injunctive Relief); I.2.L. Capacity to Sue; I.2.M (State Action).)

There is less to address regarding CWNG's claims in Counts 2 through 7 of its First Amended Complaint than below. In Counts 2 through 6, CWNG alleged violations of the First and Fourteenth Amendments of the Constitution which CWNG sought to vindicate under "42 U.S.C. § 1983." (4 Aplt. Appx. 823.) Other than its RFRA argument, CWNG's only assertion that Sandia is somehow a state actor is through Section 1983. (Aplt. Br. at 46-47.) Thus, the Court need not consider the alleged constitutional violations or request for injunctive relief absent a showing that Section 1983 applies in the first place, as the district court recognized.

(*Id.* at 825-32; *id.* at 836.)  Because in its opening brief CWNG addresses only the court's Section 1983 summary judgment analysis regarding Counts 2 through 6, Defendants respond accordingly.[8]  The previously-discussed summary judgment standard of review and principles apply to review of the district court's summary judgment dismissal of the counts.  *Supra* p. 23.  Given the undisputed material facts in the record, the analysis turns upon two threshold questions of law as to whether Section 1983 applies in this case.

### A.    CWNG Is Not A "Person" Entitled To Sue Under Section 1983.

"A claim under § 1983 can be brought only by a 'citizen' or 'person.'" *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 868 F.3d 1199, 1205 (10th Cir. 2017) (quoting 42 U.S.C. § 1983).  In *Lippoldt v. Cole*, as a matter of first impression, the Court held that, "an unincorporated association, is not a 'person' under 42 U.S.C. § 1983." *See* 468 F.3d 1204, 1211 (10th Cir. 2006); *see also id.* at 1212-16 (analysis of legislative history of Section 1983, general understanding as of 1871 regarding the legal personality of unincorporated associations, and the

---

[8]    By not addressing them in its opening brief, CWNG has abandoned its assertion that it brought a claim against Sandia under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and Count 7 (Civil Conspiracy) in the complaint and waived review of the district court's summary judgment analysis regarding those aspects of the case (4 Aplt. Appx. 832-35). *Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) (Appellant must raise issues upon which it seeks review in its opening brief; issues and arguments not raised are deemed waived).

Dictionary Act of 1871, which explain the holding).  The Court has not departed from the holding.  *See Becker*, 868 F.3d at 1206 n.5.

As the district court recognized, the holding provides a threshold ground to dispose of CWNG's Section 1983 claim.  "Plaintiff, by its own characterization, is an unincorporated association."  (4 Aplt. Appx. 826; *see also* 1 Aplt.  Appx. 24, ¶ 1.)  "Given the Tenth Circuit's instruction that unincorporated associations cannot seek relief under 42 USC § 1983 as plaintiffs, the [c]ourt grants summary judgment to Defendants on their claim that Plaintiff, an unincorporated association, is not a 'person' under § 1983."  (4 Aplt. Appx. 826.)  The analysis is that simple.

On appeal, in its "Capacity to Sue" argument CWNG makes counterarguments.  (Aplt. Br. at 44-46.)  But below, when it had the opportunity to respond to Defendants' argument in which they raised *Lippoldt* and *Becker* (1 Aplt. Appx. 218), CWNG "made no responsive arguments on whether it is entitled to sue."  (4 Aplt. Appx. 825;  *see also* 2 Aplt. Appx. 425-38.)   Consequently, CWNG forfeited its counterarguments, *Hayes*, 12 F.4th at 1201, and they should be disregarded.

Even if the Court considers the counterarguments (Aplt.'s Br. at 44-46), they do not avail CWNG.  They can be distilled to two points.

The first point is based on CWNG's argument that it has "[c]apacity to sue" under Federal Rule of Civil Procedure 17(b)(3)(A) and related New Mexico law.

(*See* Aplt.'s Br. at 44.)   But, as CWNG indicates (*id.*), it made the argument in responding to Defendants' Motion for Summary Judgment Based on Lack of Authority and Lack of Capacity (1 Aplt. Appx. 145), not Defendants' Motion for Summary Judgment on Counts Two, Three, Four, Five, Six, and Seven of Plaintiff's First Amended Complaint.  (*Id.* at 210.)  CWNG did not incorporate the argument (2 Aplt. Appx. 413-15) by reference into its response to the latter motion.  (*Id.* at 425-38.)  Having not drawn the district court's attention to the argument for the court to consider in deciding whether CWNG could seek relief under Section 1983, CWNG forfeited the argument as a basis for reversing the court's Section 1983 analysis on appeal.  *Hayes*, 12 F.4th at 1201.[9]

