`

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT


Christians in the Workplace Networking Group, Appellant,


v.


National Technology and Engineering Solutions of Sandia, LLC, a wholly owned
subsidiary of Honeywell International, Inc., Esther Hernandez, Aaron Jim and
Bianca Hill, Appellees

No 24-2072

On appeal from the final orders of the United States District Court for the District of
New Mexico dated March 28, 2024 at No 1:22-cv-00267-DHU-DLM


REPLY BRIEF OF APPELLANT



J. Michael Considine, Jr.
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
215-564-4000
17 Sunridge Court
Durango, CO 81301
970-385-0846
adventure7@gmail.com
Counsel for Appellant

## A. Table of Contents

B. Table of Authorities                                                       2

C.  Summary of the Argument                                                   4

D.  Argument                                                                  8

E.  Combined Certificates of Compliance and Service                         25

## B. Table of Authorities

### 1.  Cases

Allee v. Medrano, 416 U.S. 802, 819 f. 13 (1974)                          6, 20

Barker v. Conroy, 282 F. Supp. 3Rd 346 (D.D.C. 2017)                    10

Boardly v. US Dept. of Justice, 605 F. Supp. 2Nd 8 (D.D.C. 2009)        10

Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001) 24

Bronson v. Swensen, 500 F. 3rd 1099,1104 (10th Cir. 2007)          13

Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014)                      9

Children's Health Defense v. Meta Platforms, 112 F. 4th 742 (9th Cir. 2024)   17

Clarke v. Sec. Indus. Ass., 479 U.S. 388, 399 (1987)

Cook v. Billington, 541 F. Supp. 2nd 358, 363 footnote 6.  (D.D.C. 2008)   19

Doe v. Bd. of Regents of the Univ. of CO, 100 F. 4th 1251 (10th Cir. 2024)  8, 24
Doe v. Lawrence Livermore Laboratory, 65 F. 3rd 771 (9th Cir. 1995)          24
Exum  v. US Olympic Committee, 389 F. 2nd 1130 (10th Cir. 2004)     13

Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 157-158 (1978)                     24

Forrest City Branch, NAACP v. Johnson Controls, Inc., No. 2:10-cv-25, 2010 WL
3168059 at *2 (S.D.Miss, 2010)                                               20

Frank v. US West, Inc., 3 F. 3rd 1357, 1366 (10th Cir. 1993)                 12

Gorsuch, Ltd., B.C v. Wells Fargo National Bank Ass. 771 F. 3rd 1230 (10th Cir.
2014)                                                                        12

Groff v. DeJoy, 600 U.S. 447 (2023)                                          23

Hall v. American National Red Cross, 86 F. 3rd 919 (9th Cir. 1996)   5, 14

Hayes v. Skywest Airlines, Inc., 12 F. 4th 1186, 1201 (10th Cir. 2020)       14

Heap v. Carter, 112 F. Supp. 3Rd 402 (E.D.Va. 2015)                                    10

Henderson v. Kennedy, 253 F. 3rd 12 (DC Cir. 2001)                                    10

Husky Ventures, Inc. v. B55 Invs. Ltd, 911 F. 3rd 1000 (10th Cir. 2018)    12

Ibrahim v. All. for Sustainable Energy, LLC, 994 F.3d 1193 (10th Cir. 2021) 21

Lebron v. N. R. Passenger Corp., 513 U.S. 374, 392, 398, 400 (1995)      5, 16

Manhattan Cmty. Access Corp. v. Hallech, 139 S. Ct. 1921(2019)              17

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)                        6, 20

Minter v. Prime Equipment Company, 451 F. 3rd 1196 (10th Cir. 2006)   5 , 11

Muldrow v. City of St. Louis, MO, 601 US 346, 357 (2024)                       7, 20

Nixon v. City & Cty. of Denver, 784 F.3d 1364, 1366 (10th Cir. 2015)          13

Reagan-Touly v. Walgreen Co., 526 F. 3rd 641, 647-648 (10th Cir. 2008)      13

Reedy v. Werholtz, 660 F. 3rd 1270, 1275 (10th Cir. 2011)                          14

Richison v. Ernest Group, 634 F. 3rd 1123, 1130 (10th Cir. 2011)               14

SIL-FLU, Inc. v. SFHC, 917 F. 2nd 1507, 1513 (10th Cir. 1990)                    13

Simmons v. USB Financial Services, Inc., 972 F. 3rd 664 (5th Cir. 2020)      18

Tanzin v. Tanvir, 592 U.S. 43, 45 (2020)                                                    14

Taylor-Weber v. Leaseway Dedicated Logistics, Inc., 166 F. 3rd 1233 (10th Cir. 1999)
                                                                                                              23

Tesone v. Empire Mrkg. Strategies,  942 F. 3rd  979, 989 (10th Cir. 2019)   12

Thiry v. Carlson, 78 F. 3rd 1491 (10th Cir. 1996)                                          10

Thompson v. N. American Stainless, LP, 562 U.S. 170, 175-177 (2011)          18

 Tran v. Treasurer of State Colleges in Co, 355 F. 3rd 1267 (10th Cir. 20024)  14

 U.S. v. Quiantance, 471 F. Supp. 2Nd 1153 (D.N.M. 2006)                          10

V. vs. Vilsack, Appeal No. 2019005478 (EEOC 2024)                                    23

VDARE Fdn. v. City of Co. Springs, 11 F. 4th 1151, 1164 (10th Cir. 2021)  17

Werner v. McCotter, 49 F.3d 1476, 1478, 1480-1481, (10th Cir. 1995)          10

Yee v. Escondido, 503 U.S. 519, 534 (1992)                                                13