The second point consists of attempts by CWNG to discredit the cases the court cited in its decision on the issue.  (Aplt. Br. at 44-46; 4 Aplt.  Appx. 825-27.)  In addressing *Lippoldt*, CWNG initially sets forth what appears to be a block quote from the opinion.  (Aplt. Br. at 44.)   While the initial lines include snippets from the opinion, *see* 468 F.3d at 1213-1214, the final sentence does not.  In the sentence CWNG adverts to a footnote in *Allee v. Medrano*, 416 U.S. 802, 819 n.13 (1974), in which the Supreme Court stated, without extensive analysis, that "[u]nions may sue under Section 1983[.]"  CWNG further addresses *Allee* where CWNG block quotes

---

[9]     Based on its other rulings, the district court denied as moot Defendants' Motion for Summary Judgment Based on Lack of Authority and Lack of Capacity. (Aple. Appx. 27.)

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266 (11th Cir. 2021). (Aplt. Br. at 45-46.) In the block quotes, the Eleventh Circuit interprets *Allee* to suggest that, like the unincorporated union in that case, an unincorporated association should be considered a "person" entitled to sue under Section 1983 and criticizes *Lippoldt*. (*Id.*) But because *Allee* did not require the Supreme Court to resolve whether an unincorporated association is a "person" entitled to sue under Section 1983, *Allee* is not authority for the proposition, *Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*, 654 F.3d 1073, 1084 (10th Cir. 2011), and, as the district court recognized, notwithstanding the Eleventh Circuit's criticism, *Lippoldt* remains the controlling authority for the federal district courts within this Circuit. (4 Aplt. Appx. 826.) CWNG's last argument regarding *Lippoldt*, in which CWNG addresses an irrelevant Kansas class action statutory provision, *see* Kan. Stat. Ann. § 60-223b (2010), and makes a bare assertion about New Mexico law, fails to show that "*Lippoldt* does not apply" in this case. (Aplt. Br. at 44-45.)

CWNG's remaining arguments regarding the other cases the court cited also miss the mark. (Aplt. Br. at 45.) What matters from *Becker* is the footnote where the Court reaffirmed its unincorporated association holding from *Lippoldt*. 868 F.3d at 1206 n.5. What matters from *New Mexico Transportation Union v. City of Albuquerque*, No. 1:14-cv-00280, 2015 WL 13666996 (D.N.M. Feb. 13, 2015) is

the language that the district court quoted from it regarding this Court's "extensive analysis" underlying the holding.  (4 Aplt. Appx. 826.)

This case does not present reason to revisit that analysis.   Instead, the Court should affirm the district court's summary judgment dismissal on the ground that CWNG is not a "person" entitled to sue under Section 1983.

### B.    Defendants Did Not Act Under Color Of State Law As Is Required For A Section 1983 Claim.

"The two elements of a Section 1983 claim are (1) deprivation of a federally protected right by (2) an actor acting under color of state law."  *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).   "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action exercised power by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Id.* at 1156 (internal quotation marks & citation omitted).

As the district court recognized, based on the summary judgment record, "it is undisputed that Sandia is not an agency of the State of New Mexico or any other state or local government."  (4 Aplt. Appx. 828; *see also* 1 Aplt. Appx. 212, ¶ 4; *id.* at 235; 2 Aplt. Appx. 425, ¶ 4; 4 Aplt. Appx. 785.)  "It is further undisputed that Sandia . . . conducts no business for the State of New Mexico or state agencies."  (4 Aplt. Appx. 828; *see also* 1 Aplt. Appx. 212, ¶ 3; *id.* at 236; 2 Aplt. Appx. 425, ¶ 3.) "Plaintiff's [First] Amended Complaint does not even mention state or local officials

47

or describe how Sandia or its employees acted under color of state law." (4 Aplt. Appx. 828; *see also* 1 Aplt. Appx. 24-39.)

Usually, "[w]here a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations," the Court applies the previously discussed four tests, s*upra* pp. 20-21 n.5. *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013). But by not briefing any of the tests in its "State Action" argument (Aplt. Br. at 46-47) and by not challenging the district court's determination that the symbiotic-relationship test is not met (4 Aplt. Appx. 827-28), CWNG has waived consideration of the tests, *Becker*, 494 F.3d at 913 n.6, and abandoned its state actor arguments below regarding them, *Reedy*, 660 F.3d at 1274. (2 Aplt. Appx. 434; Aple. Appx. 95-97; *id.* at 101-05; *id.* at 115-20.)