2.  Statutes

42 U.S.C. §2000e(j)                                                      10

42 U.S.C. §2000e-2(a)(1) & (2)                                  7, 10

42 USC §2000bb-1(b)                                                   9

3.  Rules

Rule 17(b)(3)(A) FRCP                                                6

4.  Other authorities

https://sc-drcds.osti.gov/SWI/DOE-Policies-Prohibiting--Discrimination-and-Harassment     (DOE nexus with Sandia)                    15

https://www.google.com/url?sa=t&source=web&rct=j&opi=89978449&url=https://www.energy.gov/nnsa/sandia-national-laboratories-contract&ved=2ahUKEwie4Zimu6eJAxVVDzQIHWJxGEAQFnoECAgQAQ&usg=AOvVaw31yWMNoJnZ7connN5IeMoj (prime contract between DOE and Sandia)                    15

EEOC Compliance Manual on Religious Discrimination, §12-IV(A) (2021)    6

EEOC Enforcement Guidance on Retaliation and Related Issues § II(B)(4)(b) (2016)    18

Executive Order 11478                                              14

Executive Order 13583                                              14

Executive Order 13672                                              14

C.  Summary of the Argument

1. The court's justification to deny leave to amend---the RFRA claim could have been litigated more efficiently and economically or filed earlier---is not found in the law.  The motion was filed 46 days before the discovery deadline. The court did not rule on it for 126 days. Issues arsing under the RFRA claim were covered in depositions. When an expert report, disclosed 13 days before the motion was filed, stated one could be a Christian and not believe in the Statement of Faith or in the need for a disciplinary clause, Appellees alleged a new defense of whether what occurred substantially

burdened religion---not a defense under Title VII or §1983—because they were not

central tenets of Christianity, supporting leave to amend. Minter v. Prime Equipment

Company, 451 F. 3rd 1196 (10th Cir. 2006).   (Pages 8-12)

   2. All issues were preserved by argument & citations to the record in the brief &

below. (Pages 8, 12-14, 16, 22, 24)

     3.    It is undisputed Appellee is an instrumentality of the Department of Energy,

which manages and controls it by contract, ordered it to implement Diversity and

Inclusion initiatives such as HR008, the justification for Appellants derecognition, in

furtherance of executive orders. Sandia does not have political autonomy or

independence from the government as in Hall.  It is a federal actor even though its

contract with DOE stated it was a private entity. Lebron v. N. R. Passenger Corp., 513

U.S. 374 (1995). National security, nuclear weapons, nuclear nonproliferation, space

exploration and operating one of DOE's 17 nuclear laboratories are traditional, exclusive

and traditional government functions it performs. (Pages 14-17)

     4.    Appellant's interests are not so marginally related to or inconsistent with the

purposes implicit in Title VII that it cannot reasonably be assumed that Congress

intended to permit the suit. It is comprised of employees in an employee resource

group.Thompson v. North American Stainless, 562 US 170, 174-178 (2011). EEOC

Enforcement Guidance on Retaliation and Related Issues § II(B)(4)(b) (2016) does not

require employment to be protected under Title VII. Appellant is the subject of

Appellee's actions.  <u>Clarke v. Sec. Indus. Ass.</u>, 479 U.S. 388, 399 (1987). CWNG

brought suit on behalf of itself and members it exists for. An unincorporated association

may sue to enforce a right under Rule 17(b)(3)(A) and in 12 of 13 Federal circuits, being

like a union. <u>Allee v. Medrano</u>, 416 U.S. 802, 819 f. 13 (1974). (Pages 17-20)

5.    Appellee agree firing is not required to prove discrimination. Denial of

reasonable religious accommodation absent undue hardship is actionable even if the

employee has not separately suffered an independent adverse employment action, such

as being discharged as a consequence of being denied accommodation. EEOC

Compliance Manual on Religious Discrimination, Section 12-IV(A) (Jan. 15, 2021).

Requiring work without religious accommodation where a work rule conflicts with

religious beliefs necessarily alters the terms and conditions of his employment for the

worse. Derecognition deprived employees of privileges of employment. (Pages 20-21)

6.    <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) requires firing for

failure to comply with the conflicting employment requirement.  The court ruled

participation in ERG's is not an employment requirement but a volunteer activity. No

cases states there is discrimination only if challenged action affects an employment

requirement. All that is required is discrimination as to a privilege of employment: here

that is rights of an employee resource group. A bona fide religious belief--the statement

of faith and disciplinary clause--- according to Appellee conflicted with HR008.  The

court stated hostility cannot satisfy the third element. Hostility and differential treatment

based on the content of beliefs caused HR008 to be used against CWNG. Sponsorship of

an voluntary employee group is a privilege of employment. §2000e-2(a)(1).