CWNG relies instead on three cases it belatedly raised below in arguing that they show Defendants are state actors. (Aplt. Br. at 46-47; 4 Aplt. Appx. 795-96.) CWNG's argument consists of block quotes from the cases followed by conclusory assertions unaccompanied by record cites. (Aplt. Br. at 46-47.) Because CWNG has inadequately briefed its argument, CWNG should be deemed to have waived review of it. *Supra* p. 21 n.5 (*Bronson*).

Even if considered, the argument does not help CWNG. In addressing *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714 (10th Cir. 1988), CWNG appears to rely on a block quote from the case. (Aplt.'s Br. at 46.) However,

in the last line of what appears to be quoted material, CWNG begins to take issue with the district court's analysis of CWNG's use of the case. (*Id.*) As the court recognized, CWNG's use of the case to suggest that Sandia was a state actor was misleading. The court observed that this Court "in fact questioned whether the private contractor was a state actor, but ultimately did not decide the issue because the contractor did not raise it on appeal[.]" (4 Aplt. Appx. 829.) "Contrary to [CWNG's] insinuation, *DeVargas* does not demonstrate that a private contractor like Sandia is a state actor for the purpose of a § 1983 claim." (*Id.*)

CWNG's treatment of *Doe v. Lawrence Livermore National Laboratory*, 65 F.3d 771 (9th Cir. 1995), *rev'd sub nom Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997) (Aplt. Br. at 46-47), is similarly misleading. The claims in that case included a "§ 1983 claim against John Nuckolls (Nuckolls), director of the Lawrence Livermore National Laboratory (Laboratory), which is owned by the United States Department of Energy (Department) and is operated by the [Regents of the University of California ([State] University)]." 65 F.3d at 772 (internal quotation marks omitted). After reversing the lower court's determination that the State University was entitled to Eleventh Amendment immunity because it was functioning as an arm of the State of California, *id.* at 774-776, the Ninth Circuit concluded that the State University was a "person" within the meaning of Section

1983, as was Nuckolls, as "the director of the [State] University-managed Laboratory," *id.* at 776.

In applying *Doe* to this case, CWNG's bare assertion does not suffice to show that the Individual Defendants "are like Nickolls [sic]." (Aplt. Br. at 47.) Again, arguments of counsel are not evidence. *Pinkerton*, 563 F.3d at 106. CWNG's bare assertion that, "Sandia even if not functioning as [an] arm of the state is an instrumentality of the Dept. of Energy and a person under § 1983" (*id.*), demonstrates its misapprehension of the law in two respects. The instrumentality test applies under RFRA, not Section 1983. *Supra* p. 19; pp. 20-21 n.5. A Section 1983 claim typically lies only against "state actors who violate a federal right, pursuant to state authority." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 869 (10th Cir. 2016). CWNG cites nothing which establishes that an exception to that principle applies in this case.

CWNG's attempt to distinguish *Ochieno v. Sandia National Laboratories*, No. 18-197, 2019 WL 161503 (D.N.M. Jan. 10, 2019), on the ground that the plaintiff in that case did not plead any facts establishing that Sandia was a state actor, also fails. CWNG cites nothing in support of its assertion that "[h]ere such facts were pled[.]" (Aplt.'s Br. at 47.) There is nothing to cite. (1 Aplt. Appx. at 24-39.)

### C.     The Court Need Not Address CWNG's First Amendment And Injunctive Relief Arguments.

As the foregoing two points show, *supra* pp. 43-50, Section 1983 does not apply in this case.  Consequently, there is no need to address CWNG's First Amendment and Injunctive Relief arguments.  Defendants therefore do not further address the arguments.

## Conclusion

All three rulings at issue should be affirmed.

## Statement Regarding Oral Argument

Appellees request oral argument.  Appellees believe that oral argument will facilitate the Court's decisional process by affording the Court an opportunity to ask the parties questions about the factual and legal issues that the case involves.

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A,

By ____*/s/ Jocelyn Drennan*_____
  Jocelyn Drennan jdrennan@rodey.com
  Charles Vigil  cvigil@rodey.com
  Samantha Hults shults@rodey.com
  Melissa Kountz mkountz@rodey.com
P.O. Box 1888
Albuquerque, NM 87103
Telephone: 505-765-5900
*Counsel for Appellees*

51

## CERTIFICATE OF COMPLIANCCE WITH TYPE VOLUME LIMITATIONS

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 12,877 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2021 word processing software in 14-point Times New Roman type.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A,

By _____*/s/ Jocelyn Drennan*_____
        Jocelyn Drennan

52