Derecognition altered a term and condition of employment,  participation in an ERG,

Muldrow v. City of St. Louis, MO, 601 US 346, 357 (2024) and an adverse employment

action. (Pages 20-21)

    7.    Pretext is found in greater leniency to similarly situated employees and

shortcomings in investigation by failure to inquire into the  reasons for an employee's

behavior. Ibrahim v. All. for Sustainable Energy, LLC, 994 F.3d 1193, 1198-1200 (10th

Cir. 2021). There was more leniency to similarly-situated employee resource groups and

no investigation of the effect of allowing the Statement of Faith & disciplinary clause,

just speculation what might happen, without supporting facts. (Page 21)

    8.    The court stated the Black Leadership charter was amended and steps to

address 2 group charters but ignored differential treatment of ERGs & hostility.(Page 22)

    9.    The accommodation does not violate, but would comply with law requiring

an exemption for religious groups and freedom to determine creed, leaders and install

and remove them. HR008 does not contain law regarding religious discrimination and

mentions neither the religious exemption nor the right to choose leaders. Sandia would

not resolve disputes such as if a Catholic could not be a leader due to disagreement with

the statement of faith or the leadership clause. The employer does not get involved in

religious disputes. No case states the positions of Appellees. There is animus against

Christianity and inquiry into beliefs in required submission of documents with statement of faith, content-based derecognition and a faith-inquiry expert report. <u>Doe v. Bd. of R. of the U. of Colorado</u>, 100 F. 4th 1251, 1278-1279 (10th Cir. 2024). (Pages 22-24)

D. Argument

   1. <u>Briefing and Citations</u>

      Arguments are supported by facts cited from the record, case law and authorities. Appellees show no examples to the contrary. Undisputed facts support summary judgment, leave to amend, and under RFRA, injunctive relief for Appellant.

   2. <u>Leave to Amend</u>

  Leave was sought 46-88 days before the discovery deadline 13 days after an expert report with a new defense was disclosed. The court's standard--the RFRA claim could have been litigated more efficiently and economically and filed earlier---is not found in the law. Title VII, §1983 and RFRA claims embrace differential treatment and religious discrimination. The motion was filed March 13, 2023 before depositions were taken. The discovery deadline was April 28-then June 9, 2023. The court took no action until August. RFRA issues were covered at depositions. A 136, page 20, lines 5-25.A-137, page 22, line 9-page 23, line 7. A-143-144. A-193, page 25, lines 7-20.  A-203, (3)(a). A-257.Appellees state no specific additional expenses incurred if the motion was granted.

  Rule 16's good cause requirement is satisfied by new information through discovery.

Appellant knew of the conduct beforehand but this is not the standard. It did not know the extent of the differential treatment and hostility to Christianity, or the defense that Christians need not believe in the statement of faith so the derecognition was not a substantial burden on the practice of religion, or whether what Sandia did was the least restrictive means of serving a compelling government interest. Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014). Appellees state counsel knew a burden HR008 had on exercise of religion "to do so would compromise the essentially Christian biblical nature of the group and allow those who do not believe in its statement of faith to make it something other than a Christian group" but not the defense essential to the case.

The only defenses are not that what occurred was in furtherance of an important government interest and the least restrictive means of furthering that interest. 42 USC §2000bb-1(b). Another is that what occurred did not **substantially** burden religion. The expert report states one could be a Christian and not believe in the Statement of Faith or in the need for a disciplinary clause. Appellant's members never dreamed this could be. This defense first stated in the expert report required inquiry into new facts and proof that derecognition for refusal to remove these was a substantial burden on authentic Christianity, whom Appellants believe ascribe to the statement of faith. A substantial burden on religion occurs when regulation prevents engaging in conduct the religion requires. Henderson v. Kennedy, 253 F. 3rd 12 (DC Cir. 2001); Boardly v. US Dept. of Justice, 605 F. Supp. 2Nd 8 (D.D.C. 2009). In Werner v. McCotter, 49 F.3d 1476, 1478,

1480-1481, (10th Cir. 1995). the Tenth Circuit held there was a substantial burden on the faith of a Native American prisoner by refusal to give him access to a prison-maintained sweat lodge and a medicine bag, which could be sufficiently central to his exercise of religion. A substantial burden must significantly inhibit or constrain conduct or expression manifesting a central tenet of a person's individual beliefs. Barker v. Conroy, 282 F. Supp. 3Rd 346 (D.D.C. 2017) (atheist's serving as a guest chaplain was required by his religion.); Heap v. Carter, 112 F. Supp. 3Rd 402 (E.D.Va. 2015) (becoming a Navy Chaplain was part of the core belief system of Humanism). In Thiry v. Carlson, 78 F. 3rd 1491 (10th Cir. 1996), this circuit found there was no substantial burden where Plaintiff's spirituality and beliefs allowed for the moving of grave sites where necessary. Beliefs must qualify as "ultimate ideas." U.S. v. Quiantance, 471 F. Supp. 2Nd 1153 (D.N.M. 2006). Whether the statement of faith and disciplinary clause were ideas and conduct required as a core belief of Christianity—as opposed to merely sincerely-held beliefs— became a key issue only when the expert report was disclosed.

   Proving a substantial burden helps, but is not required under Title VII or the First Amendment. Title VII makes it unlawful to limit...or classify his employees...[so as to] deprive or tend to deprive any individual of employment opportunities...because of such individual's...religion. 42 U.S.C. §2000e-2(a)(2). The employer must reasonably accommodate the religious practice of the employee unless it causes undue hardship. 42 U.S.C. §2000e(j).

Rule 15 grants litigants "the maximum opportunity for each claim to be decided on its merits"...[There is a ] rough similarity between the "good cause" standard of Rule 16(b) and..."undue delay" analysis under Rule 15..."[D]elay alone is an insufficient ground to deny leave to amend...courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend....plaintiff has provided an adequate explanation for the delay, and therefore his alteration product liability claim is not "untimely" or "unduly delayed."  ...The...attempt to assert a new claim...from a manufacturer product liability claim against Economy to an alteration product liability claim — was a response to these late disclosures from Prime Equipment and Economy...this case is distinguishable from those where courts denied leave to amend because the "plaintiff was aware of **all** the information on which his proposed amended complaint was based prior to filing the original complaint. ..Courts typically find prejudice only when the amendment unfairly affects the defendants "in terms of preparing their defense to the amendment." *Patton v. Guyer,* 443 F.2d 79, 86 (10th Cir. 1971). Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues. ..[Defendant]was changing its position regarding a key fact in the case. ..The complaint asserted a negligence claim against Prime Equipment for failing to "properly inspect, repair and maintain the lift." ...The new claim...was for "alter[ing] the subject scissor lift by removal of the solid guardrail safety feature."...there is a significant overlap in the factual underpinnings and defenses. ...most...defenses to the negligence claim apply with equal force to the product liability claim, including...that the lift was safe for its intended use... did not violate the applicable ANSI or OSHA standards at the time of manufacture... was not defective or unreasonably dangerous, and [Plaintiff;s] actions were the sole cause of the accident.

Minter v. Prime Equipment Company, 451 F. 3rd 1196, 1204-1208 (10th Cir. 2006).

Delay was 13 days. Appellant was not aware of the fact that authentic Christians may not ascribe to the statement of faith or disciplinary clause until the report was disclosed. It added a new defense of no substantial burden on religion. There is much overlap between all 3 claims. The defenses to all 3 overlap. Minter supports reversal.

Knowledge of Possible Defendant

Plaintiffs' motion was untimely,filed 4 months after the court's deadline for amending

11

pleadings. Plaintiffs should have known long before that date of a possible new

Defendant. <u>Frank v. US West, Inc.,</u> 3 F. 3rd 1357, 1366 (10th Cir. 1993). <u>Frank</u> does not

apply. There are no new parties.

<u>Good Cause under Rule 16(b)(4)</u>

<u>Tesone v. Empire Mrkg. Strategies</u>,  942 F. 3rd  979, 989 (10th Cir. 2019)  held Rule 16's

good cause requirement may be satisfied if a plaintiff learns new information. Appellees

argue good cause requires a showing deadlines cannot be met despite diligent effort.

This is not the law. They cite <u>Husky Ventures, Inc. v. B55 Invs. Ltd</u>, 911 F. 3rd 1000

(10th Cir. 2018) and argue Appellant knew of the underlying conduct and failed to raise

a claim. "B55...knew of the allegedly "new" information months before the motion to

amend..." id, at 1020-1021. Knowledge of a new defense and new burden of proof is

enough. 13 days is diligent.

<u>Gorsuch, Ltd., B.C v. Wells Fargo National Bank Association</u>, 771 F. 3rd 1230 (10th Cir.

2014) held the  good cause requirement is satisfied if a Plaintiff learns new information

through discovery; there was unexplained delay from November 17, 2011 to July 10,

2023. id., 1242. Such new information was the report.

3. There is No Waiver

   Arguments as to good cause were addressed in the brief and reply brief below and the

brief to this court, there is no waiver. <u>Exum  v. US Olympic Committee</u>, 389 F. 2nd 1130,

1134 footnote 4 (10th Cir. 2004) held only issues not mentioned in the argument section

were waived. In <u>Nixon v. City & Cty. of Denver</u>, 784 F.3d 1364, 1366 (10th Cir. 2015),

appellant never stated what was wrong with the court's reasoning, unlike here. <u>Bronson</u>

<u>v. Swensen</u>, 500 F. 3rd 1099,1104 (10th Cir. 2007) held

statement of issues...does not...seek to invalidate...polygamous marriages... but...
attack[s] … the constitutionality of ….criminal bigamy statute..plaintiffs' opening brief
does not attempt to explain why...refusal to give...recognition to [such] marriages...
contravene[s]...constitutional rights [but] is dedicated...to establishing the invalidity of
Utah's criminal prohibition of polygamy...Plaintiffs...state..they... challenge the...refusal
to grant a marriage license, based...civil prohibition of polygamy...cursory statements,
without analysis and case law [cannot] avoid application of the forfeiture doctrine.

Id 1104-1105. Arguments on good cause were stated in the Reply to Response to the

Motion for Leave to File Second Amended Complaint. A-120-124, and in the Brief,

pages 6-7, 11, 36-42. Once a claim is properly presented, a party can make any argument

in support of it and is not limited to the precise arguments made below. <u>Yee v. Escondido</u>

503 U.S. 519, 534 (1992). In <u>Reagan-Touly v. Walgreen Co</u>., 526 F. 3rd 641, 647-648

(10th Cir. 2008) statements were made in a different proceeding and context and not

presented to the district court in connection with her motion to compel, though available

at the time. Lack of citations to the record, <u>SIL-FLU, Inc. v. SFHC</u>, 917 F. 2nd 1507,

1513 (10th Cir. 1990) or mention in the opening brief, can constitute waiver.<u>Tran v. Trs.</u>

<u>of State Colls. in Colo</u>., 355 F.3d 1263, 1266 (10th Cir.2004). <u>Reedy v. Werholtz</u>, 660 F.

3rd 1270, 1275 (10th Cir. 2011). Every argument cites to the record & case law and was

raised in the district court, unlike. <u>Richison v. Ernest Group</u>, 634 F. 3rd 1123, 1130 (10th

Cir. 2011) and <u>Hayes v. Skywest Airlines, Inc.</u>, 12 F. 4th 1186, 1201 (10th Cir. 2020)

**4. <u>Sandia is a federal actor and instrumentality for purposes of RFRA</u>**

42 U. S. C. §2000e-5(g)(1) permits "equitable relief [and] money damages against

federal officials in their individual capacities. <u>Tanzin v. Tanvir</u>, 592 U.S. 43, 45 (2020)

private entities are...government actors...if they have a sufficient...functional nexus to the government....a corporation created by special law is part of the government for the purposes of the First Amendment (1) when [it] is created to further governmental objectives and (2) when government retains for itself permanent authority to appoint the majority of directors of the corporation....The...purposes of the Red Cross include furnishing "aid to the sick and wounded of the Armed Forces in time of war;" acting as a medium of communication between the people of the [US] and their Armed Forces; providing a "system of national and international relief in times of peace;" and using the system in mitigating the sufferings caused by...great national calamities....congressional creation of the Red Cross furthered government objectives... Hall has not alleged any nexus between the government's involvement with the Red Cross and [its] decision not to certify Hall as an instructor....the instructor certification program [is not] a function traditionally reserved for the government. Hall does not allege that the government coerced or encouraged the Red Cross not to certify him....Hall has not established the requisite federal action... the Red Cross cannot be considered a government actor under...under a "functional" or "federal action" analysis...Political autonomy was a prerequisite for recognition of the Red Cross as a National Society by the Red Cross International Committee....to fulfill its role under the Geneva Convention, the Red Cross must be independent of the US government...the Red Cross...remain[s] an independent and autonomous organization. This dual role makes it...but improper to impose constitutional restrictions on other [activities]...The United States does not provide civil service benefits to Red Cross employees or volunteers.

<u>Hall v. American National Red Cross</u>, 86 F. 3rd 919, 921-923 (9th Cir. 1996). A nexus

between DOE and enforcement of HROO8 is Federal executive orders 11478 and 13672

led to the adoption of HR008 August 29, 2028, Brief, page 34. A-260, 265, 127.

Executive order 13583 established a government-wide initiative to promote diversity

and inclusion in the federal workforce, which includes Sandia. Executive Order 13583--

Establishing a Coordinated Government-wide Initiative to Promote Diversity and Inclusion in the

Federal Workforce | whitehouse.gov Sandia was created to further government nuclear goals.

HR008 was implemented in response to those orders, 41 CFR 60 & DOE policy:

DOE requires its 17 national laboratories to meet all requirements set forth by civil
rights laws and regulations for equal employment opportunity (EEO) and for
maintaining workplace environments that are free from discrimination...Sixteen of the
17 DOE national laboratories are **managed under management and operating (M&O)
contracts on behalf of DOE.** The DOE laboratories' M&O contractors are subject to
Title 41 of the Code of Federal Regulations Part 60 (41 CFR 60), which sets forth
obligations and guidelines for **federal contractors and subcontractors** for meeting
requirements and responsibilities set forth in civil rights laws and Executive Order
11246...as well as to **DOE directives**. The DOE laboratories receive **direct oversight** by
DOE's Field Site Offices (federal site managers and contracting officers), who ensure
that the laboratories: are meeting federal EEO requirements; have established policies
and procedures for preventing discrimination and harassment...and have established
policies and procedures for addressing complaints as they arise. SWI DOE Policies
Prohibiting Dis... | U.S. DOE Office of Science (SC) (osti.gov) https://sc-
drcds.osti.gov/SWI/DOE-Policies-Prohibiting--Discrimination-and-Harassment

The prime contract indicates Sandia is controlled by DOE in all areas.

https://www.google.com/url?sa=t&source=web&rct=j&opi=89978449&url=https://www.

energy.gov/nnsa/sandia-national-laboratories-

contract&ved=2ahUKEwie4Zimu6eJAxVVDzQIHWJxGEAQFnoECAgQAQ&usg=AO

vVaw31yWMNoJnZ7connN5IeMoj

There is no political autonomy requirement nor independence from DOE as in Hall.

Lebron v. N. R. Passenger Corp., 513 U.S. 374, 392, 398, 400 (1995)  held:

Amtrak claims that...its charter's disclaimer of agency status prevents it from being

considered a Government entity in the present case....reliance on the statute is misplaced. ..it is not for Congress to make the final determination of Amtrak's status as a Government entity for purposes of determining the constitutional rights of citizens affected by its actions....congressional pronouncement that it is not such can no more relieve it of its First Amendment restrictions than a similar pronouncement could exempt the Federal Bureau of Investigation from the Fourth Amendment. The Constitution constrains governmental action "by whatever instruments...that action may be taken." Ex parte Virginia, 100 U. S. 339, 346-347 (1880)... it is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the Government by the Constitution. ...It surely cannot be that government...is able to evade the most solemn obligations imposed in the Constitution by simply resorting to the corporate form. ...Amtrak was created...explicitly for the furtherance of federal governmental goals....established and organized under federal law for the very purpose of pursuing federal governmental objectives, under the direction and control of federal governmental appointees.. where...the Government creates a corporation...for the furtherance of governmental objectives...the corporation is part of the Government for purposes of the First Amendment.

The contract with DOE does not control. Lebron.

The Clymo transcript and Martin affidavit were exhibits to Reply to the Response to

Motion for Leave to file Second Amended Complaint.  A-131, 143. The Clymo, A-516,

Parsons, A-520, Columbel, A-491, and Martin transcripts, A-525-528, were attached to

the response to the Motion for Summary Judgment on Religious Discrimination, A-465,

and Appellant's Motion for Summary Judgment, A-506, 544, 582 & 510, 586, 594, 615.

A private entity can qualify as a state actor...(i) when [it] performs a traditional, exclusive public function...(ii) when the government compels the private entity to take a particular action, ...*Blum v. Yaretsky* , 457 U.S. 991, 1004-1005 (1982) ; or (iii) when the government acts jointly with the private entity...*Lugar v. Edmondson Oil Co.* , 457 U.S. 922, 941-942 (1982)...the government must have traditionally *and* exclusively performed the function. *Rendell-Baker v. Kohn* , 457 U.S. 830, 842 (1982) ; *Jackson* , 419 U.S. At 352-353; *Evans v. Newton* , 382 U.S. 296, 300(1966). ...a private entity may...be deemed a state actor when the government has outsourced one of its constitutional obligations to a private entity...the government has no...obligation to operate public access channels...private and public actors have operated public access

channels...  [Nor does the] government...owns or leases either the cable system

Manhattan Cmty. Access Corp. v. Hallech, 139 S. Ct. 1921, 1928-1929, 1933, f. 1 (2019)

National security, nuclear weapons, defense nuclear nonproliferation and space

exploration and operating one of DOE's 17 nuclear laboratories are traditional,

exclusively federal functions. DOE outsourced its obligations to Sandia.

The government...mandated that the railroads not bargain away the authority to perform such tests.These are clear indices of the government's encouragement, endorsement and participation and suffice to implicate the Fourth Amendment..Skinner v. Railway Labor Executives Association, 489 U.S. 602, 615-616 (1989) Where a private party exercises a distinct government-conferred power specifically targeted at the rights of third parties-- which rights are constitutionally-protected---there is state action.

Children's Health Defense v. Meta Platforms, 112 F. 4th 742, 781 (9th Cir. 2024). Even if

Sandia is a private party, DOE ordered Appellee to enact and enforce HR008 and

specifically targeted the rights of Appellant and its members.

Unlike Plaintiff in VDARE Foundation v. City of Colorado Springs, 11 F. 4th 1151,

1164 (10th Cir. 2021), legal sanctions were threatened and taken by Sandia.

5. Title VII

The statute provides that "a civil action may be brought . . . by the person claiming to be aggrieved."...(1990). We have described the "zone of interests" test as denying a right of review "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." Clarke v. Securities Industry Assn., 479 U. S. 388, 399–400 (1987)..."aggrieved" in Title VII...[enables] suit by any plaintiff with an interest "arguably [sought] to be protected by the statute," National Credit Union Admin. v. First Nat. Bank & Trust Co., 522 U. S. 479, 495 (1998), while excluding plaintiffs...whose interests are unrelated to the statutory prohibitions in Title VII...Thompson falls within

the zone of interests protected by Title VII. Thompson was an employee of NAS, and the purpose of Title VII is to protect employees from their employers' unlawful actions....injuring him was the employer's intended means of harming Regalado...we think Thompson well within the zone of interests sought to be protected by Title VII. He is a person aggrieved with standing to sue.  42 U. S. C. § 2000e– 5(f)(1).

 Thompson v. North American Stainless, 562 US 170, 174-178 (2011). Injuring CWNG

injured employees. Its members are Sandia employees it represents.


the purpose of Title VII is to protect employees from the employer's unlawful actions…the zone of interests that Title VII protects is limited to those in employment relationships with Defendant…EEOC's current guidance suggests that "[w]here there is actionable third party retaliation, ... the third party who is subjected to the materially adverse action may state a claim ... even if he has never been employed by the defendant employer" (quoting EEOC Enforcement Guidance on Retaliation and Related Issues § II(B)(4)(b) (2016), *available at* https://perma.cc/2LTJ-EHJY).

Simmons v. USB Financial Services, Inc., 972 F. 3rd 664, 666-668, 670 f. 13 (5th Cir.

2020). The EEOC Enforcement Guidance on Retaliation and Related Issues § II(B)(4)(b)

(2016) does not require employment to be protected under Title VII. Clarke v. Sec. Indus.

Ass., 479 U.S. 388, 399 (1987) defined those outside the zone of interest as "not itself

the subject of the contested...action." id, 399. CWNG was the subject of the action. Its

member/employees suffered from Sandia's derecognition. CWNG brought claim on

behalf of itself and its members whom it exists for. An unincorporated association may

sue to enforce a substantive right. Rule 17(b)(3)(A). FRCP. At argument, Appellee's

Appendix 135, 141, Transcript 107:8, 113:3, counsel stated "the group has the claim, not

the individual," Page 107, line 8, Appellee's Appendix, 135, line 8, referring to Alpha

Delta Chi v. Reed, 648 F. 3rd 790 (9th Cir. 2011), id, page 133 line 12, arguing that entity

had a claim for discrimination, id, 134, and "the individuals are only members of the

group..the groups all had standing... <u>CLS v. EFF</u>...<u>Alpha Delta Chi</u>, Id, 135. The purpose

of Title VII is to protect employees rights, including the rights of ERGs.

the interests at stake in this action are germane to the Foundation's purpose... the
Foundation has standing to bring suit on behalf of its members…Title VII protects
"employees..." from  discrimination by federal government agencies. 42 U.S.C. § 2000e-
16. It does not protect organizations from discrimination...In *Fair Employment Council
of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1277-78 (D.C. Cir.
1994), however, the D.C. Circuit found that an organization may have standing to bring
a claim under Title VII if the violation of an individual's rights causes injury to an
organization. *Id.* At 1278...an organization may have standing to sue for injuries that
are *derivative* of a violation of an individual's Title VII rights…the Foundation has
standing to bring claims in a  representative capacity...[In]*Ethnic Employees of the
Library of Congress v. Boorstin*, 751 F.2d 1405 (D.C. Cir. 1975)...the court permitted an
organization called the Ethnic Employees of the Library of Congress ("EELC") to
proceed on Title VII claims against the Library. *Id.* At 1412...."measures taken against
the organization have resulted in...discrimination against the members." ...the court
found that EELC had standing to sue...in a representative capacity.

<u>Cook v. Billington</u>, 541 F. Supp. 2nd 358, 363 footnote 6.  (D.D.C. 2008).

An association [may] bring suit on behalf of its members when: a) its members ...have
standing to sue in their own right; b) the interests it seeks to protect are germane to the
organization's purpose; and c) neither the claim asserted nor the relief requested requires
the participation of individual members in the lawsuit. *Hunt v. Washington State Apple
Adver. Comm'n, 432* U.S. 333, 344 (1977) The NAACP can proceed in a representational
capacity...Well settled precedent provides that the NAACP can bring suit in a
representational capacity if its members have standing in their own right....

<u>Forrest City Branch, NAACP v. Johnson Controls, Inc.</u>, No. 2:10-cv-25, 2010 WL

3168059 at *2 (S.D.Miss, 2010)

The union has standing to raise any of the claims that a member of the union would have
standing to raise. Unions may sue under 42 U.S.C. § 1983 as persons deprived of their
rights secured by the Constitution and laws, *American Fed. of State, Co. & Mun. Emp. v.
Woodward,* 406 F.2d 137 (CA8)...protected First Amendment rights flow to unions as
well as to their members and organizers. *Carpenters Union v. Ritter's Cafe, 315 U.S. 722;
NAACP v. Button,* 371 U.S. 415, 428. If...its members were subject to unlawful

19

arrests...for engaging in union organizational activity protected by the First Amendment, the union's capacity to communicate is unlawfully impeded, since the union can act only through its members. The union then has standing to...bring this action. Allee v. Medrano, 416 U.S. 802, 819 f. 13 (1974).  A union exists to protects employee

rights, so does CWNG, which sued for its members. Title VII outlaws discrimination "

with respect to ..privileges of employment, because of such individual's ...

religion...." 42 U.S.C. § 2000e–2(a)(1)...Accommodate ... means ... allowing the plaintiff

to engage in her religious practice despite the employer's normal rules to the

contrary." Abercrombie & Fitch, 135 S.Ct. at 2032 n.2. Appellee agree firing is not

required to prove discrimination. Denial of reasonable religious accommodation absent

undue hardship is actionable even if the employee has not separately suffered an

independent adverse employment action, such as being disciplined, demoted, or

discharged as a consequence of being denied accommodation." EEOC Compliance

Manual on Religious Discrimination, Section 12-IV(A) (Jan. 15, 2021). Requiring him

to work without religious accommodation where a work rule conflicts with his religious

beliefs necessarily alters the terms and conditions of his employment for the worse." id.

Derecognition deprived employees of the privileges of employment.

6. Firing & an Effect on an Employment Requirement are Not Required Under Title VII

Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), only the third element

of a religious discrimination claim of failure to accommodate---fired for failure to

comply with the conflicting employment requirement was addressed by the court. It held

participation in ERG's is not an employment requirement and is a volunteer activity. No cases states there is discrimination only if challenged action affects an employment requirement. All that is required is discrimination as to a privilege of employment. Appellee agrees the court's requirement there be a firing is inconsistent with the law. Here that is rights of an employee resource group. Retaining the statement of faith and disciplinary clause conflicted with the job requirement to comply with HR008.  The court stated hostility cannot satisfy the third element. Hostility and differential treatment show  the content of the beliefs motivated the use of HR008 against CWNG. Derecognition altered the terms and conditions of employee's employment, which was to permit participation in an ERG, <u>Muldrow v. City of St. Louis, MO</u>, 601 US 346, 357 (2024) and is an adverse employment action. <u>Ibrahim</u>, 944 F. 3rd at 1200. This was argued below. A-86, 128, 423-424, 465-488, 627-630. Brief, pages 8, 22-32, 43.

7.  Pretext

A fact finder may infer pretext from greater leniency to similarly situated employees and  failure to inquire into the  reasons for an employee's behavior...<u>Ibrahim v. All. for Sustainable Energy, LLC</u>, 994 F.3d 1193, 1198-1200 (10th Cir. 2021). Here there was greater leniency to similarly-situated employee resource groups. There was no investigation of the effect of allowing the Statement of Faith and disciplinary clause, just speculation what might happen, without facts to support this.

CWNG provided record citations to show it cannot recruit, obtain funding, be involved in Diversity Cinema, write articles for Sandia News, use the premises for gatherings or receive ERG mails, recruiting and sponsor speakers.  Brief, page 24. A-619-620, 713, 467-468. Before court ruled on March 28, 2024, Appellant's Motion for Summary Judgment was filed July 27, 2023 before August 17, 2023 oral argument on Appellees' motion. Appendix 16, 19, 21, 465, 544, 807. The court must consider Appellee's motion as materials were adequately brought to court's attention and the whole record such as Cong's response to the religious discrimination motion. Appendix 465-528.

8.  <u>The court ignored differential treatment and hostility.</u>

It stated the Black Leadership charter was amended A-441, 451 and took steps to address the BL and AI group charters. It ignores differential treatment of these ERGs, Brief, 24, 25-33., A-575-577, 601-602, 610, 5970598, 632-633, 627-629, 682,  678a-678b, 623, 650. 654, 656, 702-703, 600, 596-598, 625-626, 637-640, 678, 679-681, 698. 704, 673, 545-648, 669-670, 595, 674-676, 682, 707, 709, 711, 592-593, 617, 587, 589-590, 591, 597, 598, 600-602, 685-686, 687-693, 663-664, 602-603, 607, 607-608, 610-614, 618-619, 630, 699-701, 635-636, 652, 672-673.

9.  <u>What Appellants Seek Will Bring About Compliance with the Law</u>

Requirements leaders be nominated and voted upon may limit nonchristians becoming leaders. But clear law states religious groups may choose their leaders, fire

and discipline them.Sandia required CWNG members to delete and modify religious beliefs.

The court never applied the undue hardship test. <u>Groff v. DeJoy</u>, 600 U.S. 447 (2023) held hardship which is substantial in the overall context of the employer's business including accommodations and economic and non-economic costs – including rights and interests protected by Title VII determine if accommodation was reasonable. Appellees argue <u>V vs Vilsack</u>, Appeal No. 2019005478 (EEOC 2024) held hardship is undue burden if it forces the employer to violate the law, but EEOC ruled there was no undue hardship to require an employee to go to training which mentioned LGBTQ issues.

<u>Taylor</u> <u>Weber v. Leasway dedicated Logistics, Inc,</u> 166 F. 3rd 1223 (10th Cir. 1999) held there was no religious discrimination for requiring provision of a social security number as is required under 26 U.S.C. § 6109. The requested accommodation requires Appellee to comply with law requiring an exemption for religious groups and honor the right to determine their creed, leaders and install and remove them and helped prevent unlawful discrimination. HR008 does not contain necessary language regarding religious discrimination and mentions neither the religious exemption nor the right to choose leaders, existing law. Sandia would not have to resolve disputes such as if a Catholic was refused a leadership position due to disagreement with the statement of faith because the employer does not get involved in religious disputes. No case states

positions Appellees state. Appellants argue about the religious exemption with citations.

Brief, page 13-15, 18, 23, 29-30.

Because the...Policy is permeated with animus against certain religions, and...involves an intrusive inquiry into...religious beliefs, the Does are likely to prevail on their Free Exercise Clause and Establishment Clause claims. If a government policy is motivated by religious animus...[or] requires an intrusive inquiry into the validity of religious beliefs [it]violates the Establishment Clause regardless of any purported government interest. Colo. Christian Univ. v. Weaver, 534 F.3d 1245, 1261 (10th Cir. 2008) Doe v. Bd. of R. of the U. of Colorado, 100 F. 4th 1251, 1278-1279 (10th Cir. 2024).

There is animus against Christianity. Inquiry into Appellant's beliefs occurred in required submission of the statement of faith, derecognition and faith-inquiry expert report.

Section 1983

Appellant argued an unincorporated association is a person under 1983. Lippolt v. Cole, 468 F. 3rd 1204, 1211-1216 (10th Cir. 2006). Appellant's Brief, 44-46, A-218, 825, 425-438, 145, 210 and incorporated the argument, A-413-415, by reference in response to the latter motion A- 425-438.

State action

Sandia's acts are traditional and exclusive function of the state. *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 157-158 (1978). Even if nominally a private, the state exercised sufficient "coercive power" over the challenged action, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296, 298 (2001). The Tennessee Secondary Schools Athletic Association (TSSAA) supervised the TSSAA, state involvement with

the private actor from the "top down," just as DOE supervises Sandia.id, 299-300.

Sandia is an agent for DOE not an ordinary private company.

In DeVargas, the court considered whether private actor was a state actor but did not

decide the issue because the contractor did not raise it on appeal. In Doe v. Lawrence

Livermore Laboratory, the laboratory was owned by DOE & operated by Univ. of CA .

The 10th Circuit concluded the university was a person under 1983 as was Nichols the

director of its lab. Thus individual defendants here are persons under 1983. Sandia staff

are employees of a lab owned by DOE. LLL and Sandia are part of the 17 national

nuclear labs so Sandia employees are persons under §1983.

   The court must address the injunctive relief claims

E.  Combined Certificates of Compliance and Service

I certify the brief contains 6,031 words. I certify the following: The attorney whose
name appears on this brief is a member of the bar of this court. This brief complies with
the type-volume requirements of Federal Rules of Appellate Procedure 35(b)(2) because
the brief contains less than 6,500 or 15 pages. The brief also complies with the typeface
requirements of Rule 32(a) because it was prepared in a 14 point Times New Roman
font, a proportionally spaced typeface, suing Microsoft Word. On October 30, 2024, I
electronically filed the forgoing brief with the Clerk of Court for the United States Court
of Appeals for the 10th Circuit by using the appellate CM/ECF system. The hard copy is
the same as what was filed electronically.  Participants in the case are registered
CM/ECF users and service will be accomplished by the appellate CM/ECF system. This
document was scanned for viruses using Webroot SecureAnywhere CE 23.2 Anti-virus
October 30, 2024 and there were no viruses were detected. I, J. Michael Considine, Jr.,
hereby certifies that I sent copies of the Brief of Appellant by electronically filing it on
the following counsel of record on the date indicated below: Jocelyn Drennan, Rodey,
Dickason, Sloan, Akin & Robb, P.A.,201 Third Street NW, Suite 2200, Albuquerque,
NM 87102

October 30, 2024                 s/ J. Michael Considine, Jr.